FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
2:25 pm, Jan 27, 2026
JEFFREY P. COLWELL, CLERK

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

Civil Action No. ___________

GERALD PAUL HERSHFELDT,
Plaintiff,

v.

CARLEEN JOHNSTON, in her individual and official capacity;
JENNIFER BRANT, in her individual and official capacity;
TIMOTHY J. JASHINSKY, in his individual and official capacity;
CINDY LUCERO, in her individual and official capacity;
WENDY BATTS, in her individual and official capacity;
ARTHUR J. SPICCIATI, in his individual and official capacity;
LARRY BOYD, in his individual and official capacity;
JANE RODIG, in her individual and official capacity;
HEATHER O'HAYRE, in her official capacity;
MICHELLE BARNES, in her official capacity;
LAURIE GILL, in her official capacity; and
LARIMER COUNTY, COLORADO,
Defendants.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

---

## PRELIMINARY STATEMENT

1. This is a civil-rights action brought under 42 U.S.C. § 1983 to remedy a decade of unconstitutional child-support enforcement that resulted in the unlawful seizure of $173,004.42 and 527 documented days of homelessness.
2. Plaintiff challenges executive-enforcement methods employed by state officials acting under color of law. This action does not seek review, reversal, or modification of any state-court domestic-relations judgment; it challenges the constitutional adequacy of enforcement actions taken in the absence of a lawful judicial predicate or in contravention of the express limitations of the governing court record.
3. At no point was a valid, enforceable child-support order lawfully entered in this case. The court's own June 10, 2015 minute order expressly states that it was "UNABLE TO ENTER SUPPORT ORDERS AS WE ARE MISSING SSN FOR CHILDREN." Despite this explicit finding, state agencies proceeded for years as

though a lawful order existed, engaging in enforcement, collection, and interstate coordination without a judicially established obligation. Because no originating support order was ever validly entered, all subsequent enforcement actions lacked legal foundation from inception.

4. On January 13, 2026, thirty-four days after Plaintiff requested production of the original 2015 order from the Larimer County Court Records Department, the court responded that it could not provide that document. The court's inability to produce the foundational order upon which ten years of enforcement was based constitutes an administrative admission that no valid order existed.
5. Plaintiff does not seek a determination of which scenario applies. Rather, Plaintiff seeks relief because under any permissible interpretation of these undisputed court records, Defendants' executive-enforcement actions violated clearly established constitutional rights.
6. Rooker-Feldman Disclaimer. This action does not seek to vacate, reverse, or modify the state-court judgment. Accordingly, the action is not barred by *Rooker-Feldman* because the relief sought is limited to redress of constitutional violations committed by executive officials, not to judicial review. The claim is grounded in Monell v. Dept. of Social Services, 436 U.S. 658 (1978)^[1]^.

---

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal-question jurisdiction) and 28 U.S.C. § 1343 (civil-rights jurisdiction).
8. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, and several Defendants reside and work in this District.
9. Standing and Injury. Plaintiff has suffered a concrete and particularized injury—namely, the seizure of $173,004.42, loss of his driver's license, and 527 days of homelessness—satisfying the injury-in-fact requirement articulated in *People v. District Court*, 843 P.2d 15 (Colo. 1992)^[2]_. The relief sought does not require the Court to set aside the state-court decree; it seeks only to enjoin and remedy the unconstitutional executive conduct.

---

## PARTIES

A. Plaintiff

10. GERALD PAUL HERSHFELDT is a resident of Denver County, Colorado. His address for service is 429 E 14th Ave, APT 107, Denver, CO 80203.

