**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:26-cv-00342**
**Magistrate Judge Richard T. Gurley**

GERALD PAUL HERSHFELDT,
Plaintiff,
v.

CARLEEN JOHNSTON, individually and in her official capacity; JENNIFER BRANT, individually and in her official capacity; TIMOTHY J. JASHINSKY, individually and in his official capacity; CINDY LUCERO, individually and in her official capacity; WENDY BATTS, individually and in her official capacity; ARTHUR J. SPICCIATI, individually and in his official capacity; LARRY BOYD, individually and in his official capacity; JANE RODIG, individually and in her official capacity; HEATHER O'HAYRE, in her official capacity; MICHELLE BARNES, in her official capacity; LAURIE GILL, in her official capacity; LARIMER COUNTY, COLORADO,

Defendants.

# FIRST AMENDED COMPLAINT AND JURY DEMAND

## I. PRELIMINARY STATEMENT

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, to remedy a decade of unconstitutional child support enforcement executed in the total absence of a valid judicial predicate and the willful, ongoing suppression of Plaintiff's creditworthiness in violation of 15 U.S.C. § 1681s-2.
2. Plaintiff challenges the executive enforcement methods employed by state and county officials acting under color of law. This action does not seek to vacate, review, reverse, or modify any state court domestic relations judgment.
3. Rooker-Feldman Disclaimer: Plaintiff does not ask this federal Court to overturn a divorce decree. Plaintiff seeks redress for executive property seizures and liberty deprivations executed without a lawful judicial predicate — constitutional injuries independent of any state court judgment. The Rooker-Feldman doctrine does not bar this action. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).
4. The foundation of this suit is the state court's own official record. A June 10, 2015 minute order in Larimer County Case No. 2015DR000229 explicitly states that the court was "UNABLE TO ENTER SUPPORT ORDERS AS WE ARE MISSING SSN FOR CHILDREN." See Exhibit 1.
5. On January 13, 2026, the Larimer County Court Records Department provided a

written administrative admission that it could not produce the 2015 support order because it "does not exist" in the official court file. See Exhibit 2. On that same date, the state district court denied Plaintiff's Motion for Reconsideration on procedural time-bar grounds, refusing to address the substantive absence of the foundational order. State remedies are exhausted.

6. Despite the documented absence of a valid judicial predicate, Defendants exercised their administrative discretion to execute ex parte enforcement actions, unlawfully seizing tens of thousands of dollars from Plaintiff's wages and accounts, deliberately suspending his driver's license on four occasions without a constitutionally required ability-to-pay hearing, and willfully furnishing false information to all three major consumer reporting agencies for over a decade.
7. These unconstitutional customs and statutory violations directly caused 527 documented days of homelessness, the destruction of Plaintiff's professional livelihood, and the ongoing suppression of his credit to a FICO score of 461.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because Plaintiff's claims arise under the Constitution and laws of the United States — specifically 42 U.S.C. § 1983 and the FCRA, 15 U.S.C. § 1681.
9. This Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (4) to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the United States Constitution.
10. This Court has supplemental jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1367. The FCRA claims share a common nucleus of operative fact with the § 1983 constitutional claims, as both arise from the same debt enforcement and false credit reporting conduct of the Defendants.
11. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events and omissions giving rise to these claims occurred in this District, and the Colorado Defendants reside and perform their official duties within this District.
12. Standing (Lujan Framework): Plaintiff has suffered a concrete and particularized injury — namely, the unlawful seizure of wages and accounts, the unconstitutional suspension of his driver's license, 527 days of documented homelessness, and total economic damages estimated at 73,004.42 — satisfying the injury-in-fact requirement of Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). These injuries are directly traceable to Defendants' automated enforcement without a valid judicial predicate and their willful false credit reporting. A favorable judicial decision will redress these injuries through restitution, injunctive relief, and statutory and compensatory damages.
13. Rooker-Feldman Exception: This Court's jurisdiction is proper notwithstanding

the Rooker-Feldman doctrine because Plaintiff challenges administrative enforcement conduct, not judicial acts. The injuries complained of arise from enforcement actions taken: (a) without a valid court order; (b) in the alternative only, if any order is construed as valid, in violation of that order's explicit direct-pay prohibition; and (c) without constitutionally required procedural safeguards. These are independent constitutional injuries that did not exist by virtue of any state court judgment.

## III. PARTIES

### A. Plaintiff

14. GERALD PAUL HERSHFELDT is a resident of Denver County, Colorado. He is proceeding pro se and in forma pauperis. His address for service is Denver, CO 80203. (Full address provided to the Court separately for service purposes.)

### B. Individual-Capacity Defendants (Colorado)

15. CARLEEN JOHNSTON is, and at all relevant times was, the Child Support Manager for the Larimer County Department of Human Services. She is sued in her individual capacity for punitive damages and in her official capacity for injunctive and compensatory relief. Her work address is 1501 Blue Spruce Drive, Fort Collins, CO 80524. Defendant Johnston received formal written notice on October 10, 2025, that no valid court order existed, yet authorized all enforcement actions to continue. On December 2, 2025, after receiving notice of Plaintiff's homelessness and suicidal crisis caused by ongoing enforcement, she responded by providing a "988" crisis hotline referral rather than investigating the admitted lack of a judicial predicate.

16. JENNIFER BRANT is, and at all relevant times was, a Senior Child Support Specialist and Supervisor for the Larimer County Department of Human Services. She is sued in her individual capacity for punitive damages and in her official capacity for injunctive and compensatory relief. Her work address is 1501 Blue Spruce Drive, Fort Collins, CO 80524. On February 5, 2025, Defendant Brant provided a written administrative admission explicitly stating that "any enforcement remedies Colorado takes is based on our policy and procedures, the obligee's nor the other states are able to have any input or make agreements regarding actions our office takes." (See Exhibit 11.) She also authorized the November 2024 driver's license suspension despite Plaintiff's active wage garnishment and the pending legal challenge to the foundational order's validity.

