**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-00342-RTG
Magistrate Judge Richard T. Gurley

GERALD PAUL HERSHFELDT,
Plaintiff,
v.
CARLEEN JOHNSTON, et al.,
Defendants.

# PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. P. 65

## I. INTRODUCTION AND RELIEF REQUESTED

1. Plaintiff Gerald Paul Hershfeldt, proceeding pro se, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 65 for a Temporary Restraining Order and Preliminary Injunction requiring Defendants to: (a) immediately direct Experian, Equifax, and TransUnion to suppress or delete all negative tradelines associated with Case No. 2015DR000229; and (b) immediately cease all wage garnishment, tax intercept, and license suspension enforcement actions predicated on that case number.
2. This motion is supported by the First Amended Complaint filed concurrently herewith, the exhibits attached thereto, and the declaration of Plaintiff set forth below.
3. Emergency relief is warranted because Plaintiff is currently experiencing homelessness caused by Defendants' enforcement of a void support order and related false credit reporting, which is blocking housing and employment opportunities. The harm is ongoing, concrete, and irreversible absent immediate intervention.

## II. LEGAL STANDARD

4. A party seeking a temporary restraining order must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008); RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1208 (10th Cir. 2009). Because Plaintiff seeks a mandatory injunction requiring affirmative suppression of tradelines and cessation of enforcement, the heightened standard in Schrier v. Univ. of Colo. applies. See infra ¶ 6.

5. In the Tenth Circuit, a movant may also obtain relief by demonstrating that the first three Winter factors weigh heavily in its favor. Okla. ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc., 455 F.3d 1107, 1113 (10th Cir. 2006). Even under this heightened sliding-scale standard, Plaintiff meets the burden: the documentary record eliminates any genuine dispute as to the core FCRA violation, and the irreparable harm and equities sections that follow establish that both factors weigh heavily in Plaintiff's favor.

6. Where, as here, a plaintiff seeks a mandatory injunction compelling affirmative action, the standard requires a showing of clearly established legal rights and that without relief, extreme or very serious damage will result. Schrier v. Univ. of Colo., 427 F.3d 1253, 1259 (10th Cir. 2005).

## III. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

### A. FCRA Claims — Willful False Reporting (15 U.S.C. section 1681n)

7. Plaintiff's FCRA claims present the strongest foundation for emergency relief because the violation is largely documentary and not dependent on credibility determinations at this stage.

8. The Colorado tradeline reports a Date Opened of June 9, 2015. The court's own official ICON record — Event ID 000020, entered June 10, 2015 — states explicitly: UNABLE TO ENTER SUPPORT ORDERS AS WE ARE MISSING SSN FOR CHILDREN. See Exhibit 1. A debt cannot legally be opened and reported on June 9, 2015 when the court formally admitted the day after that it lacked the statutory prerequisites to create it.

9. On January 13, 2026, the Larimer County Court Records Department confirmed in writing that it cannot produce the original 2015 support order. See Exhibit 2. Defendants own court system has admitted the foundational order does not exist in the official file.

10. Despite this admission, Defendants Equifax tradeline as of February 7, 2026 reflects a balance of $15,049 flagged as OVER 120 DAYS PAST DUE. See Exhibit 12. As of February 25, 2026, Defendants committed a re-aging violation by advancing the Date of First Delinquency forward 31 days. See Exhibit 12A. Re-aging constitutes a direct violation of 15 U.S.C. § 1681c(c).

11. Plaintiff formally disputed the accuracy of the tradelines in August 2021 and April 2025. After each dispute, Defendants certified the information as accurate without investigating the existence of the underlying order. See Exhibit 13. Certification of known false information after formal dispute constitutes willful noncompliance under 15 U.S.C. section 1681n.

