IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-00342-NYW-CYC

GERALD PAUL HERSHFELDT,
Plaintiff,

v.

CARLEEN JOHNSTON, et al.,
Defendants.

PLAINTIFF'S OBJECTIONS TO RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DENYING MOTION FOR TEMPORARY RESTRAINING ORDER
(ECF No. 14)

PLAINTIFF'S UNOPPOSED REQUEST FOR LEAVE TO EXCEED PAGE LIMIT

Pursuant to D.C.COLO. Civil Practice Standard 72.3(c), Plaintiff respectfully requests leave to file these Objections at approximately twelve (12) pages, two pages in excess of the standard limit. Additional pages are required to address two material developments that arose after ECF No. 14 was issued: (1) the March 20, 2026 entry of appearance of defense counsel Michael T. Lowe of Bruno, Colin, Goddard & Lowe, P.C. on behalf of eight Defendants, necessitating updated conferral certification; and (2) a March 20, 2026 email from Defendant Cindy Lucero notifying Plaintiff of a driver's license suspension scheduled for April 20, 2026—issued one day after the U.S. Marshals returned executed summonses—which directly contradicts Director O'Hayre's February 5, 2026 written representation that no suspension had been initiated. These developments are material to the irreparable harm analysis and could not have been presented within the original ten-page allotment.

PRELIMINARY STATEMENT

Plaintiff submits these Objections under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1) to the March 10, 2026 Recommendation (ECF No. 14). De novo review by District Judge Wang is required; this Court may accept new evidence. Fed. R. Civ. P. 72(b)(3). The

Recommendation identified three deficiencies: (1) lack of notice under Rule 65(b)(1); (2) insufficient FCRA analysis; and (3) inadequate irreparable harm showing. Each is cured below. Pursuant to D.C.COLO. Civil Practice Standard 72.3(b), Plaintiff identifies six exhibits introduced in the first instance upon these Objections, curing the specific evidentiary gaps identified in ECF No. 14.

OBJECTION I: THE PROCEDURAL DEFICIENCIES ARE CURED AND PLAINTIFF CONSENTS TO NOTICE

The Magistrate Judge correctly identified that Plaintiff's original motion did not provide adequate notice to all Defendants under Fed. R. Civ. P. 65(b)(1) and D.C.COLO.LCivR 65.1. Plaintiff does not contest this finding.

Plaintiff concedes the ex parte defect and requests this filing be treated as a noticed Preliminary Injunction motion under Fed. R. Civ. P. 65(a). U.S. Marshals have been ordered to effect service (ECF Nos. 16, 18), and returns of service have been filed (ECF No. 20 et seq.). Plaintiff will promptly serve this filing and all exhibits on appearing counsel and will file a certificate of service and updated conferral statement.

OBJECTION II: THE MAGISTRATE JUDGE MISREAD EXHIBIT 2—THE COMPLETE RECORDS CORRESPONDENCE ESTABLISHES THAT NO VALID CHILD SUPPORT ORDER EXISTS IN THE OFFICIAL RECORD

The Magistrate Judge concluded Exhibit 2 "does not appear to admit anything about the nonexistence of an order." ECF No. 14 at 5. Exhibit A provides the complete records chain the Magistrate Judge did not have.

A. What the Complete Records Chain Establishes

Beginning December 1, 2025, Plaintiff requested all child support orders in Case No. 15DR000229 from the Larimer County Combined Courts Records Department. Exhibit A establishes three facts:

First, after a 34-day search, Brigette, Records/Front Counter, Larimer County Combined Courts, produced only one document: the June 2, 2022 Order Modifying Child Support. No child support order predating 2022 was produced.

Second, Brigette's January 13, 2026 email states: "Apologies, Jerry. We have a variety of duties in our department, and it appears that this has been missed in our inbox. Attached is your Child Support Order." The attached document was the June 2, 2022 modification

order.

Third, Plaintiff's January 15, 2026 reply memorializes: "After 34 days, you produced only the 2022 modification order. No signed 2015 mandate or enforceable support order was provided." That statement went unanswered.

