FILED IN COMBINED COURTS
LARIMER COUNTY COLORADO
2015 MAR -4 PM 2:31

| | |
|---|---|
| DISTRICT COURT, LARIMER COUNTY, COLORADO<br>Court Address: 201 La Porte Avenue, Fort Collins, CO | |
| In Re the Marriage of:<br>Petitioner: [redacted] **HERSHFELDT**<br>Co-Petitioner: **GERALD PAUL HERSHFELDT** | DATE FILED<br>March 4, 2015<br>CASE NUMBER: 2015DR229<br><br>Court Use Only |
| Attorney or Party Without Attorney:<br>Name: [redacted]Hershfeldt<br>Address: [redacted]<br>Loveland, CO. 80538<br>Phone Number [redacted] | Case No: 15 DR 229<br><br>Ctrm: 1B |
| **SEPARATION AGREEMENT AND PARENTING PLAN** | |

This ***SEPARATION AGREEMENT AND PARENTING PLAN*** (hereinafter referred to as "Agreement") is made as of the 27th day of February, 2015, between [redacted]Hershfeldt (hereinafter "B[redacted]") and Gerald Paul Hershfeldt (hereinafter "Gerald"). Its purposes are those authorized by C.R.S. Sec. 14-10-101 *et seq.*

## I. RECITALS:

**1.1** We are parties to Case No. 15 DR , filed in the District Court, County of Larimer, State of Colorado, entitled *In re the Marriage of* [redacted] *Hershfeldt, Petitioner, and Gerald Paul Hershfeldt, Co-Petitioner.*

**1.2** We were married on July 27, 2002, in Yankton, South Dakota. We were separated on or about September 1, 2014.

**1.3** We have two children of our marriage; namely, F[redacted] Hershfeldt, born on [redacted] 2003, and E[redacted]ershfeldt, born on[redacted], 2006.

**1.4** [redacted] was born on [redacted] 1980, and has Social Security Number xxx-xx-7759. Gerald was born on[redacted] 1976, and has Social Security Number xxx-xx-4585.

**1.5** We recognize that our marriage is irretrievably broken, that there is no chance of reconciliation, and have determined that it is in the best interest of each of us and our children that a complete settlement and determination be reached regarding matters of parental responsibilities, parenting time, child support, maintenance, division of marital assets, payment of marital debts, attorney's fees, court costs and all other rights, duties and obligations we have toward one another and our children arising out of our marriage to one another.

NOW, THEREFORE, in consideration of the mutual agreements contained herein and for other good and valuable consideration in the premises, we agree as follows:

# II. PARENTING PLAN

## 2.1 INFORMATION ABOUT OUR CHILDREN:

| Name | Sex | Date of Birth | Soc. Sec. No. |
|---|---|---|---|
| [redacted]Hershfeldt | Male | [redacted] 2003 | xxx-xx-3058 |
| [redacted]Hershfeldt | Female | [redacted] 2006 | xxx-xx-0595 |

**2.2. RELOCATION THAT SUBSTANTIALLY CHANGES GEOGRAPHIC TIES:** Neither of us may move with our children to a location that substantially changes geographic ties between us, as measured by whether or not we can feasibly continue our current parenting time arrangement, without either a written agreement allowing such move and creating a new parenting time arrangement or an order of the court.

## 2.3 DECISION MAKING:

**This parenting plan reflects decision making on major issues other than parenting time. In this plan, major decision making does not include day-to-day decisions, which decisions will be made by the parent with whom our children is/are staying at any given time without the need of consulting with the other parent. Day-to-day decisions include, but are not limited to, minor training or correction, minor medical and dental care, curfew, chores, allowance, and decisions about clothing or hygiene.**

### 2.3.1 MAJOR DECISION MAKING DIVIDED BETWEEN THE PARENTS

### (A) MEDICAL, DENTAL AND MENTAL HEALTH DECISION MAKING:

**(A)1** We will make all final decisions regarding major medical / dental decisions for our children together. If we do not reach an agreement, then we shall use the dispute resolution procedures in this parenting plan to resolve our differences.

