**IN THE UNITED STATES COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-00342-NYW-CYC

GERALD PAUL HERSHFELDT,
Plaintiff,

v.

CARLEEN JOHNSTON, individually and in her official capacity;
JENNIFER BRANT, individually and in her official capacity;
TIMOTHY J. JASHINSKY, individually and in his official capacity;
CINDY LUCERO, individually and in her official capacity;
WENDY BATTS, individually and in her official capacity;
ARTHUR J. SPICCIATI, individually and in his official capacity;
LARRY BOYD, individually and in his official capacity;
JANE RODIG, individually and in her official capacity;
HEATHER O'HAYRE, in her official capacity;
MICHELLE BARNES, in her official capacity;
LAURIE GILL, in her official capacity;
LARIMER COUNTY, COLORADO,
Defendants.

---

**DEFENDANT MICHELLE BARNES, IN HER OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE COLORADO DEPARTMENT OF HUMAN SERVICES RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND TO FILE SECOND AMENDED COMPLAINT. [ECF 85].**

---

Defendant, Michelle Barnes, in her official capacity as Executive Director of the Colorado Department of Human Services ("Director Barnes"), by and through counsel of record, hereby submits the Response to Plaintiff's Motion for Leave to Amend to File Second Amended Complaint and states as follows:

## PROCEDURAL HISTORY

More than three months have passed since Plaintiff first conferred regarding a Motion for Leave to Amend. On April 16, 2026, Plaintiff emailed undersigned counsel

stating he sought to amend his First Amended Complaint to add claims against specific Larimer County defendants. On April 29, 2026, Plaintiff again conferred, this time providing new reasons for amendment. At the May 27, 2026, status conference before Magistrate Judge Chung, Plaintiff stated he would file his Motion for Leave to Amend and Proposed Amended Complaint by May 28, 2026, but again offered new reasons for amending. Because Plaintiff had again changed the basis for his request, the Court ordered a telephone conferral call for May 28, 2026. Counsel for Defendants appeared for the agreed-upon call, but Plaintiff did not.

On June 9, 2026, Plaintiff informed undersigned counsel that his Motion for Leave to Amend would be a “total rewrite” of the Complaint and that he was not intending on filing a redlined version per D.C.COLO.LCivR 15.1(b).[1] On June 15, 2026, Plaintiff conferred and again included different reasons for amendment. Plaintiff filed his Motion for Leave to Amend on June 18, 2026, but it was struck. He refiled the Motion on July 28, 2026.

## STANDARD OF REVIEW

“The Court may exercise its discretion to deny a motion to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by previously allowed amendments, or futility of the amendment.” *Midcities Metro. Dist. No. 1 v. U.S. Bank Nat. Assoc.*, 44 F. Supp 3d 1062, 1065-66 (D. Colo. 2014) citing *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir.

[1] Plaintiff did not comply with D.C.COLO.LCivR 15.1(b) because his proposed amendment does not contain strikes or underlines.

1993). "Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile." *Jefferson Cnty. School Dist. No. R-1 v. Moody's Investor's Services, Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999).

## ARGUMENT[2]

### I. The proposed amendment is futile because the Second Amended Complaint would be subject to dismissal.[3]

#### A. The Rooker Feldman doctrine precludes jurisdiction.

"*Rooker-Feldman* is a jurisdictional prohibition on lower federal courts exercising appellate jurisdiction over state-court judgments." *Campbell v. City of Spencer*, 682 F.3d 1278, 1281 (10th Cir. 2012). Specifically, it bars cases "brought by state-court losers complaining of injuries *caused by state-court judgments* rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 1283 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005)) (emphasis added). In evaluating whether Rooker-Feldman applies, courts look to the relief sought and determine if "the state

---

[2] Not all arguments that Director Barnes' could raise through a Motion to Dismiss are contained within this Response. Should the Court allow amendment, or if Director Barnes is required to respond to the First Amended Complaint, Director Barnes will raise additional 12(b) arguments not contained herein and reserves the ability to do so. Director Barnes also notes that the claim(s) against her are barred by the Eleventh Amendment and will argue that through a Motion to Dismiss.

