**IN THE UNITED STATES COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-00342-NYW-CYC

GERALD PAUL HERSHFELDT,

Plaintiff,

v.

CARLEEN JOHNSTON, individually and in her official capacity;
JENNIFER BRANT, individually and in her official capacity;
TIMOTHY J. JASHINSKY, individually and in his official capacity;
CINDY LUCERO, individually and in her official capacity;
WENDY BATTS, individually and in her official capacity;
ARTHUR J. SPICCIATI, individually and in his official capacity;
LARRY BOYD, individually and in his official capacity;
JANE RODIG, individually and in her official capacity;
HEATHER O'HAYRE, in her official capacity;
MICHELLE BARNES, in her official capacity;
LAURIE GILL, in her official capacity;
LARIMER COUNTY, COLORADO,

Defendants.

---

**LARIMER COUNTY DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO AMEND COMPLAINT [ECF 85]**

---

Defendants Carleen Johnston, Jennifer Brant, Timothy J. Jashinsky, Cindy Lucero, Wendy Batts, Arthur J. Spicciati, Heather O'Hayre, and Larimer County, Colorado (the "Larimer County Defendants"), by and through their undersigned counsel of record, hereby respond and object to Plaintiff's Motion to Amend Complaint [ECF 85], as follows:

## PROCEDURAL POSTURE

*Pro se* Plaintiff Hershfeldt filed his initial Complaint in this matter on January 27, 2026. [ECF 1]. Following review and an order to cure deficiencies from the Court, Plaintiff

filed his First Amended Complaint ("FAC") on February 26, 2026. [ECF 9]. Defendant Laurie Gill filed a motion to dismiss on April 3, 2026. [ECF 33]. After further motions practice and efforts at service, the Court held a status conference on May 27, 2026. After further pleadings practice, Plaintiff submitted a motion to amend on June 25, 2026, [ECF 85], with a proposed second amended complaint attached, [ECF 85-1]. This response and objection timely follows.

## ARGUMENT

### A. Legal Standard

Because Plaintiff seeks leave to amend more than twenty-one days after serving his FAC and more than twenty-one days after service of a motion pursuant to Rule 12(b), under Fed. R. Civ. P. 15(a)(2) Plaintiff may only amend his FAC with all Defendants' written consent or leave of the Court. Fed. R. Civ. P. 15(a)(2); *Teran v. GB Int'l, S.P.A.*, 652 F. App'x 660, 673 (10th Cir. 2016); *Harris v. Romero*, 2021 U.S. Dist. LEXIS 59266, at *20 (D. Colo. 2021). And although Rule 15(a)(2) provides a liberal standard to "freely give leave when justice so requires," that standard is "not without limits." *Max Oil Co. v. Range Prod. Co. Ltd. Liab. Co.*, 681 F. App'x 710, 716 (10th Cir. 2017) (citing *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999)). Leave to amend must be balanced not only against the requirements of Fed. R. Civ. P. 7(b)(1), *id.*, but also consider that Rule 15 allows for denial of a motion to amend "because of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Stafford v.*

*Saffle*, 34 F.3d 1557, 1560 (10th Cir. 1994) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). This response focuses on the futility of amendment.

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson County Sch. Dist. v. Moody's Investor's Services*, 175 F.3d 848, 859 (10th Cir. 1999). This is the precise circumstance presented by Plaintiff's proposed Second Amended Complaint ("PSAC") here. [ECF 85-1]. Indeed, no matter how many additional facts or claims Plaintiff presents, or how many parties are added, removed or substituted, Plaintiff cannot escape the fact that all of his claims flow from what he alleges is a state court adjudication of his child custody obligations. *Compare* [ECF 1] at ¶¶ 1, 23-32, *with* [ECF 9] at ¶¶ 1, 4, 5, 27-33, *and* PSAC [ECF 85-1] at ¶¶ 1, 2, 23-29. In short, Plaintiff simply and directly claims that the original state court orders from 2015 governing his divorce and child custody obligations—the Decree of Dissolution, Separation Agreement and Parenting Plan—are void *ab initio*, are therefore unenforceable, and Plaintiff is thus entitled to various money damages and declaratory relief with respect to the child support he has paid—or failed to pay—for the last eleven years. *See* PSAC [ECF 85-1] at ¶¶ 1-4, 38, 77-85.