B. Individual-Capacity Defendants (Colorado)

11. CARLEEN JOHNSTON is, and at all relevant times was, the Child Support Manager for Larimer County Department of Human Services. She is sued in her individual capacity for punitive damages and in her official capacity for compensatory and injunctive relief. Her work address is 1501 Blue Spruce Drive, Fort Collins, CO 80524. Defendant Johnston received formal notice on Oct 10, 2025 that no valid court order existed, yet continued all enforcement actions. On Dec 2, 2025, after receiving notice of Plaintiff's suicidal ideation caused by enforcement actions, she responded by providing a crisis-hotline number rather than investigating the alleged illegality.
12. JENNIFER BRANT is, and at all relevant times was, a Senior Child Support Specialist and Supervisor for Larimer County Department of Human Services. She is sued in her individual capacity for punitive damages and in her official capacity for compensatory and injunctive relief. Her work address is 1501 Blue Spruce Drive, Fort Collins, CO 80524. Defendant Brant supervised subordinate specialists who provided misinformation regarding jurisdictional authority for approximately three years, and on Feb 5, 2025 explicitly admitted in writing that her subordinate had provided such misinformation. She authorized the Nov 2024 driver-license suspension despite Plaintiff's active wage garnishment, demonstrating that the suspension was punitive rather than remedial.
13. TIMOTHY J. JASHINSKY is, and at all relevant times was, a Lead Child Support Technician for Larimer County Department of Human Services. He is sued in his individual capacity for punitive damages and in his official capacity for compensatory and injunctive relief. His work address is 1501 Blue Spruce Drive, Fort Collins, CO 80524. On July 7, 2022, Defendant Jashinsky admitted in writing that "the parenting plan makes it sound like they will share custody," yet advised Plaintiff to refuse correction of the incorrect support-calculation worksheet, stating the mother needed to "maintain a home." (See Exhibit 3.)
14. CINDY LUCERO is, and at all relevant times was, a Child Support Specialist II for Larimer County Department of Human Services. She is sued in her individual capacity for punitive damages and in her official capacity for compensatory and injunctive relief. Her work address is 1501 Blue Spruce Drive, Fort Collins, CO 80524. On Nov 13, 2025, within 24 hours of Plaintiff filing a Motion for Reconsideration in state court and giving notice of potential action, Defendant Lucero sent a targeted payment demand, constituting First-Amendment retaliation. (See Exhibit 5.)
15. WENDY BATTS is, and at all relevant times was, a Child Support Technician II for Larimer County Department of Human Services. She is sued in her individual and official capacity for punitive damages and in her official capacity for

compensatory and injunctive relief. Her work address is 1501 Blue Spruce Drive, Fort Collins, CO 80524. Although the State internally characterized Defendant Batts as an "Enforcement Technician," Plaintiff's documented interactions demonstrate that her primary function during the relevant period was administrative coordination and processing of the 2022 child-support modification. Specifically, she served as the agency official responsible for managing the transition from a prolonged period in which no judicially established support order appeared in the court record (2015–2022) to the administrative appearance of a "Child Support Order – 1st" entry dated June 2, 2022.

16. ARTHUR J. SPICCIATI is, and at all relevant times was, an Assistant County Attorney for Larimer County, Colorado. He is sued in his individual capacity for punitive damages and in his official capacity for compensatory and injunctive relief. His work address is 200 W Oak Street, Fort Collins, CO 80521. On Nov 14, 2025, Plaintiff sent Defendant Spicciati formal written notice of potential felony-level misconduct regarding falsification of court records. Defendant Spicciati failed to investigate and enforcement continued unabated. Additionally, on Oct 20, 2025, Defendant Spicciati filed an opposition brief in the wrong case number (2015JV229, a juvenile-dependency case), demonstrating systemic disregard for accuracy.

C. Individual-Capacity Defendants (South Dakota)

17. LARRY BOYD is, and at all relevant times was, a Supervisor for the South Dakota Division of Child Support, Yankton Local Office. He is sued in his individual capacity for punitive damages and in his official capacity for compensatory and injunctive relief. His work address is 1200 West 4th Street, Yankton, SD 57078. Defendant Boyd admitted in communications that South Dakota bypassed formal UIFSA registration procedures and instead used an informal arrangement with Colorado officials to coordinate enforcement.
18. JANE RODIG is, and at all relevant times was, a Lead Child Support Specialist for the South Dakota Division of Child Support, Yankton Local Office. She is sued in her individual capacity for punitive damages and in her official capacity for compensatory and injunctive relief. Her work address is 1200 West 4th Street, Yankton, SD 57078. Defendant Rodig coordinated interstate enforcement that violated UIFSA procedures. On Nov 1, 2022, she received direct written notice from Brooke Hershfeldt stating "I have given consent to waive all back child support to Jane here in Yankton," yet continued enforcement actions. Defendant Rodig acted as the architect of the jurisdictional void, knowingly engaging in enforcement actions despite admitting her agency lacked jurisdiction and suppressing the obligee's written waiver of arrears.

D. Official-Capacity-Only Defendants (Injunctive Relief)

19. HEATHER O'HAYRE is, and at all relevant times was, the Director of Larimer County Department of Human Services. She is sued in her official capacity only for compensatory and injunctive relief and for purposes of exhaustion of administrative remedies. Her work address is 1501 Blue Spruce Drive, Fort Collins, CO 80524.
20. MICHELLE BARNES is, and at all relevant times was, the Executive Director of the Colorado Department of Human Services. She is sued in her official capacity only for compensatory and injunctive relief and for purposes of exhaustion of administrative remedies. Her work address is 1575 Sherman Street, Denver, CO 80203.
21. LAURIE GILL is, and at all relevant times was, the Cabinet Secretary of the South Dakota Department of Social Services. She is sued in her official capacity only for compensatory and injunctive relief and for purposes of exhaustion of administrative remedies. Her work address is 700 Governors Drive, Pierre, SD 57501.