17. TIMOTHY J. JASHINSKY is, and at all relevant times was, a Lead Child Support Technician for the Larimer County Department of Human Services. He is sued in his individual capacity for punitive damages and in his official capacity for injunctive and compensatory relief. His work address is 1501 Blue Spruce Drive, Fort Collins, CO 80524. On July 7, 2022, Defendant Jashinsky admitted in writing

that "the parenting plan makes it sound like they will share custody," yet deliberately applied Worksheet A (Sole Physical Care), manufacturing between 0,000 and 0,000 in fictitious debt.

18. CINDY LUCERO is, and at all relevant times was, a Child Support Specialist II for the Larimer County Department of Human Services. She is sued in her individual capacity for punitive damages and in her official capacity for injunctive and compensatory relief. Her work address is 1501 Blue Spruce Drive, Fort Collins, CO 80524. On November 13, 2025 — within 24 hours of Plaintiff's filing of a Motion for Reconsideration challenging the legal validity of the enforcement — Defendant Lucero issued a targeted, manual payment demand without any new factual or legal basis.

19. WENDY BATTS is, and at all relevant times was, a Child Support Technician II for the Larimer County Department of Human Services. She is sued in her individual capacity for punitive damages and in her official capacity for injunctive and compensatory relief. Her work address is 1501 Blue Spruce Drive, Fort Collins, CO 80524. Defendant Batts served as the agency official responsible for managing the administrative transition and processing of the 2022 purported child support modification — a seven-year retroactive entry inserted to bridge a period (2015–2022) in which no judicially established support order existed in the official ICON register.

20. ARTHUR J. SPICCIATI is, and at all relevant times was, an Assistant County Attorney for Larimer County, Colorado. He is sued in his individual capacity for punitive damages and in his official capacity for injunctive and compensatory relief. His work address is 200 W. Oak Street, Fort Collins, CO 80521. On November 14, 2025, Plaintiff sent Defendant Spicciati formal written notice of potential falsification of court records. Defendant Spicciati failed to investigate, allowed enforcement to continue, and subsequently filed an opposition brief in the wrong case number — a juvenile dependency case referencing unrelated children — demonstrating systemic disregard for accuracy.

**<u>C. Individual-Capacity Defendants (South Dakota)</u>**

21. LARRY BOYD is, and at all relevant times was, a Supervisor for the South Dakota Division of Child Support, Yankton Local Office. He is sued in his individual capacity for punitive damages and in his official capacity for injunctive and compensatory relief. His work address is 1200 West 4th Street, Yankton, SD 57078. Defendant Boyd coordinated interstate enforcement that bypassed formal UIFSA registration procedures, and directed the affirmative verification of false credit information in August 2021 despite actual knowledge that the foundational order was in dispute.

22. JANE RODIG is, and at all relevant times was, a Lead Child Support Specialist for the South Dakota Division of Child Support, Yankton Local Office. She is sued in her individual capacity for punitive damages and in her official capacity

for injunctive and compensatory relief. Her work address is 1200 West 4th Street, Yankton, SD 57078. Defendant Rodig coordinated interstate enforcement in violation of UIFSA procedures, suppressed the obligee's written waiver of arrears, and continued to furnish negative credit information to TransUnion even after receiving the November 1, 2022 written waiver.

## D. Official-Capacity Defendants (Injunctive and Compensatory Relief Only)

23. HEATHER O'HAYRE is, and at all relevant times was, the Director of the Larimer County Department of Human Services. She is sued in her official capacity for injunctive and compensatory relief. Her work address is 1501 Blue Spruce Drive, Fort Collins, CO 80524. As Director, Defendant O'Hayre possessed final policymaking authority over the customs and policies described herein and ratified the enforcement conduct after receiving formal written notice on October 10, 2025.
24. MICHELLE BARNES is, and at all relevant times was, the Executive Director of the Colorado Department of Human Services. She is sued in her official capacity for injunctive and compensatory relief. Her work address is 1575 Sherman Street, Denver, CO 80203.
25. LAURIE GILL is, and at all relevant times was, the Cabinet Secretary of the South Dakota Department of Social Services. She is sued in her official capacity for injunctive and compensatory relief. Her work address is 700 Governors Drive, Pierre, SD 57501.

## E. Municipal Defendant

26. LARIMER COUNTY, COLORADO is a political subdivision of the State of Colorado. The County is liable under Monell v. Dept. of Social Services, 436 U.S. 658 (1978), because its official policies and widespread customs — described herein as Customs 1 through 5 — were the moving force behind the constitutional violations alleged in this Complaint. Its address is 200 W. Oak Street, Fort Collins, CO 80521.

# IV. STATEMENT OF FACTS

## A. The 2015 Dissolution and the Foundational Record Deficiency

27. On March 4, 2015, Plaintiff and Brooke Erin Hershfeldt filed for dissolution of marriage in Larimer County District Court, Case No. 2015DR000229.
28. The parties jointly submitted a Separation Agreement and Parenting Plan explicitly establishing "SHARED PHYSICAL CARE" of their two minor children, E.H. and R.H. Under Colorado Revised Statutes § 14-10-115(1)(b)(III), a shared physical care arrangement mandates the use of Worksheet B to calculate

child support obligations.

29. On June 9, 2015, a minute order was entered reflecting the court's review of a proposed child support amount of ,028 per month, with support to be "paid directly" to the recipient parent rather than through an income assignment.

30. On June 10, 2015, the court entered the Decree of Dissolution. The Decree incorporated the Separation Agreement and Parenting Plan but explicitly directed that child support be "paid directly to Petitioner rather than an income assignment."

31. On that same day, June 10, 2015, the court entered a subsequent minute order into the official ICON Register of Actions (Event ID 000020) explicitly stating: "UNABLE TO ENTER SUPPORT ORDERS AS WE ARE MISSING SSN FOR CHILDREN; REQUESTED OF PARTIES IN COURT ON 6/9/15." See Exhibit 1.