### B. Constitutional Claims — Due Process (42 U.S.C. section 1983)

12. The June 10, 2015 minute order constitutes a judicial admission of administrative incapacity to enter an enforceable order. No Child Support Order-1st entry appears in the ICON Register of Actions until June 2, 2022 — seven years after enforcement began. See Exhibit 10. The absence of any valid judgment or order authorizing enforcement deprived Plaintiff of the procedural protections required before deprivation of property interests under Mathews v. Eldridge, 424 U.S. 319, 335 (1976), which demands consideration of the private interest, the risk of erroneous deprivation, and the governmental interest. Where there is no valid underlying order, the risk of erroneous deprivation is not merely high — it is certain.

13. The November 2024 license suspension, personally authorized by Defendant Brant per Exhibit 11, was executed without an ability-to-pay hearing in direct violation of Turner v. Rogers, 564 U.S. 431 (2011).

## IV. PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT RELIEF

14. Irreparable harm is harm that cannot be remedied through damages alone. Heideman v. South Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003). Ongoing false credit reporting causing denial of housing constitutes irreparable harm that cannot be adequately compensated after the fact. Here, the irreparable harm is compounded by a documented "Causation Paradox": Defendants have officially attributed Plaintiff's homelessness to "unemployment and negative credit reporting" — while simultaneously being the unconstitutional cause of both.

15. Plaintiff is currently experiencing homelessness. The false tradelines — reporting a $15,049 balance over 120 days past due and suppressing Plaintiff's FICO score to 461 — are directly foreclosing every available housing application. A FICO score of 461 disqualifies Plaintiff from virtually every standard rental application and housing assistance program requiring a credit check. In her February 5, 2026 ratification letter (Exhibit 14), Director O'Hayre officially stated: "Based on your prior statements, you lost your housing in June of 2023 due to your apartment building being sold, and you state you were unable to obtain new housing due to unemployment and negative credit reporting." This statement functions as an admission that Defendants' enforcement actions and false credit reporting caused the housing loss. The record establishes that in July 2023, Defendants suspended Plaintiff's driver's license — his sole means of income as a rideshare driver — without the ability-to-pay hearing mandated by Turner v. Rogers, 564 U.S. 431 (2011), and simultaneously maintained false derogatory tradelines that suppressed his FICO score to 461. Plaintiff cannot secure housing without income or credit, and he cannot restore his income or credit while Defendants actively enforce both deprivations on a void judicial predicate. Without immediate injunctive relief, this cycle continues indefinitely.

16. This harm is irreversible. Each day of false reporting further entrenches the negative credit history. Months of derogatory reporting cannot be undone even

after deletion, as the suppressed score affects rental history, employment background checks, and financing applications that have already been denied.

17. The harm is irreparable because Defendants have formally documented their refusal to pause enforcement. When Plaintiff notified Defendant Johnston in writing that the enforcement was creating conditions of suicidal ideation and imminent homelessness, Johnston did not pause or review the enforcement action; she provided a crisis line number. See Exhibit 9. This response documents deliberate indifference to known harm. When Plaintiff subsequently reported his homeless and indigent status to Defendant Brant, Brant confirmed strict adherence to agency "policy and procedures" and initiated a further license suspension in November 2024. See Exhibit 11. Plaintiff is actively applying for housing and employment while this motion is pending. Each denied application based on the false tradeline is a discrete, irreversible injury that accumulates daily.

18. Money damages at trial — potentially two or more years away — cannot restore the housing Plaintiff could not obtain, the employment he did not receive, or the time lost from his children's lives while he remained homeless.

## V. THE BALANCE OF EQUITIES TIPS SHARPLY IN PLAINTIFF'S FAVOR

19. Plaintiff has been homeless for 527 days. Defendants are state agencies and county officials operating with taxpayer funding and legal counsel. The asymmetry of harm is stark. Director O'Hayre's February 5, 2026 letter attributes Plaintiff's housing crisis to "unemployment and negative credit reporting." The record establishes that Defendants caused the unemployment by suspending Plaintiff's driver's license without a Turner v. Rogers ability-to-pay hearing, and caused the credit destruction by furnishing false tradelines on a void judicial predicate. Allowing Defendants to continue enforcement under these circumstances permits government actors to rely on harms they caused as justification for continued coercive measures, contrary to basic due process principles.