This is the court's own production record—not Plaintiff's assertion. The Records Department produced only the 2022 modification order because no predating order exists in the official file.

B. The 2022 Order Confirms the Absence of Any Predicate

The June 2, 2022 Order Modifying Child Support, signed by District Court Magistrate Linda Connors, is titled "ORDER MODIFYING CHILD SUPPORT." A modification order legally presupposes a valid predicate to modify. Because the Records Department's 34-day search produced no such predicate, the 2022 order purports to modify something with no existence in the official record. All enforcement derived from that 2022 order is therefore enforcement without a lawful judicial predicate.

OBJECTION III: THE STATUTORY BRIDGE THE MAGISTRATE JUDGE FOUND MISSING IS ESTABLISHED BY C.R.S. § 26-13-106 AND THE SEPARATION AGREEMENT

The Magistrate Judge found the June 10, 2015 ICON minute order "far from clear." ECF No. 14 at 5–6. C.R.S. § 26-13-106 and the Separation Agreement (Exhibit B) resolve that ambiguity: the statute made SSNs a mandatory prerequisite; the Agreement shows the children's SSNs were blank; the system correctly refused to enter an order.

A. C.R.S. § 26-13-106 Is the Legal Rule

Colorado Revised Statutes § 26-13-106 makes collection of Social Security Numbers for all parties and children a mandatory prerequisite to entry of any child support order. This requirement is not directory; it is mandatory. The ICON system's June 10, 2015 output—"UNABLE TO ENTER SUPPORT ORDERS AS WE ARE MISSING SSN FOR CHILDREN"—is not an error message. It is the system operating correctly: it refused to enter a support order because the statutory prerequisite was not satisfied. The statute provides the legal rule; the minute order is the official record of the legally correct result.

B. The Separation Agreement Is the Factual Proof

Section 2.1 of the Separation Agreement and Parenting Plan (Exhibit B) lists the children's Social Security Numbers as "xxx-xx-____"—the last four digits are blank in the original executed document. By contrast, both parties' Social Security Numbers are populated. The children's SSNs were absent from the submitted Agreement because they were not provided to the court. The ICON system found no SSNs for the children and, pursuant to C.R.S. § 26-13-106, refused to enter a support order. No valid child support order was entered into the official record of Case No. 15DR000229 on June 10, 2015 or at any time prior to June 2, 2022.

C. Defendant O'Hayre's Own Letter Provides the Admission That Eliminates Any Remaining Ambiguity

In her February 5, 2026 agency response letter (Exhibit 14 to the FAC), Defendant O'Hayre identified the legal basis for Larimer County's enforcement in her own words: "The initial court order in this case regarding your child support obligation is the Decree of Dissolution of Marriage which was signed by Magistrate Linda Connors on June 10, 2015 and incorporates the Separation Agreement and Parenting Plan filed on March 4, 2015 which addressed child support."

That statement is an admission, not a defense. O'Hayre did not identify a standalone child support order. She identified the Decree incorporating the Separation Agreement as the operative instrument. The Separation Agreement is Exhibit B hereto. It demonstrates on its face precisely why no valid child support order was ever entered: Section 2.1 lists the children's Social Security Numbers as blank. That is the statutory disqualifier under C.R.S. § 26-13-106. O'Hayre's own identification of the instrument her agency was enforcing leads directly to the document that proves enforcement lacked a lawful predicate.

OBJECTION IV: THE FCRA ELEMENT-BY-ELEMENT ANALYSIS THE MAGISTRATE JUDGE FOUND ABSENT

A. The Causation Chain, Step by Step

1. Colorado Child Support Services, acting through Larimer County DHS under Defendant Michelle Barnes as CDHS Executive Director, furnished a tradeline to Experian reporting a child support debt with a Date Opened of June 9, 2015—the day before the court's ICON system recorded that no support order could be entered. South Dakota DSS, under Defendant Laurie Gill, furnished tradelines to TransUnion and Equifax reporting the same debt. (FAC Exhibits 3, 15.)