**(A)2** We both agree that, under emergency circumstances, it is sufficient for either party to sign legal releases to get medical treatment or to take other necessary measures.

**(A)3** In the event of a dispute about the necessity of or type of medical treatment for our minor children, either of us shall be allowed to obtain necessary medical treatment for our minor children.

**(A)4** We both agree to advise the other immediately of any emergency medical or dental care sought for our children, to cooperate on health matters pertaining to our children, and to keep one another reasonably informed.

**(A)5** We both may have access to medical and dental records pertaining to our minor children.

**(A)6** We both agree to keep each other informed as to name(s), address(es), and telephone number(s) of all medical / dental care practitioners, and as to any emergency medical or dental treatment for our children.

**(A)7** We both agree to cooperate to keep each other informed and to cooperate on health matters pertaining to our children.

**(B) EDUCATIONAL DECISION MAKING:** (including day care).

**(B)1** For purposes of school attendance, our children's residence will be the Petitioner's residential address, currently [redacted] 80538.

**(B)2** We will make all major educational decisions together. If we cannot reach an agreement, however, we shall use the dispute resolution procedures in this parenting plan to resolve our differences.

**(B)3** We both may have access to school records pertaining to our minor children and may contact the school directly for information about our children.

**(B)4** We both may participate in school conferences, events, and activities, and may consult with teachers and other school personnel about our children.

**(C) RELIGIOUS DECISION MAKING:** We agree that our children should be reasonably exposed to any religious organization or activity in which either of us participate and should be encouraged to make their own religious choices as they mature. As such, we will try to make all final religious decisions for our children together. If we cannot reach an agreement on an issue, however, then we shall use the dispute resolution procedures in this parenting plan to resolve our differences.

**(D) EXTRA-CURRICULAR AND RECREATIONAL ACTIVITIES:**

Each of us shall make all final decisions regarding activities that occur **only** during our individual parenting time and shall be solely responsible for transportation for and expenses of participation in those activities that occur **only** during our individual parenting time.

**(E) OTHER SIGNIFICANT DECISIONS (General Welfare Issues, Driving, Car, College, Etc.)**

**(E)1** We will both make any other significant decisions involving our children together. If we cannot reach an agreement, however, we shall use the dispute resolution procedures in this parenting plan to resolve our differences.

**(E)2** Both of us agree that, under emergency circumstances not involving medical care, it is sufficient for either of us to sign legal releases or to take other necessary measures.

**(F) GENERAL WELFARE ISSUES:**

**(F)1** Telephone Access. We shall each have unlimited telephone access with our children when they are staying with the other parent. We agree, however, that such access shall be at reasonable times and for reasonable durations.

**(F)2** Extended Family. We shall each be supportive of our children's relationships with the other parent's family members. While a child is residing with one of us, that parent shall support and encourage our children's other family relationships and give the extended family reasonable access to the children personally and by telephone, provided that such access is at reasonable times and on reasonable notice and provided that any cost of such access is borne by the relative.

**(F)3** Fostering of Affection. We recognize and agree that it is in the best interest of our children that a friendly and harmonious relationship exist between us, and that our children are happiest when they see us work together without dissension. Therefore, neither of us shall attempt to influence our children unfavorably toward the other parent. We shall cooperate at all times in the best interest of our children and agree to make a positive effort to promote love and respect between our children and the other parent. We agree to refrain from maligning the other parent in the presence of our children and to refrain from committing any act, by word or deed, which might tend to have a negative affect on a loving, companionable and harmonious relationship between child and parent.

**(F)4** Each of us will inform the other parent of any changes in our business or residential address(es) and/or phone number(s) within five (5) days of the change.

**(F)5** We agree that all communications regarding our children will be between us and that we will not use our children to convey information or to set up parenting time changes.