[3] Should this Court prefer to resolve the Rooker Feldman Doctrine and Domestic Relations Doctrine question through a Motion to Dismiss, Director Barnes intends on raising these doctrines in that setting.

court judgment *caused*, actually and proximately, the *injury* for which the federal court seeks *redress*." *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006) (emphasis in original) (internal quotation omitted). More specifically, the doctrine "bars any 'action in federal court that alleges an injury 'inextricably intertwined' with a state court decision, such that success in the federal court would require overturning the state court decision….'" *Wideman v. Colorado*, 242 F. App'x 611, 613-14 (10th Cir. 2007) (unpublished) (2007 WL 2827736) (quoting *Epps v. Creditnet, Inc.*, 320 F.3d 756, 758-59 (7th Cir. 2003)); *see also Eaves v. Paxton*, No. 24-1400, 2026 WL 1020603, at *2 (10th Cir. 2026) (finding claims involving enforcing child support orders via collection and liens were intertwined with a child support order and therefore precluded under Rooker Feldman).

Here, Plaintiff complains of injuries caused by a state court order and invites its review.[4] His lawsuit is based on the assertion that the state court's child support order was invalid, rendering its enforcement invalid as well. [ECF 85-1, ¶ 1] (Asserting this action serves the purpose of "remed[ing] a decade of unconstitutional child support enforcement executed without a valid entered judicial predicate…."); *see also* [ECF 85-1, ¶ 2] ("no executable child support order was ever entered, and that human actors nonetheless proceeded with enforcement."). He even asserts that the "foundation of this suit is the state court's own official record." [ECF 85-1, ¶ 2].

---

[4] In November 2025, Plaintiff attempted to challenge his child support orders in state case number 2015DR000229. His request was denied on January 13, 2026. Approximately two weeks later, Plaintiff filed this lawsuit. Director Barnes intends on providing the Court with these filings/orders in a Motion to Dismiss. Plaintiff cannot subvert his failure to seek timely review by initiation of this lawsuit.

Plaintiff's Fair Credit Reporting Act claim against Director Barnes arises solely from the underlying state court child support order. [ECF 85-1, ¶ 1] ("This is a civil rights action under 42 U.S.C. § 1983 and the Fair Credit Reporting Act, 15 U.S.C. § 1681, to remedy a decade of unconstitutional child support enforcement executed without a valid entered judicial predicate….") Plaintiff alleges that he disputed his Colorado child support tradeline and that "furnishers" verified the child support debt based on errors in the state court registry and an invalid child support order. [ECF 85-1, ¶ 111] ("Plaintiff alleges the furnisher certified accuracy without correcting the reporting features identified in ¶ 109."); [ECF 85-1, ¶ 109] (asserting the tradelines "report a debt while the Register of Actions contains no child support entry…."). In other words, Plaintiff contends he disputed his credit report reflecting owed child support because the underlying order was invalid and that furnishers nonetheless verified a credit report based on that invalid order. Any asserted harm is actually and proximately caused by the child support order itself. *See generally*, [ECF 85-1, ¶ 121-123]. Determining whether the child support debt or its verification was valid would require evaluating the validity of the child support order. The Rooker–Feldman doctrine bars such review, and amendment would therefore be futile.

**B. The domestic relations exception bars this Court from asserting jurisdiction.**

Federal courts have recognized a "domestic relations exception" to federal jurisdiction that "divests federal courts of the power to issue divorce, alimony, and child custody decrees." *Leathers v. Leathers*, 856 F.3d 729, 756 (10th Cir. 2017) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)); *see also Winters v. Kansas Dep't*