As demonstrated below, Plaintiff's claims are therefore barred by several federal jurisdictional doctrines, amendment is therefore futile, and Plaintiff's motion to amend should be denied.

**B. Plaintiff's claims are subject to dismissal under the domestic relations exception to federal jurisdiction.**

The domestic relations exception is a judicially created exception to federal jurisdiction. It "divests the federal courts of power to issue divorce, alimony, and child

custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *see also Ex Parte Burrus*, 136 U.S. 586, 593-94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States."). The Tenth Circuit Court of Appeals has joined this authority in no uncertain terms: "[F]ederal courts lack jurisdiction over domestic relations cases." *Alfaro v. Cnty. of Arapahoe*, 766 F. App'x 657, 659 (10th Cir. 2019) (citing, *inter alia*, *Ankenbrandt*, *supra*). Even more broadly, a "federal court cannot 'reopen, reissue, correct, or modify' an order in a domestic-relations case." *Id.* (quoting *Leathers v. Leathers*, 856 F.3d 729, 756 (10th Cir. 2017)). And District Courts in this Circuit have routinely found jurisdiction lacking in cases, like this one, where the plaintiff claimed that the underlying state court order was "void," "unenforceable," or otherwise unlawfully entered. *See, e.g., Lee v. Hurd*, 2022 U.S. Dist. LEXIS 124085, at *7-9 (D. Colo. 2022) (citations omitted); *Surface v. Burke*, 2024 U.S. Dist. LEXIS 220655, at *7-9 (D. Colo. 2024) (recommendation adopted by, dismissed by, 2025 U.S. Dist. LEXIS 2085, at *3-4 (D. Colo. 2025)); *Bellinsky v. Weiser*, 2026 U.S. Dist. LEXIS 152295, at *9 (D. Colo. 2026) (noting that "'[A]ttempts to disguise the true nature of a domestic relations action in order to secure a federal forum' are not 'sufficient to preclude application of this rule.'" (quoting *Landrith v. Gariglietti*, 505 F. App'x 701, 703 (10th Cir. 2012))).

In sum, Plaintiff here attempts exactly the same strategy as those cases referenced above, baldly alleging that "Plaintiff does not ask this Court to declare any state-court order void *ab initio*, overturn any state-court judgment, or review the correctness of any state-court ruling." PSAC [ECF 85-1] at ¶ 3. Of course he does. Indeed,

this Court cannot grant Plaintiff the relief he seeks without reviewing the state court order governing his child support obligations to determine whether it was, in fact, enforced "without a lawful entered judicial predicate." *Id.* And all of Plaintiff's claims flow from this necessary review, which in turn squarely implicates the domestic relations exception. *See Bellinsky*, 2026 U.S. Dist. LEXIS 152294, at *18 ("A request to scrutinize orders from a domestic relations case for their legal merits necessarily entails 'decid[ing] those issues regularly decided in state[-]court domestic[-]relations actions.'" (quoting *Alfaro*, 766 F. App'x at 660)). Plaintiff's claims here are thus subject to dismissal under the domestic relations exception to federal jurisdiction, amended would therefore be futile, and leave to amend must therefore by denied.

**C. Plaintiff's claims are subject to dismissal for lack of jurisdiction under the *Rooker-Feldman* doctrine.**

Such claims as Plaintiff brings here—*all* such claims—are barred by the *Rooker-Feldman* doctrine as well. As the Supreme Court very recently clarified and emphasized, "federal district courts lack jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *T.M. v. Univ. of Md. Med. Sys. Corp.*, 2026 U.S. LEXIS 2557, at *7-8 (June 18, 2026) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U. S. 280, 284 (2005)). That is precisely what Plaintiff seeks here; he wishes this Court to review and reject the state court orders governing his child support obligations and hold that those orders were void and unenforceable. Courts in this circuit (as well as others) have

repeatedly and consistently held that the *Rooker-Feldman* doctrine bars such claims in very similar circumstances.