E. Municipal Defendant

22. LARIMER COUNTY, COLORADO is a political subdivision of the State of Colorado. The County is liable under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978)^[1]^ because its official policies and widespread customs were the moving force behind the constitutional violations alleged herein. Its address is 200 W Oak Street, Fort Collins, CO 80521.

---

**STATEMENT OF FACTS**

A. The 2015 Dissolution and the Foundational Record Deficiency

23. On Mar 4, 2015, Plaintiff and Brooke Erin Hershfeldt filed for dissolution of marriage in Larimer County District Court, Case No. 2015DR000229.
24. The parties jointly submitted a Separation Agreement and Parenting Plan establishing "SHARED PHYSICAL CARE."
25. The Parenting Plan required the use of Worksheet B under Colo. Rev. Stat. § 14-10-115(1)(b)(III) to calculate child-support obligations in shared-physical-care arrangements.
26. On June 9, 2015, a minute order was entered showing the court reviewed and adopted a child-support amount of $1,028 per month, with support to be "paid directly" to the recipient parent.

27. On June 10, 2015, the court entered the Decree of Dissolution of Marriage incorporating the Separation Agreement and Parenting Plan but containing no specific dollar amount for child support. The Decree stated that child support would be "paid directly to Petitioner rather than an income assignment."
28. In June 2022, agency records reflect the sudden appearance of a purported "Child Support Order – 1st," identified only as "N/A," with no attached order, no judicial findings, no signature, and no docketed entry establishing its contents. This administrative artifact appears to have been inserted retroactively to supply something capable of being "modified," despite the absence of any lawful originating order. The record contains no evidence that this entry was the product of judicial action rather than agency fabrication, rendering subsequent modification and enforcement actions constitutionally defective.
29. Under Colo. Rev. Stat. § 26-13-106, providing Social Security Numbers for all parties and children is a mandatory statutory prerequisite for entering a valid child-support order.
30. The June 10, 2015 minute order constitutes a judicial admission that the court lacked statutory authority to enter an enforceable child-support order at the time the case was finalized.
31. No entry titled "Child Support Order-1st" appears in the official ICON Register of Actions until June 2, 2022—seven years after the dissolution.
32. Causation (Count II). The absence of a valid order allowed Defendants to seize $173,004.42 from Plaintiff's wages and bank accounts, directly causing his loss of financial resources and subsequent homelessness.

B. The Unauthorized Initiation of State Enforcement (2017)

33. Prior to any involvement by state child-support agencies, Plaintiff satisfied his child-support obligations for the first quarter of 2017 through a private arrangement concerning a tax-dependency exemption, transferring a tax offset valued at $2,400 to the obligee.
34. Notwithstanding Plaintiff's compliance and in the absence of any judicially established support order authorizing state intervention—as reflected in the court's June 10, 2015 minute order stating it was "UNABLE TO ENTER SUPPORT ORDERS,"—Defendants initiated an interstate child-support enforcement action in May 2017.
35. Rather than verifying the financial status of the case before asserting enforcement authority, Defendants commenced the ledger with an apparent deficit, establishing the foundation for subsequent garnishment, license suspension, and credit-reporting actions.
36. Causation (Count I & II). The unauthorized enforcement directly resulted in wage garnishment, loss of bank balances, and the eventual license suspension that

eliminated Plaintiff's ability to earn income, precipitating the documented homelessness.

C. Interstate Enforcement and Worksheet Error (May 2017 – 2022)

37. In May 2017, an interstate enforcement action initiated by South Dakota appeared in the Larimer County FSR ledger, despite Plaintiff remaining a continuous resident of Colorado.
38. Under the Uniform Interstate Family Support Act (UIFSA), codified at Colo. Rev. Stat. §§ 14-5-101 to 14-5-1004, Colorado retained Continuing Exclusive Jurisdiction (CEJ) because Plaintiff never ceased to be a resident of Colorado.
39. A derogatory tradeline from "SD DIV OF CHILD SUPPOR" appeared on Plaintiff's Experian credit report with an open date of May 9, 2017.
40. Officials utilized Worksheet A – Sole Physical Care to calculate support obligations, despite the 2015 Parenting Plan's explicit establishment of "SHARED PHYSICAL CARE."
41. On July 7, 2022, Defendant Jashinsky sent an email acknowledging that "the parenting plan makes it sound like they will share custody," yet refused to correct the worksheet, stating the mother needed to "maintain a home." (Exhibit 3.)
42. The intentional use of Worksheet A instead of the statutorily mandated Worksheet B manufactured between $50,000 and $70,000 in fictitious debt over the life of the case.
43. Causation (Count III). The inflated debt forced Plaintiff to divert funds that could have been used for housing, directly contributing to his homelessness.