32. Under C.R.S. § 26-13-106, providing Social Security Numbers for all parties and children is a mandatory statutory prerequisite for entering a valid, enforceable child support order. The June 10, 2015 minute order constitutes a judicial admission of administrative incapacity to enter any such enforceable order.

33. No entry titled "Child Support Order-1st" appeared in the official ICON Register of Actions until June 2, 2022 — seven years after the dissolution.

**B. Compliant Direct-Payment Period (June 2015 – May 2017)**

34. From June 2015 through May 2017, Plaintiff acted in good faith compliance with the June 10, 2015 Decree's explicit direct-pay instruction, making payments directly to the obligee.

35. From June 2016 through December 2016, the minor child R.H. resided physically with Plaintiff in Denver, Colorado. During this period, Plaintiff provided full direct support for R.H. and additionally provided a tax dependency exemption valued at approximately ,400.

36. When Defendants subsequently initiated state enforcement in May 2017, they failed to credit 1,896 in documented cash payments and the ,400 tax offset, instantly manufacturing an artificial arrearage of approximately 9,532.

**C. Interstate Enforcement and Worksheet Fraud (May 2017 – 2022)**

37. In May 2017, the South Dakota Division of Child Support initiated an interstate enforcement action, opening a derogatory tradeline on Plaintiff's credit report. This action was coordinated through an informal arrangement that bypassed the formal UIFSA registration procedures required by C.R.S. § 14-5-600 et seq.

38. In executing enforcement, officials applied Worksheet A (Sole Physical Care) — attributing 365 overnight custody days annually to the mother and zero to

Plaintiff — directly contradicting the 2015 Parenting Plan's explicit establishment of "SHARED PHYSICAL CARE."

39. On July 7, 2022, Defendant Timothy J. Jashinsky admitted in writing that "the parenting plan makes it sound like they will share custody," yet he explicitly refused to correct the worksheet formula, manufacturing between 0,000 and 0,000 in fictitious debt over the life of the case.

**D. Illegal Collections During State-Funded Care and Status Inversion (January 2022 – August 2023)**

40. From January 2022 through August 2023, Plaintiff's minor daughter, E.H., was placed in 24/7 state-funded residential treatment at Our Home, Inc., in South Dakota. She had zero overnight contact with either parent during this period.

41. Federal regulation 45 C.F.R. § 303.11(b)(12) explicitly prohibits state child support agencies from collecting support when a child is receiving state-funded care.

42. In direct violation of this federal mandate, Defendants continued to garnish approximately $622 per month from Plaintiff, unlawfully collecting $12,440 during the prohibited period.

43. In April 2023, the State of South Dakota formally designated Plaintiff as the payee for E.H.'s adoption subsidy, legally recognizing him as the custodial resource for his daughter. Despite this formal state recognition, Defendants simultaneously continued to garnish Plaintiff's wages as the non-custodial obligor for the same child — creating an unconstitutional "status inversion" in which the state's own agencies contradicted each other.

**E. Unconstitutional License Suspension Without Turner Hearing (May – July 2023)**

44. In May 2023, Plaintiff was forced to vacate his residence following a building-wide Notice to Quit. Having been depleted of financial reserves by the $12,440 unlawfully seized during his daughter's state-funded care, Plaintiff lacked the resources to secure alternative housing.

45. On May 22, 2023, Plaintiff provided formal written notice to Larimer County officials (supervised by Defendant Brant) that his unemployment benefits were exhausted and that he faced imminent displacement.

46. In July 2023, the State of Colorado suspended Plaintiff's driver's license for "CHILD SUPPORT NONPYMNT." This suspension was executed without an ability-to-pay hearing and without any notice of Plaintiff's right to request one, in direct violation of the procedural due process safeguards mandated by the Supreme Court in Turner v. Rogers, 564 U.S. 431 (2011).

47. Because Plaintiff's sole source of income was rideshare driving, the unlawful license suspension executed in July 2023 completely eliminated his ability to earn

wages. This unconstitutional deprivation of his livelihood, without an ability-to-pay hearing, was the direct and foreseeable cause of 527 consecutive days of documented homelessness.

48. On November 18, 2024, Defendant Jennifer Brant personally authorized a subsequent discretionary license suspension against Plaintiff. (See Exhibit 11.) She executed this punitive sanction with complete administrative control, affirmatively choosing to bypass any review of: (a) Plaintiff's active wage garnishment establishing ability to pay; (b) the obligee's written waiver of arrears; or (c) the foundational validity of the underlying debt.

**F. Formal Notice and Institutional Response (October 2025 – December 2025)**

49. On October 10, 2025, Plaintiff sent formal written notice via email to Defendants Johnston, Brant, Jashinsky, Spicciati, O'Hayre, Lucero, Boyd, and Rodig. The notice explicitly stated: "I found nothing, because there was never a child support order entered into this case — as is clearly stated in the minute order on [June] 10th 2015," and warned that "every dime was collected illegally." See Exhibit 4.

50. Despite possessing actual knowledge of the missing judicial predicate, Defendants failed to halt enforcement, failed to initiate any record audit, and continued all punitive enforcement measures.

51. On November 12, 2025, Plaintiff engaged in constitutionally protected petitioning activity by filing a Motion for Reconsideration in state court challenging the legal validity of the enforcement orders.

52. On November 13, 2025 — precisely 24 hours after Plaintiff filed this protected petition — Defendant Cindy Lucero issued a targeted, manual payment demand against Plaintiff without any new factual or legal basis.

53. On October 20, 2025, Defendant Spicciati filed a legal opposition to Plaintiff's state court motion in the wrong case number — Case No. 2015JV229, a juvenile dependency matter referencing entirely unrelated children — rather than responding to Plaintiff's domestic relations case.

54. On November 26, 2025, Plaintiff emailed Defendant Johnston detailing extreme anxiety, a mental health crisis, and suicidal ideation caused directly by the agency's ongoing, unconstitutional enforcement.