20. The relief requested — suppression of the false tradelines pending litigation — imposes minimal burden on Defendants. They are not required to pay money, change internal operations, or admit liability. They are asked only to direct the credit bureaus to suppress entries that their own court's records confirm lack a valid foundational order.

21. Defendants cannot assert a protected interest in continuing to report information that their own official records cannot substantiate. Moreover, Director O'Hayre's letter explicitly states that for license suspensions, "No court hearing is required" under agency administrative policy — a written admission that Defendants operate in direct violation of Turner v. Rogers, 564 U.S. 431 (2011), which requires an ability-to-pay inquiry before coercive sanctions are imposed on indigent individuals. A temporary order halting enforcement on a legally void debt costs the State nothing; it simply suspends the collection machinery until this

Court can review the merits.

## VI. THE PUBLIC INTEREST FAVORS RELIEF

22. Congress enacted the FCRA specifically to ensure the accuracy of credit information and to provide consumers with a meaningful remedy when furnishers report false data. See 15 U.S.C. § 1681(a). Granting relief here advances the public interest that Congress identified: accurate credit reporting enforced against government furnishers, not merely private ones. The Supreme Court in Turner v. Rogers, 564 U.S. 431, 448 (2011), similarly identified a public interest in ensuring that indigent obligors receive ability-to-pay procedural protections before coercive enforcement. Both institutional interests support relief here.

23. There is no public interest in permitting state agencies to enforce a debt that their own issuing court cannot locate, or to suspend licenses without the ability-to-pay inquiry Turner requires. Director O'Hayre's letter formally documents both practices. A federal court granting relief here does not merely benefit this Plaintiff; it enforces Congress's and the Supreme Court's stated policies against a government actor that has placed both in writing its intention to continue.

## VII. PROPOSED TERMS OF TEMPORARY RESTRAINING ORDER

24. Plaintiff respectfully requests that the Court enter a Temporary Restraining Order requiring the following within five (5) business days of entry:

    a. Defendants Colorado Department of Human Services and Larimer County Department of Human Services shall direct Experian, Equifax, and TransUnion to suppress all tradelines associated with Case No. 2015DR000229 pending resolution of this litigation;

    b. Defendant South Dakota Department of Social Services shall direct TransUnion to suppress the tradeline designated SD DIV OF CHILD SUPPOR pending resolution of this litigation;

    c. All Defendants shall immediately cease any new wage garnishment, tax intercept, or license suspension enforcement actions predicated on Case No. 2015DR000229 pending resolution of this litigation;

    d. This Order shall remain in effect pending a hearing on Plaintiff's Motion for Preliminary Injunction, to be scheduled at the Court's earliest convenience.

## VIII. CERTIFICATION PURSUANT TO FED. R. CIV. P. 65(b)

25. Plaintiff certifies that he has been unable to provide prior notice to Defendants without risking immediate retaliatory enforcement action. On November 13, 2025, within 24 hours of Plaintiff's filing of a state court motion challenging the enforcement orders, Defendant Lucero issued a retaliatory payment demand, as

alleged in the First Amended Complaint at ¶ 52. This documented pattern of escalation following Plaintiff's prior legal challenges supports a reasonable fear that formal advance notice would trigger additional enforcement before relief could be obtained, causing irreparable harm in the interval between notice and hearing.

26. In the alternative, Plaintiff respectfully requests that the Court set this matter for an expedited hearing with shortened notice to Defendants consistent with the Court's scheduling availability.

## IX. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant the Temporary Restraining Order as specified above, and set this matter for an expedited preliminary injunction hearing.

Respectfully submitted,

/s/ Gerald Paul Hershfeldt
GERALD PAUL HERSHFELDT
Pro Se Plaintiff
Denver, CO 80203
jerry.hershfeldt@gmail.com
(720) 378-8474
Dated: February 26, 2026