2. Plaintiff disputed the accuracy of these tradelines with the consumer reporting agencies in August 2021 (South Dakota) and April 2025 (Colorado). Upon receipt of each dispute, the CRAs were required under 15 U.S.C. § 1681i to notify the respective furnishers within five days.

3. Each furnisher, upon receiving dispute notice, was obligated under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation, correct inaccurate information, and cease furnishing information it could not verify.

4. Rather than investigate, each furnisher verified the tradelines as accurate and continued reporting. The Colorado tradeline was re-aged on February 25, 2026—the same date as the FAC filing. (FAC Exhibit 12A.) A reasonable investigation would have required a single inquiry to the Larimer County Court Records Department, which confirmed on January 13, 2026 that it cannot produce any child support order predating June 2, 2022. No such investigation was conducted.

B. Willfulness Under § 1681n

Willfulness under § 1681n includes reckless disregard of statutory requirements. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57–58 (2007). O'Hayre's February 5, 2026 letter ratified the furnishing posture after actual written notice that no valid predicate order exists in the official record; continued furnishing after formal notice during a pending civil rights action, combined with the February 25, 2026 re-aging event, supports willfulness.

D. South Dakota's Credit Furnishing Was Structurally Unauthorized Under Either Version of the Facts

Defendant Gill furnished tradelines to TransUnion and Equifax under either scenario without authority. If a valid Colorado order existed, 45 C.F.R. § 302.70(a)(14) placed the furnishing obligation on Colorado's IV-D agency—not South Dakota. Brant confirmed in Exhibit E that Colorado retained jurisdiction. If no valid order existed, South Dakota reported a fictitious debt from inception. Under both scenarios South Dakota's furnishing is indefensible; the Court need not resolve the validity question to grant relief against Defendant Gill.

E. Injunctive Relief Is Available

Section 1681n provides for actual damages, statutory damages, punitive damages, and equitable relief including cessation of false furnishing and suppression of false tradelines

during pendency of this action. See TRW Inc. v. Andrews, 534 U.S. 19, 23 (2001).

OBJECTION V: PLAINTIFF ESTABLISHES IRREPARABLE HARM THROUGH DOCUMENTARY EVIDENCE CAUSALLY LINKING THE FALSE TRADELINES TO ONGOING HOMELESSNESS

The Magistrate Judge found that Plaintiff did not make a strong showing of irreparable harm. ECF No. 14 at 6. Plaintiff now submits documentary evidence establishing that chain.

A. The Causal Connection Is Documented in a Third-Party Communication Predating This Lawsuit

The DASHR correspondence (Exhibit C) spans December 12, 2025 through March 1, 2026 and establishes the causal chain in sequence:

December 12, 2025: Plaintiff's initial contact with DASHR following a welfare check. Plaintiff discloses he is homeless and seeking assistance. This contact predates the filing of this lawsuit by more than two months, eliminating any argument that the homelessness narrative was constructed for litigation.

January 22, 2026: Plaintiff writes to DASHR—three days before the federal complaint was filed—that he is moving out of his housing that day and states: "until the lawsuit progresses my credit report isn't going to get me into a traditional lease I'm afraid." This is the direct, pre-litigation, third-party documented causal statement linking the false tradelines to the housing barrier.

February 12, 2026: Plaintiff writes to DASHR that he is "not expecting any relief from the lawsuit for a few years" and is looking into disability benefits. This statement, made to a third party after the complaint was filed, demonstrates the absence of any expectation of quick litigation gain—directly undermining any argument of motive to fabricate homelessness circumstances.

March 1, 2026: In response to DASHR's check-in inquiry "what is your current situation," Plaintiff responds: "Couch surfing when I can. I've made it through a few nights outside."

B. The License Suspension Mechanism Is Active and Eliminates the Path Out of Homelessness

On November 18, 2022, Defendants issued a formal Notice of Driver's License Suspension under C.R.S. §§ 26-13-123 and 42-2-127.5 (Exhibit D). This, while the Plaintiff was waiting almost 12 weeks for unemployment benefits to be paid to him, and for child support the State was garnishing from said unemployment to be paid to the Family Registry from those withholdings. Weeks prior, B. Hershfeldt sent an email to Defendants stating she had waived all back child support. Technician Susan Martens stated "I checked on your unemployment, there is nothing I can do about it" Enforcement was not paused after waiving of arrears nor when it was one arm of the state not paying child support in a timely manner to the other.