## 2.4 PARENTING TIME:

**2.4.1 SHARED PHYSICAL CARE** Although we no longer live together, we each wish to continue exercising parental responsibilities for our children. We believe our children will benefit from frequent and continuing contact with both of us. We both communicate with each other calmly and effectively and prefer to arrange parenting times between each other in a relaxed, non-rigid format. Therefore, we both agree that we shall each exercise parenting time with our children at all times mutually agreeable by both of us.

**2.4.2 COMMUNICATIONS:** Unless circumstances prevent us from doing so, if the above Parenting Time Schedule cannot be complied with, we shall notify the other party by telephone as soon as possible, but not less than 5 hours in advance of any pick-up time.

**2.4.3 TRANSPORTATION:** Unless we otherwise agree, we shall each be responsible for all transportation costs associated with the exercise of our respective parenting time with our children.

**2.4.4 MODIFICATION:** We agree that all substantial, permanent modifications to the Parenting Time Schedule may be done only by written agreement, signed by both of us and filed with the court. Minor, non-permanent changes may be made at any time that both parties agree to the changes.

**2.4.5 TRAVEL:** We agree that should either of us travel overnight with the children, that parent will keep the other parent informed of travel plans, address(es), and telephone number(s) where that parent and the children can be reached.

**2.5 CHILD SUPPORT:**

**2.5.1 BASIC CHILD SUPPORT OBLIGATION:** Commencing on the 1st day of the month immediately following the date this Agreement is executed by both of us, and continuing on the 1st day of each month thereafter until the first to occur of emancipation of a child or further Order of the Court, Gerald shall pay directly to B[redacted] the sum of $1,128.00 per month as and for basic child support.

**2.5.2 MEDICAL INSURANCE:** Gerald shall maintain in full force and effect the current or substantially similar medical insurance coverage for our children for so long as he has a child support obligation to our child(ren) or until further Order of the Court. Upon request, Gerald shall provide[redacted]ke with written documentation concerning the children's insurance coverage, including the name of the insurance company, policy number, amount of coverage and other relevant information. Gerald shall execute a release which authorizes the insurance company to give information directly to Brooke. Gerald shall provide to B[redacted]ke signed claim forms and/or an identification card which will permit her to obtain medical services for our children. Uninsured medical expenses and other extraordinary medical expenses as defined in C.R.S., Section 14-10-115(13.5) shall be paid in the proportion our respective incomes bear to our combined income at the time, with the proportions presently 38% paid by B[redacted]e and 62% paid by Gerald.

**2.5.3 ACTIVITY EXPENSES:** Unless we otherwise agree, each of us shall individually pay for any activity, not otherwise described in this Agreement, in which we individually believe that our children should participate.

**2.5.4 AUTOMOBILE EXPENSES:** Neither parent shall be responsible to pay for any costs associated with the use of an automobile by our children.

**2.5.5 ENFORCEMENT OF CHILD SUPPORT:** We agree that all child support payments will be made through an income assignment. Gerald will sign the necessary documents to activate an income assignment with his employer, payor or trustee.

**2.5.6 ANNUAL EXCHANGE OF INFORMATION:** In order to review the foregoing child support obligations, we shall exchange personal income tax returns, together with all attachments and schedules thereto, annually no later than three days after filing of same with taxing authorities.

**2.6 FUTURE CONFLICT RESOLUTION:**
We agree that In the event we have a disagreement in relation to this parenting plan, we shall submit the disagreement to mediation, pursuant to the terms of Article VIII, below, in an effort to amicably resolve the disagreement.

## III. MAINTENANCE:

**3.1 GERALD'S WAIVER:** Gerald hereby waives any right he may have to receive maintenance (spousal support) from B[redacted] Gerald understands that such waiver is irrevocable, and no claim for spousal maintenance may be asserted by him as a result of this marriage at any future date for any reason whatsoever.

**3.2 [redacted]S WAIVER** Pursuant to the statutory calculations, Gerald is required to pay monthly maintenance in the amount of $600.00 to B[redacted] for a period of six (6) years and four (4) months (see *Colorado Maintenance Worksheet* attached hereto as Exhibit A). After a review of our respective financial resources, our respective expenses, our actual financial needs, we both believe that a downward deviation from the statutory calculations would be appropriate. As such, we both would request the court to approve the following waiver of maintenance.
[redacted]ke hereby waives any right she may have to receive maintenance (spousal support) from Gerald.