*of Soc. & Rehab. Servs.*, No. 10-2181-JAR, 2011 WL 166708, at *4-5 (D. Kan. Jan. 19, 2011) (collecting cases), *aff'd*, 441 F. App'x 611 (10th Cir. 2011) (unpublished) (2011 WL 5854367) ("Although the domestic relations exception is generally considered an exception to diversity jurisdiction, it may also be applied in federal question cases.") The Supreme Court has "acknowledged that it might be appropriate for the federal courts to decline to hear a case involving 'elements of the domestic relationship,' even when divorce, alimony, or child custody is not strictly at issue." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 13 (2004) (abrogated on other grounds) (quoting *Ankenbrandt*, 504 U.S. at 703); *see also Lee v. Hurd*, No. 21-cv-01966-RBJ, 2022 WL 2716540, at *3 (D. Colo. July 13, 2022) ("child support payments fall within the domestic-relations exception"). "If the federal court is called upon to decide those issues regularly decided in state court domestic relations actions such as… support obligations…then the domestic relations exception is applicable." *Vaughan v. Smithson*, 883 F.2d 63, 65 (10th Cir. 1989). Support orders, modification of support orders, validity of support orders, and enforcement of support orders are all regularly decided by state family courts. *See generally*, *Nakauchi v. Cowart*, 519 P.3d 397, 402 (Colo. App. 2022) ("Colorado's child support enforcement law establishes procedures to enforce child support orders.")

Plaintiff asks this Court to halt enforcement of the state's child support order. [ECF 85-1, ¶ 121-126]. His proposed Complaint refers to an alleged violation of the Fair Credit Reporting Act, but this claim does not exist apart from the family child support issue. *See Bautista v. Virginia Dept. Of Soc. Services*, No. 15-cv-01202-GPG, 2015 WL 3660379, at *3 (D. Colo. June 12, 2015) ("Although Plaintiff has referred to a due

process violation, his claim does not transcend or exist apart from the family law issue, and therefore, fall within the domestic relations exception.") The Fair Credit Reporting Act claim does not merely seek to enforce an alleged statutory right, but rather requires this Court interject itself into Colorado's child support system. This Court recently addressed a similar issue. In *Bellinsky v. Weiser*, the plaintiff's complaint asserted that, as a result of child support orders, the defendants reported plaintiff's delinquent child support payments to credit bureaus and asked that enforcement be enjoined. *Bellinsky v. Weiser*, No. 25-cv-02062-PAB-STV, 2026 WL 1975773, at *2 (D. Colo. 2026) (appeal filed). This Court held that "[i]n asking for this relief, the Court finds that plaintiff is asking the Court to review issues of child support…that have already been decided in the State Court Proceedings and are traditional issues decided in state domestic cases." *Id*. Here, Plaintiff asks this Court to "compel correction or deletion of all child support tradelines furnished by Defendants…." [ECF 85-1, ¶ 123]. The result should be the same. Accordingly, review is precluded through the domestic relations exception and amendment is futile.

**CONCLUSION**

For the foregoing reasons, Director Barnes requests that the Court deny Plaintiff's request for leave to amend.[5]

Respectfully submitted this 14th day of August 2026.

---

[5] If this Court wishes to allow amendment, and resolve these issues through a Motion to Dismiss, Director Barnes intends on raising these arguments, and others, through a Motion to Dismiss.

Undersigned counsel certifies that generative artificial intelligence was not used to draft this filing.

*s/Rachel E. Ollis*
Rachel E. Ollis, *Reg.* #56553
Colorado Attorney General's Office
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6201
Email: rachel.ollis@coag.gov
*Attorney for Defendant Michelle Barnes in her official capacity as Executive Director of the Colorado Department of Human Services.*
Counsel of Record

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of August 2026, a true and correct copy of the foregoing **DEFENDANT MICHELLE BARNES, IN HER OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE COLORADO DEPARTMENT OF HUMAN SERVICES RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND TO FILE SECOND AMENDED COMPLAINT w**as electronically filed with service through the e-filing system as follows:

Gerald Paul Hershfeldt
429 East 14th Avenue, #107
Denver, CO 80203
Jerry.hershfeldt@gmail.com
*Pro Se*

Michael T. Lowe
Bruno, Colin, Goddard & Lowe, P.C.
1120 Lincoln Street, Suite 1606
Denver, CO 80203
Telephone: (303) 831-1099
mlowe@brunolawyers.com
*Counsel for Larimer County Defendants*

Nicholas C. Poppe
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
NPoppe@ndm-law.com
*Counsel for Defendant Gill and Rodig*

*s/ Rachel E. Ollis*
Rachel E. Ollis
Colorado Attorney General's Office
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 50-6201
Email: rachel.ollis@coag.gov
*Attorney for Defendant Michelle Barnes in her official capacity as Executive Director of the Colorado Department of Human Services*