For example, in *Evans v. SSA*, 2007 U.S. Dist. LEXIS 98701 (D. Colo. 2007), a *pro se* plaintiff sued the Social Security Administration, Jefferson County, Colorado Child Support Enforcement, the Director of that agency, and the State of Colorado, alleging that child support garnishments from his Social Security Disability payments, as ordered by the Jefferson County Child Support Enforcement agency, violated his rights under the federal Child Support Enforcement Act and the Consumer Credit Protection Act. *Evans*, 2007 U.S. Dist. LEXIS 98701, at *2. The Court dismissed all of plaintiff's claims based on several discrete grounds, the most critical of which was the fact that the *Rooker-Feldman* doctrine "provides that federal courts, other than the United States Supreme Court, lack jurisdiction to adjudicate claims seeking review of state court judgments." *Id.* at *6-7 (citing *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923)). Moreover, the Court noted, "[t]he *Rooker-Feldman* doctrine bars not only cases seeking direct review of state court judgments; it also bars cases that are 'inextricably intertwined' with a prior state court judgment." *Id.* at *7-8 (quoting *Feldman*, 460 U.S. at 482 n.16).

This fundamental authority has not changed, and has been recently re-emphasized by the Tenth Circuit Court of Appeals. *See Rueb v. McCarville*, 2026 U.S. App. LEXIS 1933, at *3-4 (10th Cir. 2026) ("Under *Rooker-Feldman*, "[f]ederal district courts do not have jurisdiction to review state court judgments or claims inextricably intertwined with them." (quoting *Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006))). In

*Rueb*, the Court of Appeals upheld the District Court's finding that "[plaintiff's] 'complaint is … barred by *Rooker-Feldman* because the essence of each claim is "that the state court wrongfully entered its judgment."'" *Rueb*, 2026 U.S. App. LEXIS 1933, at *4 (quoting Magistrate Judge's Order, in turn quoting *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012)). So, too, does Plaintiff here make that very same claim, and in the same manner as did the plaintiff in *Rueb*: Plaintiff Hershfeldt directly pleads in all of his Complaints that "This action does not seek review, reversal, or modification of any state-court domestic-relations judgment; it challenges the constitutional adequacy of enforcement actions taken in the absence of a lawful judicial predicate or in contravention of the express limitations of the governing court record." *See* [ECF 1] at ¶ 2; [ECF 9] at ¶ 2 (same); PSAC [ECF 85-] at ¶ 3 ("Plaintiff does not ask this Court to declare any state-court order void *ab initio*, overturn any state-court judgment, or review the correctness of any state-court ruling. Plaintiff challenges executive and administrative enforcement conduct[.]"). Similarly, the plaintiff in *Rueb* "asserts his claims do not target the propriety of the various Colorado civil and criminal judgments against him, but instead merely challenge the actions of the defendants that induced those judgments." *Rueb*, 2026 U.S. App. LEXIS 1933, at *4. The *Rueb* Court responded to this argument in no uncertain terms: "This purported distinction is untenable. Mr. Rueb's complaints sought redress for injuries caused by state court judgments, including the mental distress caused by his incarceration and the financial losses stemming from his unsuccessful state court civil suits. The complaints are therefore inextricably intertwined with the state court judgments, … and the district court correctly dismissed the complaints as barred by *Rooker-*

*Feldman*.” *Id.* In that same vein, the “absence of a lawful judicial predicate” pled by Plaintiff here is a direct reference to the state court’s order governing his child support obligations—the very same order that Plaintiff also pleads was void because of an alleged administrative error. *See* [ECF 1] at ¶ 3 (“At no point was a valid, enforceable child-support order lawfully entered in this case”); [ECF 9] at ¶ 3 (“Plaintiff seeks redress for executive property seizures and liberty deprivations executed without a lawful judicial predicate”); PSAC [ECF 85-1] at ¶¶ 2, 3, 4, 24, 25 (same). In short, artful pleading efforts aside, Plaintiff here is simply asking that this Court review and reject the state court order governing his child support obligations as never having been lawfully entered. His claims are thus barred by *Rooker-Feldman*. *See also Sorak v. Cisneros*, 2024 U.S. App. LEXIS 30511, at *3 (10th Cir. 2024) (“[Plaintiff] argues his injuries came not from the state-court judgment itself but from the allegedly unconstitutional processes that produced it. But all his claims would evaporate if there were no state-court judgment against him. In other words, every claim for relief in the complaint is predicated on the effect of the state-court judgment. *And a claim is barred by Rooker-Feldman if ‘an element of the claim [is] that the state court wrongfully entered its judgment*.’” (emphasis added; quoting *Campbell*, 682 F.3d at 1283)); *Whitman v. Lambright*, 2026 U.S. App. LEXIS 10612, at *1-2 (5th Cir. 2026) (“‘Plaintiff now attempts to plead around *Rooker-Feldman*, arguing that he is not seeking review of a state court judgment but attempting “to halt ongoing constitutional violations by state officials.”’” “‘[A]ll of plaintiff’s claims stem from the fact that he believes the state court erred in registering the child support order—a matter for state court