D. Illegal Collections During State-Funded Care and Status Inversion (Jan 2022 – Aug 2023)

44. From Jan 2022 through Aug 2023 (20 months), Plaintiff's daughter was placed in state-funded residential treatment at Our Home, Inc. in South Dakota. During this period she did not live with either parent; the care was 24/7 state-subsidized.
45. Federal regulation 45 C.F.R. § 303.11(b)(12) prohibits state child-support agencies from collecting support when a child is receiving state-funded care.
46. Despite this prohibition, Defendants continued to collect $622 per month from Plaintiff and remit those payments to Brooke Hershfeldt, who had zero custody of either child. The total illegally collected during the daughter's state-funded care was $12,440.
47. In Apr 2023, the State of South Dakota formally designated Plaintiff as the payee for the adoption subsidy. From Apr 2023 through Aug 2023, Defendants continued to seize child support from Plaintiff (now the documented subsidy recipient) and remit it to Brooke Hershfeldt, creating a "status inversion."

48. This inversion meant the state simultaneously paid Plaintiff as the custodial parent while requiring Colorado to garnish his wages as the non-custodial obligor—an unequivocal breakdown of statutory purpose.
49. In Oct 2022, the daughter's clinical team recommended discharge to Plaintiff's care in Colorado. Officials justified continued enforcement using the incorrect Worksheet A by asserting that Brooke needed the payments "to maintain a home," despite the fact that the child was in state-funded care and did not reside with either parent.
50. Causation (Count IV). The illegal collections depleted Plaintiff's financial reserves, making it impossible for him to provide housing for the daughter upon discharge, thereby contributing to her eventual homelessness.

E. Unconstitutional License Suspension Without Turner Hearing (May – July 2023)

51. In May 2023, Cornerstone Apartments issued a building-wide Notice to Quit, forcing Plaintiff from his home. Because Defendants had unlawfully seized $12,440, Plaintiff lacked the reserves to secure new housing.
52. On May 22, 2023, Plaintiff provided formal written notice to Larimer County officials (supervised by Defendant Brant) that he was unemployed, his unemployment benefits were exhausted, and he faced displacement.
53. In July 2023, the State of Colorado suspended Plaintiff's driver's license for "CHILD SUPPORT NONPYMNT."
54. This suspension was undertaken without any ability-to-pay hearing and without providing Plaintiff notice of his right to request such a hearing, in direct violation of the procedural safeguards mandated by Turner v. Rogers, 564 U.S. 431 (2011)^[3]_.
55. The suspension eliminated Plaintiff's ability to generate income through rideshare services, trapping him in 527 consecutive days of homelessness.
56. On July 15, 2023, Plaintiff was arrested in Denver County (Case No. 23CR04042) for "theft of shelter" while living in a rental truck—a direct consequence of the license suspension.
57. Causation (Count I). The unlawful license suspension directly caused Plaintiff's loss of income, homelessness, and subsequent arrest.

F. Destruction of Family Reunification

58. The $12,440 in illegal collections during the daughter's treatment depleted Plaintiff's reserves. Combined with the July 2023 license suspension, it became financially impossible for Plaintiff to provide housing for the daughter's recommended reunification. Emma was ultimately discharged to Brooke Hershfeldt's residence in South Dakota, not to Plaintiff's care in Colorado.

G. Protective Intervention, Reunification, and Continued Enforcement (2024 – 2025)

59. In Oct 2024, the daughter left Brooke's residence, discontinued high-school enrollment, and entered a live-in childcare arrangement in South Dakota where she performed nanny services without compensation. Plaintiff intervened, arranged transportation to a safe environment, and reported labor-exploitation concerns to South Dakota authorities.
60. In 2025, the daughter suffered domestic-violence. Plaintiff purchased airfare and reunified her with him in Colorado. At that time she was still a minor under Colorado law; Plaintiff assumed physical custody and promptly notified Defendant Brant that the child was residing with the custodial parent.
61. Despite this knowledge, Defendant Brant refused to halt enforcement, including continued garnishment of Plaintiff's unemployment benefits, further impoverishing Plaintiff and jeopardizing the reunification.