55. On December 2, 2025, rather than pausing enforcement or initiating an investigation into the missing judicial predicate, Defendant Johnston responded by providing Plaintiff with a link to the "988" Suicide and Crisis Lifeline. See Exhibit 9.

**G. Exhaustion of State Remedies and Administrative Admission (January 13, 2026)**

56. On December 5, 2025, Plaintiff submitted a formal records request to the Larimer County Combined Courts Records Department seeking a certified copy of the

original 2015 child support order.

57. On January 13, 2026, the Records Department formally responded that it could not provide a copy of the original 2015 order, providing only the 2022 modification order. See Exhibit 2.

58. The court's official inability to produce the foundational document upon which ten years of asset seizure was based constitutes an administrative admission that no valid, enforceable 2015 child support order exists in the court's official file.

59. On that same date, the state district court denied Plaintiff's Motion for Reconsideration on procedural time-bar grounds without addressing the substantive absence of the foundational order. The simultaneous administrative admission and judicial refusal to reach the merits confirms that no adequate state remedy exists, necessitating federal intervention.

**H. FCRA Violations: Willful Credit Destruction (2015 – Present)**

60. Defendants opened and maintained negative tradelines — designated "CO DIVISION OF CHILD S" and "SD DIV OF CHILD SUPPOR" — with Experian, Equifax, and TransUnion.

61. The Colorado tradeline reports a "Date Opened" of June 9, 2015. This date is a legal impossibility: the court's official record confirms it was "UNABLE TO ENTER SUPPORT ORDERS" on June 10, 2015. See Exhibit 3. A valid debt cannot be opened and reported the day before the court formally admitted it lacked the statutory prerequisites to create it.

62. South Dakota Defendants Boyd and Rodig caused "SD DIV OF CHILD SUPPOR" to report adverse collection markers for 104 months — May 2017 through January 2026 — despite South Dakota officials acknowledging they had no independent UIFSA jurisdiction. Furthermore, Defendants re-aged the South Dakota tradeline by reporting three distinct new-account events to TransUnion (in 2017, February 2021, and September 2021), multiplying the punitive credit impact.

63. Plaintiff formally disputed the accuracy of the false tradelines with the credit bureaus in August 2021 (South Dakota) and April 2025 (Colorado). These disputes triggered Defendants' mandatory statutory duty under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation into the foundational validity of the debt.

64. A reasonable investigation would have required a single inquiry to the Larimer County Court Records Department — which, as confirmed on January 13, 2026, cannot produce the foundational order. Instead, Colorado Defendants certified to Experian in April 2025 that the debt was "accurate and verified." South Dakota Defendants Boyd and Rodig made the same certification in August 2021. See Exhibit 13.

65. Despite receiving formal written notice on October 10, 2025, that the foundational

order does not exist, Defendants continued to furnish negative information. As of February 7, 2026, Plaintiff's Equifax report reflects an outstanding balance of $15,049 flagged as "OVER 120 DAYS PAST DUE." See Exhibit 12. Plaintiff's FICO score remains at 461.

66. As of February 25, 2026, Plaintiff's Equifax report reflects a re-aging violation in which the Date of First Delinquency was advanced forward by 31 days between the February 7, 2026 and February 25, 2026 reports — occurring on the same date as the filing of this First Amended Complaint. See Exhibit 12A. Additionally, Plaintiff's South Dakota credit alerts reflect continued adverse reporting by the SD furnisher. See Exhibit 15.

## V. MONELL LIABILITY: LARIMER COUNTY'S UNCONSTITUTIONAL CUSTOMS

67. Under Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipality is liable under 42 U.S.C. § 1983 when its official policy or widespread custom — adopted or ratified by officials with final policymaking authority — is the "moving force" behind a constitutional violation.

68. Larimer County maintained the following five unconstitutional customs with deliberate indifference by final policymakers, and each custom was a direct, proximate cause of the constitutional injuries described herein.

### Custom 1 — Enforcement Without Order Verification

69. The County maintained a widespread custom of initiating and continuing administrative enforcement actions without verifying the existence of a valid, enforceable court order in the official ICON register.

70. This custom is evidenced by: (a) seven years of enforcement (2015–2022) despite the governing minute order explicitly stating the court was "UNABLE TO ENTER SUPPORT ORDERS"; (b) the complete absence of a "Child Support Order-1st" entry in the ICON register until June 2, 2022; and (c) the court's January 13, 2026 administrative admission that it cannot produce the original 2015 order. See Exhibits 1 and 2.

71. This custom was maintained with deliberate indifference by supervisory officials — including Manager Carleen Johnston and Director Heather O'Hayre — who knew or should have known that enforcement without a verified judicial predicate would inevitably result in unconstitutional property seizure.

### Custom 2 — Automatic License Suspension Without Ability-to-Pay Hearings

72. The County maintained a de facto policy of deliberately suspending driver's licenses for child support non-payment without conducting the mandatory ability-

to-pay hearings required by Turner v. Rogers, 564 U.S. 431 (2011).

73. This custom is evidenced by: (a) the July 2023 license suspension executed without a hearing despite Plaintiff's May 22, 2023 formal notice of unemployment and imminent displacement; and (b) the November 2024 suspension authorized by Defendant Brant without review of Plaintiff's active wage garnishment, pending legal challenges, or the obligee's written waiver of arrears.

74. This deliberate administrative custom — supervised and ratified by Defendant Brant and Defendant Johnston — was the direct moving force that eliminated Plaintiff's income capacity and caused 527 days of homelessness.

**<u>Custom 3 — Use of Incorrect Worksheets to Inflate Collections</u>**

75. The County engaged in a widespread custom of utilizing Worksheet A (Sole Physical Care) to calculate support obligations despite governing parenting plans explicitly establishing "Shared Physical Care," artificially maximizing collection revenue in violation of C.R.S. § 14-10-115.