Defendant Brant confirmed in Exhibit E that enforcement will not be paused regardless of legal challenge. A valid license is a practical prerequisite to employment. The result is a structural trap: no employment without a license, no compliance without income, no exit while enforcement continues.

C. Post-Service Suspension Notice Confirms Active, Ongoing Harm

The structural trap described above is not theoretical. On March 18, 2026—one day after the U.S. Marshals Service returned executed summonses upon Defendants (ECF No. 20, filed 03/18/26)—Larimer County Child Support Services issued a new driver's license suspension notice targeting Plaintiff. On March 20, 2026, Defendant Cindy Lucero transmitted that notice to Plaintiff by email, stating: "You are scheduled for suspension on 4/20/2026. We need a $300 payment by 4/15/2026 to stop the suspension."

This notice is significant for two independent reasons. First, it is direct, real-time evidence that the enforcement policies Plaintiff seeks to enjoin remains operational and will cause concrete harm—loss of driving privileges—within weeks of this filing, absent relief from this Court. Second, the timing is forensically relevant: Director O'Hayre's February 5, 2026 response letter (Exhibit 14 to the First Amended Complaint) explicitly stated that "at this time, pursuant to our records, Larimer County Child Support Services has not issued a request to the Colorado Department of Motor Vehicles to initiate suspension of your driving privileges." Six weeks later, on the day after federal summonses were returned executed upon Defendants, a new suspension notice issued. The Court should note this sequence when evaluating whether Defendants will voluntarily cease enforcement absent judicial intervention.

The April 20, 2026 suspension date falls after the March 24, 2026 objection deadline and within the window for this Court's de novo review. Plaintiff's inability to pay $300 to forestall suspension—while couch surfing and spending nights outside, as documented in Exhibit C—is itself proof that the enforcement cycle is self-perpetuating: the false

tradelines eliminate housing, the homelessness eliminates income, and the income requirement to avoid suspension cannot be met. This Court has jurisdiction and authority to halt that cycle now.

C. The State Avenue Was Explicitly Foreclosed in Writing

Defendant Brant's February 5, 2025 email stated as written agency policy that enforcement remedies are applied based solely on internal policy and will not be paused. Brant reaffirmed this in June 2025 when EH came to live with Plaintiff. While EH had not reached the age of emancipation, the monthly charge was no longer accruing arrears. Defendant Brant would not pause garnishments from Plaintiff's unemployment, causing another financial hardship that caused EH to have to move back to South Dakota. EH was homeless on her 19th birthday, when she reached the age of emancipation. Colorado's modification process takes three to six months while enforcement runs without interruption. There is no administrative remedy that pauses collection pending adjudication. The state avenue was foreclosed in writing by the agency itself. If the defendants will not pause enforcement causing the reunification with the Plaintiff to fail two times, this court is the only avenue for the Plaintiff to try.

OBJECTION VI: THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR PLAINTIFF

Defendants face no cognizable harm: if a valid order is ultimately found to exist, enforcement resumes. Permitting government agencies to furnish and maintain false debt information—where the court's own Records Department cannot produce the predicate order—while a federal civil rights action is pending serves no legitimate public interest. The balance tilts decisively toward Plaintiff.

CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that District Judge Nina Y. Wang:

1. Decline to adopt the Magistrate Judge's Recommendation (ECF No. 14);
2. Treat Plaintiff's motion (ECF No. 11), as supplemented by these Objections, as a noticed motion for Preliminary Injunction under Fed. R. Civ. P. 65(a);
3. Find, on the basis of the court's own official records attached as Exhibit A, that no valid child support order predating June 2, 2022 exists in the official record of Case No. 15DR000229, and that Defendants' enforcement actions were conducted without a lawful judicial predicate;

4. Schedule a preliminary injunction hearing at the earliest practicable date; and
5. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 24th day of March, 2026.