## IV. PROPERTY DIVISION:

**4.1 SEPARATE PROPERTY:** Neither of us claim any separate non-marital property.

**4.2 MARITAL PROPERTY:**

**4.2.1 REAL PROPERTY:** None

**4.2.2 PERSONAL PROPERTY:** Each of us shall have as his or her sole and separate property all household goods, furnishings and personalty in our respective possession, custody or control as of the effective date of this Agreement, unless specifically stated to the contrary herein.

**(A)** B[redacted] shall have as and for her sole and separate property the following assets:

1. Her clothing, furniture, wearing apparel, jewelry and personal effects.
2. The 2004 Nissan Sentra automobile.
3. All bank accounts presently in her name or under her control.
4. Any and all assets and/or benefits held in her 401(k) retirement account held in her name.
5. Any and all business assets related to her doing business as "Stampin Up".

**(B)** Gerald shall have as and for his sole and separate property the following assets:

1. His clothing, furniture, wearing apparel, jewelry and other personal effects.
2. All bank accounts presently in his name or under his control.
3. Any and all assets and/or benefits held in his 401(k) retirement account held in his name.

**4.2.3. RETIREMENT ASSETS:** See paragraph 4.2.2(A)(4) & 4.2.2(B)(3), above.

**4.2.4 INSURANCE AND RETIREMENT BENEFICIARIES:** To the extent that this Agreement or the dissolution of our marriage requires a designation or redesignation of a beneficiary for any purpose, we both understand and agree, that each of us shall be solely and separately responsible to make any and all designations, or redesignations,

of the appropriate named beneficiary under any insurance policy, retirement type account, or any other asset that requires or allows the designation of a beneficiary. Additionally, to the extent that such designations, or redesignations, are not completed, or are completed improperly, each of us waives any right to receive any proceeds from any insurance policy, retirement type account, or any other asset, unless the right to receive the same is expressly described in this Agreement.

**4.3 UNDISCLOSED ASSETS:** We agree that the Court having jurisdiction over the proceeding for dissolution of our marriage shall reserve jurisdiction to divide any asset in which either of us presently has any interest which is not disclosed in this Agreement or on either of our respective Affidavits with Respect to Financial Affairs submitted to the Court in support of this Agreement. All reasonable and necessary attorneys' fees and costs incurred in any judicial proceeding pursuant to this provision shall be paid by the one of us deemed by the Court to be responsible for the failure to disclose.

## V. DISPOSITION OF DEBTS AND LIABILITIES.

**5.1 DEBTS ASSUMED BY GERALD:** Except as otherwise specifically provided by this Agreement, Gerald shall be solely and separately responsible for and hold B[redacted] harmless from the following: (1) any and all unpaid debts and liabilities incurred by him separately; (2) any and all unpaid debts and liabilities related to assets received by him above; and (3) 50% of any and all jointly owed indebtedness incurred prior to the date of our separation.

**5.2 DEBTS ASSUMED BY BR[redacted]:** Except as otherwise specifically provided by this Agreement, B[redacted] shall be solely and separately responsible for and hold Gerald harmless from the following: (1) any and all unpaid debts and liabilities incurred by her separately; (2) any and all unpaid debts and liabilities related to assets received by her above; and (3) 50% of any and all jointly owed indebtedness incurred prior to the date of our separation.

**5.3 FUTURE DEBTS:** Neither of us shall create or attempt to create any indebtedness in the name of or against the other or to utilize or attempt to utilize the credit or financial circumstances of the other for the purpose of creating any indebtedness.

**5.4 INDEMNIFICATION:** With respect to the financial obligations which each of us has agreed to assume or be responsible for by this Agreement, we shall respectively indemnify and hold the other harmless against any and all liabilities, including all court costs and reasonable attorney's fees, by reason of any default in performance or by reason of any claim resulting from the failure to perform our respective obligations.