review.'" (quoting and affirming the Magistrate Judge's Order, *Whitman v. Lambright*, 2025 U.S. Dist. LEXIS 213750 (W.D. La. 2025) (citations omitted))).

Because Plaintiff Hershfeldt's claims here are jurisdictionally barred by *Rooker-Feldman*, they are subject to dismissal, are therefore futile, and leave to amend should therefore be denied.

**D. The Larimer County Board of County Commissioners ("BOCC") is subject to dismissal as an improper party.**

Although the domestic relations exception and *Rooker-Feldman* issues are dispositive standing alone, the legal shortcomings of Plaintiff's PSAC (as well as his prior pleadings attempts) do not end there. For example, Defendant Larimer County must be dismissed as an improper party, because the Larimer County Department of Human Services is actually an arm of the state—a "branch of the statewide Colorado DHS," rather than a subordinate division of Larimer County. *See Doe v. Woodard*, 2016 U.S. Dist. LEXIS 197978, at *42-43 (D. Colo. 2016) (noting this distinction with respect to El Paso County Department of Human Services); *Howshar v. Larimer Cty. Dep't of Hum./Soc. Servs.*, 2022 U.S. Dist. LEXIS 208932, at *6-7 (D. Colo. 2022) (finding that the Larimer County Department of Human Services is an arm of the state and therefore entitled to Eleventh Amendment immunity). As such, the Larimer County Board of County Commissioners has no "final policymaking authority" over the Department of Human Services "because Colorado law vests 'final policymaking authority' with Colorado DHS." *Woodard*, 2016 U.S. Dist. LEXIS 197978, at *46 (citing *McMillian v. Monroe County*, 520 U.S. 781, 785; *Nielander v. Bd. of Cty. Comm'rs of Cty. of Republic, Kan.*, 582 F.3d 1155, 1170 (10th Cir. 2009) (affirming district court's dismissal of claim against county because

the government official's authority was derived from the state, rather than county); *Smith v. Cty. of Stanislaus*, 2012 U.S. Dist. LEXIS 51059, at *5 (E.D. Cal. 2012) (holding plaintiff failed to state a *Monell* claim against a county because defendants were not employees of the county)). Indeed, "Colorado law makes clear that the state board of human services and its executive director have the final authority to create and implement rules for the operation of the various county branches of the DHS, and thus are ultimately responsible for any policies implemented by the county branches." *Woodard* at *45-46 (citing C.R.S. §§ 26-1-107, 108 & 116). Thus, the Board of County Commissioners for Larimer County cannot be held liable on a *Monell* theory in this case because it is not "responsible for the municipal policy that was the 'moving force behind the deprivation.'" *Id.* at *44 (quoting *Myers v. Bd. of Cnty. Comm'rs of Okla. City*, 151 F.3d 1313, 1316 (10th Cir. 1998)). To the contrary, that responsibility for policy declaration lies with the Colorado Department of Human Services. *See id.* at *45-46. And since "Section 1983 imposes liability on 'those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue,'" the Larimer County Board of County Commissioners, lacking that final policymaking authority, cannot be held liable under Section 1983 in this case. *McMillian*, 520 U.S. at 785; *see also K.A. v. Barnes*, 2024 U.S. Dist. LEXIS 10333, at *18-20 (D. Colo. 2024) (dismissing the Arapahoe County, Colorado, Board of County Commissioners as an improper party and finding the analysis in *Woodard*, *supra* "persuasive").