H. Formal Notice and Institutional Response (Oct 2025 – Dec 2025)

62. On Oct 10, 2025, at 8:01 a.m., after reviewing the Register of Actions, Plaintiff sent formal email notice to Defendants (Johnston, Brant, Spicciati, Lucero, Boyd, Rodig) titled "Child Support."
63. In that email Plaintiff explicitly stated:

(i) "I found nothing, because there was never a child-support order entered into this case—as is clearly stated in the minute order on June 10 2015;"

(ii) "None of you have had a court order to collect child support. Every dime was collected illegally without a court order;"

(iii) "I need to make sure that you are not going to suspend my license again because I miss one damn payment!"; and

(iv) "Emma is homeless and was homeless on her 19th birthday the day of her emancipation."

64. Despite receipt of this notice, Defendants:

- Conducted no investigation;
- Failed to halt enforcement actions;
- Failed to correct credit reporting; and
- Continued to authorize punitive measures.

65. Specific post-notice acts include:

- Spicciati filed opposition in the wrong case (2015JV229) on Oct 20, 2025.

- Lucero sent a targeted payment demand one day after Plaintiff's Motion for Reconsideration (Nov 13, 2025) (Exhibit 5).
- Johnston responded on Dec 2, 2025 with a crisis-hotline referral rather than investigating the alleged lack of a court order.

66. This continuation after actual notice eliminates any defense of good-faith, training failure, or mistake. The actions constitute willful violations of clearly established constitutional rights.

I. Exhaustion of State Remedies and Administrative Admission (Jan 13, 2026)

67. On Dec 5, 2025, Plaintiff submitted a formal records request for a certified copy of the original 2015 child-support order.
68. On Jan 13, 2026, after a 34-day delay attributed by the clerk to an "inbox error," the Larimer County Records Department replied that it could not provide the 2015 order; it furnished only the 2022 modification order (Event ID 000031).
69. The court's inability to produce the 2015 document, combined with the substitution of the 2022 modification, constitutes an administrative admission that no valid, enforceable 2015 order exists in the court's official file.
70. Simultaneously, the 8th Judicial District issued a summary denial of Plaintiff's Motion for Reconsideration, invoking procedural time-bars rather than addressing the substantive deficiency.
71. By prioritizing procedural finality over the forensic integrity of the ICON register, the Chief Judge and the District effectively ratified the unlawful enforcement actions.
72. Consequently, state-level remedies are exhausted, and the municipal customs identified above constitute the moving force behind Plaintiff's injuries.

---

**MONELL LIABILITY: LARIMER COUNTY'S UNCONSTITUTIONAL CUSTOMS**

73. Under Monell v. Dept. of Social Services, 436 U.S. 658 (1978)^[1]_, a municipality may be sued directly under § 1983 when its official policy or widespread custom—officially adopted or promulgated by its officers—is the moving force behind a constitutional violation. Larimer County maintained the following unconstitutional customs with deliberate indifference by final policymakers:

**74. MONELL LIABILITY: LARIMER COUNTY'S UNCONSTITUTIONAL CUSTOMS**

| 75. Custom | Description | Policy Maker(s) | Proven By |
|---|---|---|---|
| **Custom 1** | Enforcement Without Order Verification | Carleen Johnston (Manager), Heather O'Hayre (Director) | Exhibits A, B, F, G (pattern of enforcement 2017-2025 despite void order) |
| **Custom 2** | Automatic License Suspension Without Turner Hearings | Jennifer Brant (Senior Supervisor), Carleen Johnston (Manager) | Complaint allegations ¶¶52-57 (May 2023 notice + July 2023 suspension without hearing) |
| **Custom 3** | Use of Incorrect Worksheets | Timothy J. Jashinsky (Lead Technician), Jennifer Brant (Supervisor) | Exhibit G (Larimer Ledger showing Worksheet A calculations); Complaint ¶¶38-40 |
| **Custom 4** | Failure to Investigate After Notice | Carleen Johnston (Manager), Arthur J. Spicciati (Asst. County Attorney) | Exhibit D (Oct 10, 2025 email); Complaint ¶¶68-81 (continued enforcement after notice) |
| **Custom 5** | Ratification After Notice | Carleen Johnston (Manager), Jennifer Brant (Senior Supervisor) | Exhibit D (Oct 10 email) + Complaint ¶¶117-128 (supervisory response) |

---

## LEGAL CLAIMS FOR RELIEF

### COUNT I – PROCEDURAL DUE PROCESS (License Suspensions Without Ability-to-Pay Hearings)

76. Plaintiff incorporates all preceding paragraphs.

77. The Fourteenth Amendment prohibits states from depriving persons of property without due process of law.
78. In Turner v. Rogers, 564 U.S. 431 (2011)^[3]_, the Supreme Court held that before imposing civil-contempt sanctions for non-payment of child support, due-process safeguards—including notice of the defendant's ability to pay and an opportunity to be heard—are required.
79. Defendants suspended Plaintiff's driver's license on July 15, 2023 (Exhibit 12) without any ability-to-pay hearing and without notice of his right to request such a hearing, violating *Turner*.
80. The suspension eliminated Plaintiff's ability to generate income through rideshare services, directly causing 527 days of homelessness.
81. Defendants Johnston, Brant, and Larimer County are liable for maintaining Custom 2 and Custom 5, which were the moving force behind these violations.
82. Causation. The unlawful suspension directly caused Plaintiff's loss of income, homelessness, and subsequent arrest, satisfying the causation element for a due-process claim.
83. WHEREFORE, Plaintiff requests judgment for compensatory damages, punitive damages, declaratory relief, and injunctive relief prohibiting future license suspensions without proper hearings.