76. This custom is evidenced by Defendant Jashinsky's July 7, 2022 written admission that "the parenting plan makes it sound like they will share custody," combined with his deliberate refusal to apply the statutorily mandated Worksheet B. This practice, ratified by Defendant Brant, manufactured between $50,000 and $70,000 in fictitious debt.

**<u>Custom 4 — Failure to Investigate After Notice of Constitutional Violations</u>**

77. The County maintained a custom of actively ignoring formal notices of constitutional violations and illegality.

78. This custom is evidenced by: (a) Defendant Spicciati's failure to investigate after receiving formal written notice on November 14, 2025, of potential falsification of court records; and (b) Defendant Johnston's response to Plaintiff's explicit notice of enforcement-induced suicidal ideation — a "988" crisis referral in lieu of any investigation into the void foundational order.

**<u>Custom 5 — Ratification of Unconstitutional Conduct After Formal Notice</u>**

79. On October 10, 2025, supervisory officials with final policymaking authority — including Manager Johnston, Senior Supervisor Brant, and Director O'Hayre — received explicit written notice from Plaintiff that "there was never a child support order entered" and that "every dime was collected illegally."

80. Despite possessing actual knowledge of the foundational record defect, these policymakers conducted no investigation, failed to halt enforcement, and affirmatively authorized continued enforcement — including a retaliatory payment demand, misfiled legal opposition, and renewed license suspension.

81. This conscious ratification of unconstitutional conduct by final policymakers after actual notice establishes direct municipal liability for Larimer County. This ratification was confirmed in writing on February 5, 2026, when Larimer County Human Services Director Heather O'Hayre, acting as final policymaker, explicitly defended and authorized all enforcement actions described herein. See Exhibit 14. Specifically, Director O'Hayre officially ratified the unconstitutional custom by: (a) Assuming Judicial Authority: Unilaterally declaring the foundational order valid despite possessing no judicial credentials to overrule C.R.S. § 26-13-106; (b) Deploying a Semantic Shield: Downgrading the total lack of foundational jurisdiction and the unconstitutional 2022 data entry into harmless "notations of the court clerk"; (c) Prioritizing Policy Over Federal Law: Citing internal administrative policy (9 CCR 2504-1) to justify license suspensions while exhibiting deliberate indifference to Supreme Court precedent (Turner v. Rogers), and improperly weaponizing Title IV-D regulations to excuse the agency's direct violation of federal law (45 C.F.R. § 303.11) prohibiting collections while a child is in state-funded care.

## VI. CLAIMS FOR RELIEF

### COUNT I — PROCEDURAL DUE PROCESS
### Violation of the Fourteenth Amendment — License Suspensions Without Ability-to-Pay Hearings
### 42 U.S.C. § 1983

82. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

83. This Count is brought against Defendants Carleen Johnston, Jennifer Brant, Timothy J. Jashinsky, Cindy Lucero, Wendy Batts, Arthur J. Spicciati, Larry Boyd, Jane Rodig, Heather O'Hayre, Michelle Barnes, and Laurie Gill in their individual capacities for damages, in their official capacities for injunctive relief, and against Larimer County, Colorado under Monell.

84. The Fourteenth Amendment prohibits states from depriving persons of property and liberty interests — including the right to maintain a driver's license and to pursue a lawful occupation — without due process of law.

85. In Turner v. Rogers, 564 U.S. 431, 448 (2011), the Supreme Court held that before imposing coercive sanctions to enforce child support obligations, due process requires, at minimum: (1) notice that the defendant's ability to pay is a critical issue; and (2) a meaningful opportunity to be heard on that question.

86. Defendants Carleen Johnston and Jennifer Brant authorized, maintained, and executed the deliberate suspension of Plaintiff's driver's license for "CHILD SUPPORT NONPYMNT" on multiple occasions, including July 2023 and December 2024.

87. While Defendants may assert statutory authority to suspend driving privileges

under C.R.S. § 26-13-123, they willfully ignored the constitutional condition precedent to that authority: the ability-to-pay hearing.

88. Plaintiff received no notice that a hearing could be requested and was therefore unable to invoke the constitutionally protected procedure established in Turner.

89. The deliberate enforcement protocols employed by Defendants bypassed this mandatory safeguard entirely — operating as an administrative system in which human actors executed punitive deprivations without evaluating individualized financial reality or verifying the validity of the underlying obligation.

90. Because Plaintiff's sole source of income was rideshare driving, the unlawful suspension directly eliminated his ability to earn wages, triggering 527 documented days of homelessness.

91. Defendants Johnston, Brant, and Larimer County are liable for maintaining Custom 2 — the widespread policy of deliberate license suspensions without mandatory ability-to-pay hearings — which was the direct moving force behind these liberty deprivations.

**COUNT II — PROCEDURAL DUE PROCESS**
**Violation of the Fourteenth Amendment — Enforcement Based on Void or Violated Court Order**
**42 U.S.C. § 1983**

92. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

93. This Count is brought against all individual Defendants in their individual capacities for damages, in their official capacities for injunctive relief, and against Larimer County, Colorado under Monell.

94. The Fourteenth Amendment prohibits states from depriving persons of property without due process of law. A mandatory precondition for any lawful state garnishment is the existence of a valid, enforceable court order.

95. Defendants' administrative enforcement actions caused total economic damages of $173,004.42 to Plaintiff through enforcement conducted without a valid judicial predicate. This deprivation occurred under three independent factual scenarios, any of which establishes a standalone procedural due process violation:

96. Scenario A — No Valid Order Existed (2015–2022): The court's June 10, 2015 minute order (Event ID 000020) explicitly stated it was "UNABLE TO ENTER SUPPORT ORDERS AS WE ARE MISSING SSN FOR CHILDREN." Under C.R.S. § 26-13-106, the provision of Social Security Numbers is a mandatory statutory prerequisite; its absence rendered any purported order void ab initio. No "Child Support Order-1st" entry exists in the ICON register until June 2, 2022. The January 13, 2026 court records admission confirms no valid order exists in the official file. All enforcement from 2015 to 2022 was therefore conducted

without lawful authority.