/s/ Gerald Paul Hershfeldt
Gerald Paul Hershfeldt
Pro Se Plaintiff
jerry.hershfeldt@gmail.com
(720) 378-8474

CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of March, 2026, I filed the foregoing Objections with the Clerk of the Court using the CM/ECF system. On March 20, 2026, Michael T. Lowe of Bruno, Colin, Goddard & Lowe, P.C. entered an appearance on behalf of the Larimer County Defendants. Plaintiff will serve a copy of this filing and all exhibits upon Mr. Lowe and upon any remaining Defendants or counsel entering an appearance, and will file a certificate of service accordingly.

/s/ Gerald Paul Hershfeldt

CERTIFICATE OF CONFERRAL PURSUANT TO D.C.COLO.LCivR 7.1

Pursuant to D.C.COLO.LCivR 7.1(a), Plaintiff certifies as follows: On March 20, 2026, Michael T. Lowe of Bruno, Colin, Goddard & Lowe, P.C. entered an appearance on behalf of Defendants Carleen Johnston, Jennifer Brant, Timothy J. Jashinsky, Cindy Lucero, Wendy Batts, Arthur J. Spicciati, Heather O'Hayre, and Larimer County. Plaintiff will confer with Mr. Lowe regarding the relief requested herein as soon as practicable and will supplement this certificate to report the parties' respective positions. Defendants Larry Boyd, Jane Rodig, Michelle Barnes, and Laurie Gill have not yet appeared through counsel; Plaintiff will confer with any counsel entering an appearance on their behalf.

/s/ Gerald Paul Hershfeldt

EXHIBIT LIST TO PLAINTIFF'S RULE 72 OBJECTIONS

Exhibit A: Larimer County Combined Courts Records Correspondence, Dec. 1, 2025–Jan. 15, 2026. 34-day search produced only the June 2, 2022 Order Modifying Child Support. No predating order was located or produced.

Exhibit B: Separation Agreement and Parenting Plan, Case No. 15DR000229. Section 2.1: children's SSN fields blank in executed document—the C.R.S. § 26-13-106 disqualifier.

Exhibit C: DASHR Correspondence, Dec. 12, 2025–Mar. 1, 2026 (Vinnie Cervantes). Four-date chain: (1) Dec. 12, 2025—welfare check contact, predates lawsuit by two months; (2) Jan. 22, 2026—pre-complaint statement linking false tradelines to housing barrier; (3) Feb. 12, 2026—no litigation-relief expectation for years; (4) Mar. 1, 2026—couch surfing and nights outside.

Exhibit D: Notice of Driver's License Suspension, Nov. 18, 2022 (Susan Martens, Larimer County DSS). C.R.S. §§ 26-13-123 and 42-2-127.5.

Exhibit E: Email, Jennifer Brant, Larimer County DHS, Feb. 5, 2025. Written confirmation enforcement will not be paused; agency acts solely on internal policy regardless of pending legal challenge.

Exhibit F: Email, Cindy Lucero, Larimer County Child Support Services, Mar. 20, 2026. Notice of driver's license suspension scheduled for April 20, 2026, issued one day after U.S. Marshal returned executed summonses (ECF No. 20, 03/18/26). Requires $300 payment by April 15, 2026 to forestall suspension. Contradicts Director O'Hayre's February 5, 2026 written statement that no suspension had been initiated.

CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE

Pursuant to the Standing Order Regarding the Use of Generative Artificial Intelligence in Court Filings, Judge Nina Y. Wang (effective December 1, 2025), the undersigned certifies that generative artificial intelligence—specifically, Claude (Anthropic)—was used in drafting portions of this filing. Plaintiff personally reviewed all AI-drafted language for accuracy. All legal citations in this filing reference actual, non-fictitious authority and were manually verified by Plaintiff. This filing remains subject to Fed. R. Civ. P. 11.

/s/ Gerald Paul Hershfeldt