## VI. TAXES

**6.1 PRIOR FILED JOINT RETURNS:** During the years of our marriage, we filed our federal and state income tax returns as joint taxpayers. We believe that we have duly paid all income or other taxes due for such years and that we do not owe any interest or penalties with respect thereto. No tax deficiency proceeding is pending or threatened against us thereon, and no audit is pending with respect to any of such joint returns to the best of our knowledge,

information and belief. Nevertheless, if our state or federal income liability for any such years is hereafter adjusted, by audit or otherwise, we shall equally divide any additional tax liability, including interest and penalties, and be equally entitled to any refund, whichever the case may be.

**6.2 DEPENDENCY EXEMPTIONS:** So long as child support payments are fully paid by December 31st of each applicable year, Gerald shall be entitled to the extent allowed by law to claim [redacted] Hershfeldt as a personal exemption on his separate income tax returns for each tax year. Brooke shall be entitled to the extent allowed by law to claim [redacted] Hershfeldt a personal exemption on her separate income tax returns for each tax year.

**6.3 COMPLIANCE:** From this time forward, neither of us shall assert a position in the preparation or filing of tax returns, singly or jointly with another person, inconsistent with the terms and conditions of this Agreement.

## VII. ATTORNEY FEES AND COSTS

Each of us shall be solely and separately responsible for any unpaid attorney fees and costs incurred by us separately, which are related to this Agreement and the proceeding to dissolve our marriage.

## VIII. MEDIATION

We agree that we shall attempt to settle any claim, dispute or controversy arising out of the terms of this Agreement or as a result of the dissolution of our marriage in a spirit of mutual cooperation and mutual negotiation. If such attempts fail, then any such dispute shall be submitted to mediation for possible resolution of the dispute. If mediation fails to resolve the dispute, the final decision will be made by the court.

## IX. MISCELLANEOUS

**9.1 SATISFACTION AND WAIVER:** Each of us, for ourselves and for our personal representatives and other successors, by signing this Agreement, agrees that this Agreement constitutes full and complete satisfaction of any and all claims and demands which each of us now has against the other and is in full settlement of all of our respective marital rights and obligations, including property and maintenance rights. Except as otherwise specifically provided in this Agreement, we waive all rights against the other and each releases and discharges the other from any and all claims, demands and interests known or unknown which either of us now has or might have, as of the date of the approval of this Agreement by the District Court, against the other or the property and estate of the other, including, but not limited to, waiver of the right to inherit from the other pursuant to the laws of the State of Colorado or any other state or nation, and we waive the right to serve as personal representative of the estate of the other. This paragraph shall not affect or control the right of either of us to provide for the other by will or to accept benefits so provided.

Except as otherwise noted in this Agreement, we both hereby specifically and expressly waive any survivorship interest or future expectancy in any asset of the other, and shall take no interest therein unless named as beneficiary, other than "spouse", and only if the designation of beneficiary is executed by the other party on a date subsequent to the date that the other party signed this Agreement.

**9.2 <u>INCORPORATION INTO DECREE:</u>** This Agreement shall, if approved by the District Court, be incorporated into and made a part of the ***Decree of Dissolution of Marriage*** and shall thereby become an Order of the Court.

**9.3 <u>EXECUTION OF DOCUMENTS, TITLES AND DEEDS:</u>** Each of us shall promptly execute and deliver to the other any documents that may be reasonably required to accomplish the intent and purpose of this Agreement and shall do all other things necessary to that end. If either of us fails to comply with the provisions of this section, this Agreement shall constitute an actual grant, assignment, power of attorney and conveyance of property, rights and duties in such manner, and with such force and effect, as shall be necessary to carry out the terms of this Agreement. Each of us by petition and by this Agreement hereby designates the Clerk of the District Court in and for the County in which our Petition For Dissolution of Marriage was filed, as Special Master, with power and authority to execute any and all documents, agreements, conveyances, titles, deeds or other writings of any kind or nature, which may be necessary to fully effectuate or intent as set forth in this Agreement.