**E. All of Plaintiff's official capacity claims are subject to dismissal under the Eleventh Amendment.**

Even if Plaintiff Hershfeldt were allowed to amend his complaint, yet again, in order to directly name the Larimer County Department of Human Services as a defendant, Eleventh Amendment immunity would render that effort futile as well. Indeed, although Plaintiff here does not seem to recognize it, he has, in fact, sued both the Larimer County Department of Human Services and the Colorado State Department of Human Services by naming the individual Larimer County Defendants in their "official capacity." *See* PSAC [85-1] at 1 (caption) & ¶¶ 9, 10, 11, 12, 13, 14, 17 (naming each individual Larimer County Defendant in their individual and official capacities); *Patel v. Hall*, 849 F.3d 970, 978 (10th Cir. 2017) ("An official-capacity claim against a municipal officer is the same as a suit against the municipality." (citation omitted)).

As noted above, county-level departments of human services in Colorado are arms of the state Department of Human Services, not subordinate divisions of the county where they have been established. And while the Tenth Circuit Court of Appeals has yet to conclusively rule on the issue as a broad proposition, *cf. Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002), for over thirty years Federal District Courts in Colorado have consistently held that the State's county-level human services departments are "arms of the state" and therefore entitled to immunity from suit under the Eleventh Amendment. And they have held as such in the contexts of both motions to dismiss and for summary judgment. *See, e.g., Howshar*, 2022 U.S. Dist. LEXIS 208932, at *6-7 (motion to dismiss; Larimer County Department of Human Services an arm of the state entitled to Eleventh Amendment immunity); *Estate of Goodwin v. Connell*, 376 F.Supp.3d 1133 (D. Colo. 2019) (motion to dismiss; same with respect to Jefferson County Department of Human

Services); *Jackson v. City & County of Denver*, 682 F.Supp.2d 1275 (D. Colo. 2008) (summary judgment; same, regarding Denver Department of Human Services); *Starkey v. Boulder Cty. Social Servs.*, 2006 U.S. Dist. LEXIS 84768 (D. Colo. 2006) (motion to dismiss; same, regarding Boulder County Social Services department); *Hidahl v. Gilpin Cty. Dept. of Social Servs.*, 1990 U.S. Dist. LEXIS 19822 (D. Colo. 1990) (summary judgment; same, regarding Gilpin County Department of Social Services). Indeed, so entrenched is the entitlement to Eleventh Amendment immunity that Courts in this District have recently taken to simply citing to the extant authority and declaring discrete county-level human services departments "arms of the state." For example, the Court in *Blea v. City & County of Denver Dep't of Human Servs.*, 2018 U.S. Dist. LEXIS 203576 (D. Colo. 2018),[1] after recognizing the four-step analysis traditionally engaged in for determining whether an entity is an arm of the state, went on to hold that "[t]his Court need not perform this multi-factor analysis anew. Multiple judges of the District Court for the District of Colorado have already done the analysis and found that Colorado county human services departments are arms of the state of Colorado for Eleventh Amendment immunity purposes." *Blea* at *9-10 (citing, *inter alia*, *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir.2007); *T.D. v. Patton*, 149 F. Supp. 3d 1297 (D. Colo. 2016); *Schwartz v. Jefferson Cty. Dep't of Human Servs.*, 2011 U.S. Dist. LEXIS 52068 (D. Colo. 2011)).

[1] Recommendation adopted in full and case dismissed, *Blea v. City & Cty. of Denver Dep't of Human Servs.*, 2018 U.S. Dist. LEXIS 216733 (D. Colo. 2018).

Generally speaking, then, a state may not be sued in federal court for damages, and that immunity extends to agencies that act as an arm of the state. *Ambus v. Granite Bd. of Educ.*, 975 F.2d 1555, 1560 (10th Cir. 1992). As such, all of Plaintiff's official capacity claims here are subject to dismissal, are therefore futile, and leave to amend should be denied.