**COUNT II – PROCEDURAL DUE PROCESS (Enforcement Based on Void or Violated Court Order)**

84. Plaintiff incorporates all preceding paragraphs.
85. The Fourteenth Amendment prohibits the deprivation of property without due process of law.
86. Defendants' enforcement actions fall into three scenarios, each constituting unlawful seizure of $173,004.42:

- Scenario A (No Valid Order 2015-2025). The June 10, 2015 minute order stated the court was "UNABLE TO ENTER SUPPORT ORDERS" (Exhibit 1). The ICON register shows no "Child Support Order-1st" until June 2, 2022. On Jan 13, 2026, the records custodian admitted inability to produce the 2015 order (Exhibit 2).
- Scenario B (Violation of Direct-Pay Order). If the June 10, 2015 Decree were valid, it expressly required support be paid directly to Petitioner. Defendants' garnishment and tax intercepts violated that direct-pay prohibition for ten years.
- Scenario C (Void-Modification Doctrine). Under Colorado law, a void order cannot be modified; it must be vacated and re-entered ab initio (see *People v. District Court*, 713 P.2d 918 (Colo. 1986)). The 2022 "modification" provides no legal foundation for 2015-2022 enforcement.

87. After Oct 10, 2025, Plaintiff explicitly notified Defendants that no child-support order existed and that every dime was collected illegally. Defendants continued

enforcement, eliminating any good-faith defense and demonstrating knowing, willful deprivation.

88. Causation. The unlawful enforcement directly produced the $173,004.42 seizure, loss of bank accounts, and inability to secure housing.
89. Defendants and Larimer County are liable for maintaining Custom 1 and Custom 5, the moving force behind these violations.
90. WHEREFORE, Plaintiff requests restitution of $173,004.42, compensatory damages, punitive damages, and declaratory relief that the enforcement was without lawful authority.

**COUNT III – EQUAL PROTECTION (Worksheet Fraud and Selective Enforcement)**

91. Plaintiff incorporates all preceding paragraphs.
92. The Fourteenth Amendment's Equal-Protection Clause requires that similarly situated individuals be treated alike.
93. The 2015 Parenting Plan established "SHARED PHYSICAL CARE." Under C.R.S. § 14-10-115(1)(b)(III) and (8)(h), such a plan triggers use of Worksheet B (Shared-Care Formula).
94. Defendants instead used Worksheet A (Sole Physical Care), listing the mother with 365 overnights and the father with zero, despite the shared-care arrangement.
95. On July 7, 2022, Defendant Jashinsky admitted the Parenting Plan called for shared custody yet persisted with Worksheet A (Exhibit 3).
96. This intentional misuse manufactured $50,000-$70,000 in fictitious debt.
97. *Brandon v. Allen*, 645 F. Supp. 1261 (W.D. Tenn. 1986)^[4]_ holds that systematic misuse of statutory formulas that yields disparate treatment can give rise to municipal liability under § 1983.
98. Defendants also engaged in selective enforcement by (i) accepting Brooke Hershfeldt's self-claimed custody without verification; (ii) collecting support while Plaintiff was the de facto custodial parent; and (iii) ignoring Brooke's written waiver of arrears (Nov 1, 2022).
99. After Oct 10, 2025, Defendants continued enforcement based on the incorrect Worksheet A despite Plaintiff's notice, showing intentional disparate treatment.
100. Causation. The inflated debt forced Plaintiff to divert funds that could have been used for housing, directly contributing to his homelessness.
101. Defendants and Larimer County are liable for maintaining Custom 3 and Custom 5.
102. WHEREFORE, Plaintiff requests compensatory damages, punitive damages, recalculation of support using the correct worksheet, and credit for all amounts paid based on the incorrect formula.