97. Scenario B — Violation of Direct-Pay Order: If the June 9, 2015 minute order is construed as creating a valid obligation, it explicitly directed that support be "paid directly to Petitioner rather than an income assignment." By executing administrative wage garnishments and tax intercepts in contravention of this express directive, Defendants acted ultra vires and violated the terms of the governing court order for ten years.

98. Scenario C — Void-Modification Doctrine: Defendants cannot claim the June 2, 2022 administrative entry retroactively legitimizes prior enforcement. Under Colorado law, a void order cannot be modified — it must be vacated and re-entered ab initio. People v. District Court, 713 P.2d 918 (Colo. 1986). The 2022 entry provides no legal foundation for the enforcement conducted between 2015 and 2022.

99. On October 10, 2025, Plaintiff provided formal written notice to Defendants that no valid order existed and that all collections were illegal. See Exhibit 4. Despite possessing actual knowledge of this foundational defect, Defendants willfully continued enforcement — eliminating any good-faith defense.

100. The total economic damages of $173,004.42 caused by Defendants' unlawful enforcement depleted Plaintiff's financial reserves and was the direct and proximate cause of his inability to secure housing and his subsequent 527 days of documented homelessness.

101. Defendants and Larimer County are liable under Monell for maintaining Custom 1 (enforcement without order verification) and Custom 5 (ratification of unconstitutional conduct after notice), which were the direct moving forces behind these property deprivations.

## COUNT III — EQUAL PROTECTION
### Violation of the Fourteenth Amendment — Worksheet Fraud and Selective Enforcement
### 42 U.S.C. § 1983

102. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

103. This Count is brought against all individual Defendants in their individual capacities for damages, in their official capacities for injunctive relief, and against Larimer County, Colorado under Monell.

104. The Fourteenth Amendment's Equal Protection Clause prohibits the arbitrary, disparate application of statutes, including class-of-one selective enforcement. Village of Willowbrook v. Olech, 528 U.S. 562 (2000).

105. Worksheet Fraud: The court-adopted 2015 Parenting Plan explicitly established "SHARED PHYSICAL CARE" for the minor children. Under C.R.S. § 14-10-115(1)(b)(III), this arrangement mandates the use of Worksheet B (Shared

Care Formula) to calculate support obligations.

106. In direct contravention of the controlling Parenting Plan and state statute, Defendants systematically applied Worksheet A (Sole Physical Care), attributing 365 overnight custody days annually to the obligee and zero to Plaintiff.

107. This was not a clerical error but an intentional choice. On July 7, 2022, Defendant Jashinsky admitted in writing that "the parenting plan makes it sound like they will share custody," yet explicitly refused to apply Worksheet B. This intentional misuse of the statutory formula manufactured between $50,000 and $70,000 in fictitious debt. See Brandon v. Allen, 645 F. Supp. 1261, 1266 (W.D. Tenn. 1986).

108. Selective Enforcement: Defendants enforced an inflexible presumption that Plaintiff must remain the obligor regardless of the documented factual reality of custody, specifically by: (a) collecting support from Plaintiff during the months when R.H. resided with him as the actual physical custodian, without requiring the female obligee to pay support during this role reversal; (b) continuing to collect support from Plaintiff while E.H. was in 24/7 state-funded residential care, in direct violation of 45 C.F.R. § 303.11(b)(12), while simultaneously remitting those collections to the obligee; (c) willfully ignoring a written waiver of all arrears executed by the obligee on November 1, 2022, and issuing a notice of noncompliance within 17 days of receiving that written waiver.

109. The County's selective enforcement is further evidenced by the written admission of Director O'Hayre on February 5, 2026. See Exhibit 14. Rather than correcting the factual record to reflect the child's placement in state-funded care, Defendants weaponized Plaintiff's modification request to selectively emancipate one child while deliberately utilizing an incorrect Worksheet A to maximize financial extraction for the other.

110. Following Plaintiff's formal written notice on October 10, 2025, Defendants continued to enforce the debt based on the incorrect Worksheet A, confirming that the disparate treatment lacked any rational basis and was motivated by a desire to maximize agency collection revenue rather than any legitimate governmental interest.

111. Defendants Jashinsky, Brant, Johnston, and Larimer County are liable under Monell for maintaining Custom 3 (incorrect worksheet application) and Custom 5 (ratification after notice), which were the moving forces behind this equal protection violation.

## COUNT IV — SUBSTANTIVE DUE PROCESS
## Violation of the Fourteenth Amendment — Conscience-Shocking Conduct
## 42 U.S.C. § 1983

112. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

113. This Count is brought against all individual Defendants in their individual capacities for damages, in their official capacities for injunctive relief, and against Larimer County, Colorado under Monell.

114. The Fourteenth Amendment's substantive due process protections prohibit government conduct so egregious and arbitrary that it "shocks the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).

115. Defendants' cumulative decade-long pattern of enforcement constitutes conduct that, viewed in its totality, shocks the conscience. This pattern includes: (a) executing wage garnishments and tax intercepts for seven years based on a minute order that explicitly stated the court was "UNABLE TO ENTER SUPPORT ORDERS," seizing property without any valid judicial predicate; (b) seizing $12,440 from Plaintiff while his minor daughter was in 24/7 state-funded residential treatment — directly violating federal regulation 45 C.F.R. § 303.11 — and simultaneously remitting those unlawfully seized funds to the obligee; (c) creating contradictory administrative classifications in which the State of South Dakota formally recognized Plaintiff as the custodial parent and payee for adoption subsidies while the same state's child support agency simultaneously garnished Plaintiff as the non-custodial obligor for the same child; (d) intentionally applying Worksheet A despite written internal acknowledgment that shared custody existed, manufacturing $50,000 to $70,000 in fictitious debt.