The Clerk of the Court may serve as a Special Master in lieu of further order of the Court upon notice to the other party. In order to effectuate the power of the Clerk of the Court as Special Master, the moving party need only show certain documents, titles, deeds or other things in writing to be executed by either of us, and the party who is required to execute said document having failed and refused to do so.

Any such documents executed by the Clerk of the Court as Special Master shall carry the same force, effect and validity as if the party hereto had specifically executed the documents called for by this Agreement.

**9.4 <u>BINDING EFFECT:</u>** The terms of this Agreement shall be binding upon our heirs, executors, administrators, representatives, legatees, devisees, assigns and agents to the extent and in the manner which it is binding upon us.

**9.5 <u>GOVERNING LAW:</u>** The laws of the State of Colorado shall govern this Agreement.

**9.6 <u>GOVERNING AGREEMENT:</u>** This Agreement sets forth our entire agreement and understanding with respect to the transactions contemplated in it and supersedes all prior agreements, arrangements and understandings relating to the subject matter in it.

**9.7 <u>NO WAIVER:</u>** No waiver of any breach or default under this Agreement shall be considered valid unless it is in writing and is signed and dated by both of us, and no such waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature. No breach of this Agreement shall be claimed by either of us in a court proceeding unless the one of us intending to make such a claim has given notice to the other party of such breach and given a reasonable time for cure and has first exercised those provisions set-forth in Article VIII, above.

**9.8 MODIFICATION:** Except for those provisions contained in Article II (Parenting Plan), Article III (Maintenance), Section 4.3 (Undisclosed Assets) and 9.14 (Fraud), we hereby agree that this Agreement shall not be modifiable by the Court, but shall be modified only by the parties, upon mutual written consent.

**9.9 INDEMNITY FOR FAILURE TO PERFORM:** We have in this Agreement made certain commitments to one another in the form of mutual promises to perform. In the event one of us should breach or commit a default of one or more terms of this Agreement, or otherwise fail to perform one or more of the provisions to which we have agreed in this Agreement, we both hereby agree to fully indemnify, save and hold the other harmless from any expenses incurred as a result of such a breach, default or failure to perform. Furthermore, in the event litigation should arise as a result of a breach, a default, or a failure to perform under one or more terms of this Agreement, the party that prevails in the litigation shall additionally be entitled to recover those reasonable attorney's fees and costs incurred in the litigation process. Such indemnification shall be first sought by mediation pursuant to Article VIII, above.

**9.10 TRANSFER OF PROPERTY:** We agree that all transfers of property pursuant to this Agreement are made either between us as spouses or incident to the dissolution of our marriage. This provision applies whether the property transferred is marital or separate property, real or personal, tangible or intangible. We intend that all property transfers incident to this Agreement be treated as non-taxable transfers for federal income tax purposes. To the extent that there is no recognition of gain or loss with respect to any transfer of property between us, we acknowledge that the federal income tax basis to the recipient will be the same as the adjusted tax basis of the person making the transfer. Because adjusted tax basis is not increased to fair market value (but rather is a carryover basis), we further acknowledge that the recipient of such property will be subject to income tax on any appreciation existing at the time of transfer (as well as any subsequent appreciation) when such property is sold or exchanged in a taxable transaction.

**9.11 INTERPRETATION:** The section and subsection headings contained in this Agreement are for reference purposes only and shall not define, limit or prescribe the meaning or interpretation of the text of this Agreement. No provision of this Agreement shall be interpreted for or against either of us because counsel for one of us drafted the provision.

**9.12 WHEN AGREEMENT TAKES EFFECT:** We agree that this Agreement shall become effective immediately upon its execution by both of us.

**9.13 INDEPENDENT CONTRACTS:** This Agreement shall not be extinguished by merger as a result of incorporation into any Decree or otherwise, but rather, shall in all events survive such Decree and be binding upon both of us.