**F. The individual capacity Defendants are entitled to qualified immunity.**

A plaintiff's burdens to overcome entitlement to qualified immunity in the context of a motion to dismiss are well-known. The threshold inquiry is whether the well-pled facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the answer to that inquiry is "no," then no further inquiry is needed. *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions," then the second inquiry is whether the law was clearly established at the time of the alleged violation. *Id.*; *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (failure at either prong of the inquiry, in any order, sufficient to show propriety of qualified immunity). Here, as set forth above, Plaintiff has failed to plead a violation of his constitutional rights in the first place, and cannot in any event present any law—much less clearly established law—demonstrating that efforts to enforce a state court order by Department of Human Services employees amounts to a constitutional violation.

Indeed, all of Plaintiff's claims here are bound to infirmity by the fact that they all require an assessment by this Court of the underlying state court adjudication of his child support obligations, and a finding by this Court that the state court wrongfully entered its

judgment. As analyzed at length above, those requirements are barred by the *Rooker-Feldman* doctrine. *Sorak* at *3 ("… every claim for relief in the complaint is predicated on the effect of the state-court judgment. And a claim is barred by *Rooker-Feldman* if 'an element of the claim [is] that the state court wrongfully entered its judgment.'" (citation omitted)). Thus, no underlying constitutional claim exists in this matter, and the individual Defendants are entitled to qualified immunity under the first prong of the analysis.

Even if that were not the case, however, the burden remains on Plaintiff Hershfeldt to produce clearly established law under the second qualified immunity prong. And to be "clearly established, a constitutional right *must* be confirmed by Supreme Court or Tenth Circuit precedent or the *overwhelming* weight of authority from other courts." *Finch v. Rapp*, 38 F.4th 1234, 1240 (10th Cir. 2022) (emphasis added) (citing *Cortez v. McCauley*, 478 F.3d 1108, 1114-15 (10th Cir. 2007). In other words, and with respect to each individual Defendant, such case authority must establish the constitutional or statutory right in a "sufficiently clear" manner such that "every reasonable official" in their respective positions would have known that their conduct violated Plaintiff's rights and place the "constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Undersigned counsel has been unable to locate any such clearly established authority, and believes Plaintiff will be unable to do so as well. The individual Larimer County Defendants are thus entitled to qualified immunity, Plaintiff's claims against them are subject to dismissal, therefore futile, and leave to amend should be denied.

## CONCLUSION

As demonstrated above, all of Plaintiff's claims, regardless of how artfully pled, require this Court to review and hold as void the original state court order in this matter, and this Court is therefore without jurisdiction to hear this case. In addition, all the Larimer County Defendants are entitled to dismissal in both their official and individual capacities in light of discrete grounds under the domestic relations exception, *Rooker-Feldman*, the Eleventh Amendment, and qualified immunity. As such, Plaintiff's claims as set forth in his proposed second amended complaint are subject to dismissal, are therefore futile, and leave to amend should be denied.

**Undersigned counsel certifies he did not use generative artificial intelligence to draft this pleading.

Respectfully submitted this 17th day of August, 2026.

*s/Michael T. Lowe*
Michael T. Lowe
Bruno, Colin, Goddard & Lowe, P.C.
1120 Lincoln Street, Suite 1606
Denver, CO 80203
Telephone: (303) 831-1099
mlowe@brunolawyers.com
*Counsel for Larimer County Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August, 2026, a true and correct copy of the foregoing **LARIMER COUNTY DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO AMEND COMPLAINT [ECF 85]** was electronically filed with service as follows:

Gerald Paul Hershfeldt
429 East 14th Avenue, #107
Denver, CO 80203
Jerry.hershfeldt@gmail.com
*Pro se Plaintiff*

Nicholas C. Poppe
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
NPoppe@ndm-law.com
*Counsel for Defendant Gill*

Rachel E. Ollis
Colorado Attorney General's Office
1300 Broadway, 6th Floor
Denver, Colorado 80203
rachel.ollis@coag.gov
*Attorney for Defendant Michelle Barnes in her official capacity as Executive Director of the Colorado Department of Human Services.*

Pursuant to D.C.COLO.LCivR 7.1(e), any unpublished citations identified in the above will be provided to *pro se* Plaintiff, electronically on August 17, 2026 postage prepaid to the address indicated above.

*s/ Julie Bozeman*
Julie Bozeman, Paralegal
Bruno, Colin, Goddard & Lowe, P.C.