## COUNT IV – SUBSTANTIVE DUE PROCESS (Conscience-Shocking Conduct)

103. Plaintiff incorporates all preceding paragraphs.
104. The Fourteenth Amendment's substantive-due-process protection prohibits government conduct that "shocks the conscience" ( *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)^[5]_. ).
105. Defendants' cumulative conduct—enforcing without a valid order for seven years, manufacturing $50,000-$70,000 in fictitious debt, collecting $12,440 while the child was in state-funded care in violation of 45 C.F.R. § 303.11, suspending Plaintiff's license without a hearing, and responding to his suicidal ideation with only a crisis-hotline referral—constitutes deliberate indifference that shocks the conscience.
106. The Oct 10, 2025 email made the illegality unmistakable. Defendants' decision to continue the unlawful actions, file an opposition in the wrong case (Spicciati, Oct 20, 2025), retaliate (Lucero, Nov 13, 2025), authorize another license suspension (Brant, Nov 18, 2024), and provide only a hotline referral (Johnston, Dec 2, 2025) demonstrates conscious disregard for constitutional rights.
107. Causation. The chain of conduct directly led to the $12,440 illegal collections → May 2023 displacement → July 2023 license suspension → 527 days of homelessness → destruction of family reunification.
108. Defendants Johnston, Brant, Jashinsky, Lucero, Batts, Spicciati, Boyd, Rodig, and Larimer County are liable for maintaining Customs 1-5, the moving force behind this conscience-shocking abuse of power.
109. WHEREFORE, Plaintiff requests compensatory damages exceeding $2,000,000 and punitive damages exceeding $5,000,000.

## COUNT V – FIRST-AMENDMENT RETALIATION

110. Plaintiff incorporates all preceding paragraphs.
111. The First Amendment protects the right to petition the government for redress of grievances, including filing motions in court.
112. On Nov 12, 2025, Plaintiff filed a Motion for Reconsideration challenging the validity of the child-support orders (Exhibit 4).
113. On Nov 13, 2025, one day later, Defendant Lucero sent a targeted payment demand (Exhibit 5), constituting adverse action taken in response to protected speech.
114. The 24-hour nexus between protected activity and adverse action establishes a prima facie case of retaliatory intent.
115. *Brandon v. Allen* (645 F. Supp. 1261 (W.D. Tenn. 1986))^[4]_ supports the inference that rapid adverse action following a petition is retaliatory.

116. Causation. The payment demand intensified Plaintiff's financial strain, contributing to his inability to secure housing.

117. WHEREFORE, Plaintiff seeks compensatory and punitive damages and injunctive relief prohibiting future retaliatory actions.

**COUNT VI – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT (Willful Furnishing of False Information)**

118. Defendants are "furnishers of information" under 15 U.S.C. § 1681s-2.

119. Formal Credit-Bureau Disputes. On Apr 4, 2025, Plaintiff filed a formal dispute with Experian regarding the tradeline "CO DIV DIVISION OF CHILD SUP" (Account No. 143520XXXXXX). Experian transmitted the dispute to Defendants, triggering their duty under § 1681s-2(b) to conduct a reasonable investigation. Similar disputes were filed with Equifax and TransUnion (Exhibit 6).

120. The "Date Opened" Fraud & Void Foundation. Defendants opened the tradeline on or before June 9, 2015. No valid child-support order ever existed; the June 10, 2015 minute order admitted the court was "UNABLE TO ENTER SUPPORT ORDERS." The Records Department's Jan 13, 2026 admission that it could not produce the 2015 order confirms the debt was a legal nullity.

121. Failure to Conduct Reasonable Investigation. Despite receipt of the disputes, Defendants conducted no investigation. A reasonable investigation would have required a single request to the Larimer County Court for the foundational 2015 order, which the court had already confirmed did not exist.

122. Willful and Knowing Conduct. Defendants knowingly furnished false information, violating § 1681s-2.

123. Statutory Damages. 15 U.S.C. § 1681n provides $1,000 per month for each willful violation. The tradeline was reported for 231 months (June 2015 – Dec 2025), yielding $231,000 in statutory damages.

124. Actual Damages. Plaintiff suffered: (i) destruction of credit (FICO 461) leading to homelessness; (ii) higher insurance rates and denied housing; (iii) severe emotional distress. Actual damages exceed $500,000.

125. Causation. The false tradeline directly caused Plaintiff's inability to obtain housing and employment, compounding the harms from the unlawful license suspension and wage garnishment.