116. The conscience-shocking character of this conduct is crystallized by Defendants' response to explicit notice of the life-threatening harm they were causing. On November 26, 2025, Plaintiff informed Defendant Johnston that the agency's ongoing enforcement had caused him to experience suicidal ideation. On December 2, 2025, Defendant Johnston provided a "988" crisis hotline referral rather than pausing enforcement or investigating the admitted absence of a judicial predicate. See Exhibit 9.

117. By acknowledging Plaintiff's suicidal crisis while simultaneously authorizing the enforcement that caused it, Defendant Johnston treated a constitutional property injury as a mental health liability issue — prioritizing administrative continuity over human life. This constitutes deliberate indifference under County of Sacramento v. Lewis.

118. The causal chain is direct and foreseeable. The $12,440 in illegal collections during E.H.'s state care depleted Plaintiff's reserves; the depletion caused his May 2023 displacement; the July 2023 license suspension eliminated his income; and the income elimination caused 527 days of homelessness and the destruction of his ability to provide housing for his daughter upon her discharge from state care.

119. This conscience-shocking pattern of enforcement was not random error but the foreseeable consequence of Larimer County's officially maintained Customs 1 through 5, which collectively prioritized automated collection and federal incentive revenue over forensic record integrity and constitutional rights.

**COUNT V — FIRST AMENDMENT RETALIATION**
**Violation of the First Amendment — Petitioning Activity**
**42 U.S.C. § 1983**

120. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

121. This Count is brought against Defendant Cindy Lucero in her individual capacity for damages and in her official capacity for injunctive relief, and against Larimer County, Colorado under Monell.

122. The First Amendment protects the right of citizens to petition the government for redress of grievances, which encompasses the fundamental right to file motions in court challenging the legality of government enforcement without facing retaliatory adverse actions from state officials.

123. On November 12, 2025, Plaintiff engaged in constitutionally protected petitioning activity by filing a Motion for Reconsideration in state court formally challenging the legal validity of the child support orders and the underlying foundational judicial record.

124. On November 13, 2025 — less than 24 hours after Plaintiff filed this protected petition — Defendant Cindy Lucero issued a targeted, manual payment demand against Plaintiff.

125. Defendant Lucero issued this adverse action with actual knowledge that the legal predicate for the debt was void and disputed. Plaintiff had provided explicit written notice to Defendant Lucero on October 10, 2025, that no valid court order existed and that "every dime was collected illegally." See Exhibit 4.

126. The payment demand was issued without any new factual basis — no new arrearage had been calculated, no new enforcement event had occurred, and no judicial authority had been invoked. The only event intervening between the prior enforcement posture and this new demand was Plaintiff's protected filing.

127. The extreme temporal proximity of less than 24 hours between Plaintiff's protected petitioning activity and Defendant Lucero's adverse action establishes a clear prima facie case of retaliatory causation. See Ramirez v. Escajeda, 58 F.4th 671, 678 (5th Cir. 2023); Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000).

128. This retaliatory action was designed to chill Plaintiff's exercise of his First Amendment rights and directly intensified his financial strain, compounding the economic burdens already contributing to his homelessness.

129. Larimer County is liable under Monell for this violation because the retaliatory act was committed pursuant to the County's Custom 4 (failure to investigate after notice) and Custom 5 (ratification of unconstitutional conduct).

**COUNT VI — FAIR CREDIT REPORTING ACT**

**Willful Furnishing of False Information**
**15 U.S.C. § 1681n and § 1681s-2**

130. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

131. This Count is brought against Defendants Carleen Johnston, Jennifer Brant, Timothy J. Jashinsky, Cindy Lucero, Wendy Batts, Arthur J. Spicciati, Larry Boyd, Jane Rodig, Heather O'Hayre, Michelle Barnes, Laurie Gill, and Larimer County in their capacities as "furnishers of information" within the meaning of 15 U.S.C. § 1681s-2.

132. Furnisher Status: Any entity that reports information to a consumer reporting agency is a "furnisher" under the FCRA. This designation explicitly encompasses state and local government agencies reporting in a debt collection capacity.

133. The Colorado Violation: On June 9, 2015, Colorado Defendants opened a child support tradeline with Experian. The very next day, June 10, 2015, the court officially admitted it was "UNABLE TO ENTER SUPPORT ORDERS." See Exhibit 3. This tradeline reports a debt that was opened before the court acknowledged the administrative incapacity preventing its creation — a temporal impossibility evidencing false reporting from inception. Colorado Defendants maintained this false tradeline for 127 months.

134. The South Dakota Triple-Reporting Violation: Defendants Boyd and Rodig caused "SD DIV OF CHILD SUPPOR" to report adverse collection markers for 104 months (May 2017 through January 2026). South Dakota Defendants additionally re-aged the debt by reporting three distinct new-account events to TransUnion (in 2017, February 2021, and September 2021), multiplying the punitive credit impact. Defendant Rodig continued to furnish negative information to the credit bureaus even after receiving the November 1, 2022 written waiver from the obligee of all arrears. See Exhibit 15.

135. Failure to Investigate (15 U.S.C. § 1681s-2(b)): Plaintiff's August 2021 and April 2025 formal disputes triggered Defendants' mandatory duty to conduct a reasonable investigation into the accuracy of the reported information. A reasonable investigation would have required a single inquiry to the Larimer County Court Records Department — which on January 13, 2026, confirmed it cannot produce the foundational 2015 order. See Exhibit 2. Instead, South Dakota Defendants certified the debt as accurate in August 2021, and Colorado Defendants certified it as accurate in April 2025. See Exhibit 13.

136. Willful Noncompliance (15 U.S.C. § 1681n): Defendants' knowing certification of false information after formal disputes constitutes willful noncompliance under the FCRA. This willfulness is compounded by the October 10, 2025 formal notice to all named Defendants that the foundational order does not exist — after which Defendants continued to report the $15,049 balance as

"120 days past due" through at least February 2026. See Exhibits 12 and 15.

137. This is not a passive data error. Human beings at both state agencies reviewed the file following formal disputes and explicitly certified false information to federal credit bureaus. The willfulness is documented, specific, and ongoing.