**9.14 ROLE OF FINANCIAL AFFIDAVITS:** We state and agree that this Agreement is based upon full and complete disclosure by and between us of the assets, liabilities and income of each of us. Each of us has been provided with a complete Affidavit With Respect to Financial Affairs of the other, and this Agreement is based on the information contained in such Affidavits and in this Agreement. Should the information contained in the Affidavits or in this Agreement prove to be fraudulent or contain significant misstatements or omissions, the innocent party shall

have the right to return to the Court having jurisdiction over the proceeding related to our marriage for amended orders concerning all provisions of this Agreement based upon those fraudulent or misstated items. In such event, the provisions of Article VIII need not be first complied with.

**9.15 CERTIFICATION:** Each of us expressly certifies as follows:

I understand that I have the right to proceed with a trial of this entire matter, but have determined that it is in my best interests to settle all aspects of the matter without trial as provided by the terms of this Agreement. I am entering into this Agreement freely, voluntarily and upon mature consideration, and not on the basis of any duress, pressure or undue influence from any person or circumstance. I have had the opportunity to consult independently and privately with counsel of my own choosing concerning my legal rights and liabilities and the provisions of this Agreement. I have read each provision of this Agreement and understand each provision. I have sufficient knowledge of the character and value of our marital property and any separate property owned by either of us. Any questions I may have had regarding any provision of this Agreement have been answered to my satisfaction. I believe this Agreement as a whole, and each of its provisions, is fair, equitable, and not unconscionable, and is in the best interests of our children. I, therefore, request that the Court approve this Agreement and make it an Order of the Court.

**9.16 LEGAL ADVICE:** We both understand that this Agreement was drafted with the assistance of [redacted] Attorney at Law. After consultation with Mr. Loomis, or other legal counsel, regarding a lawyer's assistance of multiple parties (if such occurred), including an explanation of the implications of common representation and the advantages and risks involved, the undersigned hereby agree to waive any conflict of interest the attorney may have in assisting both of us with our divorce. Mr. [redacted] has further advised us both to have this Agreement independently reviewed by an attorney and CPA of our choice to ensure that it is in our respective best interests. We hereby confirm that we are not relying upon Mr. Loomis in relation to the advisability of entering into this Agreement. Rather, we are both relying solely upon our own judgment and/or any legal and tax advice we have received from other counsel in reaching a decision to execute this Agreement. BH ______

IN WITNESS WHEREOF, we have signed this Agreement to be effective upon the date signed by both of us.

**WE ACKNOWLEDGE THAT WE BOTH HAVE RE-READ THIS DOCUMENT CAREFULLY TO MAKE SURE IT IS AN ACCURATE PRESENTATION OF OUR AGREEMENT WITH EACH OTHER.**

**OUR SIGNATURES BELOW INDICATE THAT WE HAVE READ AND AGREE WITH EVERYTHING IN THIS DOCUMENT.**

| | |
|---|---|
| [redacted] 2-27-15 | 2-27-15 |
| [redacted]) Petitioner Date | Gerald P. Hershfeldt, Co-Petitioner Date |

STATE OF COLORADO }
}ss.
COUNTY OF LARIMER }

The foregoing ***Separation Agreement And Parenting Plan*** was subscribed and sworn to before me by [redacted] Hershfeldt, this 27th day of February, 2015. WITNESS my hand and official seal. My commission expires: January 14, 2018

{Seal}

EMILIE PLA
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20144001978
MY COMMISSION EXPIRES JANUARY 14, 2018

Emilie Pla
Notary Public

STATE OF COLORADO }
} ss.
COUNTY OF LARIMER }

The foregoing ***Separation Agreement And Parenting Plan*** was subscribed and sworn to before me by Gerald Paul Hershfeldt, this 27th day of February, 2015. WITNESS my hand and official seal. My commission expires: January 14, 2018

{Seal}

EMILIE PLA
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20144001978
MY COMMISSION EXPIRES JANUARY 14, 2018

Emilie Pla
Notary Public

Drafting Assisted by: Kurtis Loomis, 916 N. Cleveland Avenue, Loveland, CO. 80537, (970) 663-9138, Reg. No. 16553