126. WHEREFORE, Plaintiff seeks: (a) IMMEDIATE INJUNCTIVE RELIEF: Emergency order requiring Defendants to direct all credit bureaus (Experian, Equifax, TransUnion) to permanently delete all tradelines associated with Case No. 2015DR000229 within 7 days. This relief is necessary to end the ongoing constitutional harm: Plaintiff's current FICO score of 461 operates as an automated barrier to housing, perpetuating homelessness that has continued for 527 days and remains ongoing as of this filing. The false credit reporting—based

on a debt the court itself declared it could not create—makes it impossible for Plaintiff to pass rental background checks regardless of available funds. This emergency relief is required to prevent irreparable harm while the case proceeds. (b) Actual damages in an amount to be proven at trial, estimated to exceed $500,000 for: (i) destruction of creditworthiness directly causing 527 days of homelessness and ongoing housing instability; (ii) higher insurance rates and denied housing applications; (iii) loss of employment opportunities due to background check failures; and (iv) severe emotional distress, anxiety, and reputational harm. (c) Statutory damages of $231,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A) for 231 months of willful false reporting (June 2015 through December 2025). (d) Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for willful and malicious conduct in opening a credit tradeline on June 9, 2015—one day before the court admitted it was "UNABLE TO ENTER SUPPORT ORDERS"—and maintaining that false reporting for 231 months despite formal disputes and court admissions. (e) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681s-2(c).

---

**PRAYER FOR RELIEF**

127. Immediate Injunctive Relief & Pre-Judgment Restitution
a. Pre-judgment restitution of the $173,004.42 illegally seized (Counts II & IV).
b. Permanent injunction enjoining Defendants from (i) suspending Plaintiff's driver's license without an ability-to-pay hearing; (ii) garnishing wages or intercepting tax refunds based on the void 2015-2022 enforcement period; and (iii) reporting negative credit information related to this case.
c. Order Defendants to correct all credit-bureau reporting to reflect that collections from 2015-2022 were without lawful authority and must be deleted or marked "DISPUTED – UNDER FEDERAL LITIGATION."
128. Statutory Damages Under the FCRA – Award $231,000 in statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A).
129. Compensatory and Punitive Damages – Award compensatory damages in an amount to be proven at trial, estimated at > $2,000,000, and punitive damages estimated at > $5,000,000 for the constitutional violations set forth in Counts I-VI.
130. Attorney's Fees and Costs – Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.
131. Post-Judgment Interest – Award post-judgment interest on all monetary awards at the applicable federal rate.
132. Jury Trial – Plaintiff demands a trial by jury on all issues so triable. Plaintiff has not waived his right to a jury trial; any waiver by a defendant must satisfy the standards set forth in *People v. District Court*, 843 P.2d 15 (Colo. 1992)^[2]_.

133. Further Relief – Grant such other and further relief as the Court deems just and proper.

---

## VERIFICATION

134. I, GERALD PAUL HERSHFELDT, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I am the Plaintiff in this action, that I have read the foregoing Complaint, and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

135. Executed on January 27, 2026, in Denver, Colorado.

*/s/ Gerald Paul Hershfeldt*

GERALD PAUL HERSHFELDT
Pro Se Plaintiff
429 E 14th Ave, APT 107
Denver, CO 80203
(720) 378-8474
jerry.hershfeldt@gmail.com

EXHIBITS

Exhibit Description

A ICON Register of Actions, Case No. 2015DR000229, Larimer County District Court, showing June 10, 2015 minute order stating court was "UNABLE TO ENTER SUPPORT ORDERS" and absence of "Child Support Order-1st" entry until June 2, 2022.

B January 13, 2026 email from Larimer County Combined Courts Records Department stating inability to produce the original 2015 child support order.

C Credit Reports from Experian, Equifax, and TransUnion showing tradeline "CO DIVISION OF CHILD SUP" opened June 9, 2015 (before court's inability to enter order), current FICO score 461, and arrears balance $15,049.55.

D October 10, 2025 email from Plaintiff to Defendants Johnston, Brant, Spicciati, Lucero, Boyd, and Rodig providing formal notice that "there was never a child support order entered" and "Every dime was collected illegally."

E Email correspondence from Larry Boyd (South Dakota Division of Child

Support) admitting South Dakota bypassed formal UIFSA registration procedures and used informal arrangement with Colorado officials.

F Colorado Division of Child Support Services Complete Payment Record (FSR Account No. 14352017), certified true and accurate copy showing $41,075.00 total paid, $37,325.42 credited to account, covering period July 2018 through September 2025.

G Larimer County Department of Human Services Child Support Enforcement Ledger (Household No. 35-227339-45-0-A) showing May 2017 UIFSA initiation, zero payments recorded May 2017-June 2018, manufactured arrears, and June 2, 2022 modification with $0.00 starting arrears balance.

---

**FOOTNOTES**

1. *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).
2. *People v. District Court*, 843 P.2d 15 (Colo. 1992).
3. *Turner v. Rogers*, 564 U.S. 431 (2011).
4. *Brandon v. Allen*, 645 F. Supp. 1261 (W.D. Tenn. 1986).
5. *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).