138. Statutory Damages: Under 15 U.S.C. § 1681n(a)(1)(A), Plaintiff is entitled to statutory damages of $1,000 per willful violation. Colorado's 127-month false reporting generates $127,000 in statutory damages. South Dakota's 104-month false reporting generates $104,000. Total FCRA statutory damages: $231,000.

139. Actual Damages (15 U.S.C. § 1681o): The false tradelines suppressed Plaintiff's credit to a FICO score of 461, directly causing denial of housing applications and precipitating 527 days of documented homelessness. The credit destruction also prevented Plaintiff from securing business financing, contractor agreements, and cloud infrastructure credits necessary to operate his software development business — causing additional economic losses to be proven at trial.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gerald Paul Hershfeldt respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

### A. Declaratory Relief

140. A declaration pursuant to 28 U.S.C. § 2201 that Defendants' child support enforcement actions from June 2015 through the present were conducted without lawful judicial authority, in violation of the Fourteenth Amendment to the United States Constitution and applicable federal law.

### B. Injunctive Relief

141. A permanent injunction enjoining Defendants from: (a) suspending Plaintiff's driver's license or any other license based on the debt associated with Case No. 2015DR000229 without first conducting a constitutionally compliant ability-to-pay hearing as required by Turner v. Rogers, 564 U.S. 431 (2011); (b) garnishing Plaintiff's wages, intercepting his tax refunds, or seizing any other property based on any obligation derived from the void 2015 enforcement period; (c) furnishing any negative credit information related to Case No. 2015DR000229 to any consumer reporting agency.

142. A mandatory injunction compelling Defendants to direct Experian, Equifax, and TransUnion to permanently delete all tradelines and adverse entries associated with Case No. 2015DR000229 within thirty (30) days of the Court's order.

**C. Restitution**

143. An order of restitution and financial credit in the amount of $37,337.42, representing funds unlawfully seized or wrongfully withheld from Plaintiff: (a) $19,532.00 in documented direct payments and offsets made in good faith requiring mandatory credit and offset against any balance; (b) $12,440.00 unlawfully collected while E.H. was in 24/7 state-funded care, in direct violation of 45 C.F.R. § 303.11(b)(12); (c) $5,365.42 in forensic ledger discrepancies that Defendants' own records cannot justify.

**D. Compensatory Damages**

144. Compensatory damages against all individual Defendants and Larimer County in an amount to be proven at trial for: loss of earnings and livelihood attributable to unlawful license suspensions; costs and losses attributable to 527 days of documented homelessness; lost business income and professional opportunity; loss of housing and associated relocation costs; and all other actual damages proximately caused by Defendants' constitutional violations.

**E. FCRA Statutory Damages**

145. Statutory damages of $231,000 pursuant to 15 U.S.C. § 1681n for 231 months of willful furnishing of false credit information: 127 months by Colorado Defendants and 104 months by South Dakota Defendants.

**F. Punitive Damages**

146. Punitive damages against the individual Defendants in an amount to be determined by a jury, sufficient to punish and deter the deliberate indifference, knowing disregard of constitutional rights, and conscience-shocking conduct described herein. See 42 U.S.C. § 1983 (Smith v. Wade, 461 U.S. 30 (1983)); 15 U.S.C. § 1681n (FCRA punitive damages).

**G. Attorney Fees and Costs**

147. Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and 15 U.S.C. § 1681n(a)(3).

**H. Additional Relief**

148. Such other and further relief as this Court deems just, proper, and equitable.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all claims so triable.

## VERIFICATION

I, Gerald Paul Hershfeldt, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that: I am the Plaintiff in the above-captioned matter. I have read the foregoing First Amended Complaint. The factual allegations contained therein are true and correct to the best of my personal knowledge and belief, except as to matters alleged on information and belief, which I also believe to be true.

Executed this 26th day of February, 2026.

Respectfully submitted,

/s/ Gerald Paul Hershfeldt
GERALD PAUL HERSHFELDT
Pro Se Plaintiff
Denver, CO 80203

Dated: February 26, 2026

**EXHIBIT INDEX**

Exhibit 1: June 10, 2015 ICON Minute Order — "UNABLE TO ENTER SUPPORT ORDERS"
Exhibit 2: January 13, 2026 Court Records Department Written Admission
Exhibit 3: Experian Credit Report — Colorado Tradeline "Date Opened" June 9, 2015
Exhibit 4: October 10, 2025 Formal Notice to All Defendants (Email Chain)
Exhibit 5: Boyd — UIFSA Enforcement Clarification / Interstate Bypass Documentation
Exhibit 6: Family Support Registry — Complete Payment Ledger (Net $37,337.42)
Exhibit 7: Jashinsky/Batts — July 2022 Written Admission of Custody Inversion
Exhibit 8: Blanco — Digital Courts Committee / Systemic Ratification
Exhibit 9: Johnston — 988 Crisis Line Response, December 2, 2025
Exhibit 10: ICON Register of Actions — Case 2015DR000229 (NA Entry June 2, 2022)
Exhibit 11: Brant — February 5, 2025 Enforcement Policy Admission
Exhibit 12: Equifax Credit Report — February 7, 2026 (FCRA Violation)
Exhibit 12A: Equifax Credit Report — February 25, 2026 (Re-Aging Violation)
Exhibit 13: Experian Dispute Results — November 18, 2022 and April 7, 2025 ("Remains")
Exhibit 14: O'Hayre — February 5, 2026 Agency Ratification Letter
Exhibit 15: South Dakota Credit Alerts — Continued Adverse Reporting

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2026, I electronically filed the foregoing First Amended Complaint and Jury Demand with the Clerk of the Court using the CM/ECF system, and that service will be accomplished through the CM/ECF system upon all parties who have appeared or will be served pursuant to Federal Rule of Civil Procedure 4.

/s/ Gerald Paul Hershfeldt
GERALD PAUL HERSHFELDT
Pro Se Plaintiff
February 26, 2026