**IN THE UNITED STATES COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-00342-NYW-CYC

GERALD PAUL HERSHFELDT,

Plaintiff,

v.

CARLEEN JOHNSTON, *et al.*,

Defendants.

---

**LARIMER COUNTY DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT [ECF 97]**

---

Defendants Johnston, Brant, Jashinsky, Lucero, Batts, Spicciati, O'Hayre, and Larimer County, Colorado (the "Larimer Defendants"), hereby move to dismiss Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) & (6), as follows:

<u>Duty to Confer</u>: Pursuant to D.C.COLO.LCivR. 7.1(a) and this Court's Practice Standards, conferral is not required because Plaintiff proceeds *pro se* in this matter.

**Introduction and Procedural History**

*Pro se* Plaintiff Hershfeldt filed the Second Amended, and controlling, Complaint in this matter on August 27, 2026. [ECF 97]. The Second Amended Complaint ("SAC") asserts seven claims for relief against various discrete Defendants: 1) a procedural due process claim based on the suspension of Plaintiff's driver's license; 2) a procedural due process claim based on unlawful enforcement of state court orders; 3) a procedural due process claim based on a "modification procedure"; 4) a substantive due process claim

based on "coercive enforcement"; 5) a First Amendment retaliation claim; 6) a Fair Credit Reporting Act ("FRCA") claim; and 7) an agency liability ("*Monell*") claim against Defendant Larimer County. [ECF 97] at 22-40. Plaintiff also seeks declaratory and injunctive relief. *Id*. at 40-41.

All of Plaintiff's claims arise from a June 2015 state family court proceeding that dissolved his marriage and entered child support orders concerning his minor children. *See* Docket Sheet, Larimer County District Court case no. 2015 DR 000229, attached hereto as **Exhibit A**, at 1;[1] [ECF 97] at ¶¶ 1, 2, 4, 23-27; [ECF 97-1] (attachment to SAC) at 5-8. Put directly, the SAC essentially asserts that the 2015 family court orders mandating his child support responsibilities were void *ab initio*, that as a result he has never been under any obligation to pay child support, and therefore all of the enforcement actions taken against him in the ensuing years for failing to meet his child support obligations are unlawful. [ECF 97] at ¶¶ 4, 23-25, 26,[2] 66, 77-87. In short, despite attempts

[1] The Larimer County Defendants respectfully request that this Court take judicial notice of the state court proceedings pursuant to Fed. R. Evid. 201(b)(2) & (c)(2) (The court … must take judicial notice if a party requests it and the court is supplied with the necessary information."). In addition, Plaintiff attached Exhibit A to his Second Amended Complaint and referenced it therein. *See* [ECF 97-1] at 5-8. And it is well established that "[f]acts 'subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment.'" *Mid-South Iron Workers Welfare Plan v. Harmon*, 645 F. App'x 661, 665 (10th Cir. 2016) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006)).

[2] Plaintiff also presents an "alternative" theory whereby he claims that if the original court orders are not, in fact, void ab initio, then Defendants are nonetheless liable for allegedly enforcing a child support order that contained discrepancies as to method of execution and amount due. *See, e.g.,* [ECF 97] at ¶ 26. This legal conclusion is immaterial, as Plaintiff's claims are subject to dismissal regardless of the theory on which they are pursued, as demonstrated below.

at artful pleading, Plaintiff Hershfeldt simply seeks to circumvent his state-ordered child support obligation and the administrative efforts to enforce that obligation, and gather money damages from the Larimer County Department of Human Services ("DHS") agents for that perceived persecution. These efforts are unavailing because all of Plaintiff's claims are barred by operation of several immunities and jurisdictional doctrines, including the domestic relations exception to federal jurisdiction, the *Younger* abstention doctrine, the *Rooker-Feldman* doctrine, Eleventh Amendment immunity, and qualified immunity.

**Standard of Review**

Federal R. Civ. P. 12(b)(1): The party invoking federal jurisdiction has the burden of establishing such jurisdiction. *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005). Rule 12(b)(1) provides that a complaint may be dismissed for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits, but is instead "a determination that the court lacks authority to adjudicate the matter." *Creek Red Nation, LLC v. Jeffco Midget Football Assn., Inc.*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016) (citation omitted). "A court … must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).

Subject matter jurisdiction challenges can take two different forms—facial or factual. Facial challenges focus on sufficiency of the allegations in the complaint, accepting the complaint's allegations as true. *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001). In contrast, factual challenges allow inquiry beyond the complaint's allegations to challenge facts upon which subject matter depends. *Id.* Factual

challenges thus allow the Court "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* (citation omitted). Such discretion does not convert the motion into a Rule 56 motion." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).

Federal R. Civ. P. 12(b)(6): In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When ruling on a motion to dismiss, the court must accept as true the factual allegations contained in the complaint, but it may not rely on mere conclusions. *Id.* at 555.

## Argument

### A. The Larimer County Board of County Commissioners must be dismissed as an improper party.

As a threshold matter, "Larimer County" is the only defendant against whom every claim is brought. However, "Larimer County" must be dismissed as an improper party, because Larimer County DHS is actually an arm of the state—a "branch of the statewide Colorado DHS," rather than a subordinate division of Larimer County. *See Doe v. Woodard*, 2016 U.S. Dist. LEXIS 197978, at *42-43 (D. Colo. 2016) (noting this distinction with respect to El Paso County Department of Human Services); *Howshar v. Larimer Cty. Dep't of Hum./Soc. Servs.*, 2022 U.S. Dist. LEXIS 208932, at *6-7 (D. Colo. 2022) (finding Larimer County DHS is an arm of the state and therefore entitled to Eleventh Amendment immunity). As such, "Larimer County" has no "final policymaking authority" over DHS "because Colorado law vests 'final policymaking authority' with Colorado DHS." *Woodard*, 2016 U.S. Dist. LEXIS 197978, at *46 (citing, *inter alia*, *McMillian v. Monroe County*, 520

U.S. 781, 785; *Nielander v. Bd. of Cty. Comm'rs of Cty. of Republic, Kan.*, 582 F.3d 1155, 1170 (10th Cir. 2009)). Indeed, "Colorado law makes clear that the state board of human services and its executive director have the final authority to create and implement rules for the operation of the various county branches of the DHS, and thus are ultimately responsible for any policies implemented by the county branches." *Woodard* at *45-46 (citing C.R.S. §§ 26-1-107, 108 & 116). Larimer County thus cannot be held liable on a *Monell* theory because it is not "responsible for the municipal policy that was the 'moving force behind the deprivation.'" *Id.* at *44 (quoting *Myers v. Bd. of Cnty. Comm'rs of Okla. City*, 151 F.3d 1313, 1316 (10th Cir. 1998)). That responsibility lies with the Colorado DHS. *See id.* at *45-46. And since "Section 1983 imposes liability on 'those officials or governmental bodies who speak with final policymaking authority … concerning the action alleged to have caused the particular constitutional or statutory violation at issue,'" Larimer County, lacking that final policymaking authority, cannot be held liable under § 1983 here. *McMillian*, 520 U.S. at 785; *see also K.A. v. Barnes*, 2024 U.S. Dist. LEXIS 10333, at *18-20 (D. Colo. 2024) (dismissing Arapahoe County Board of County Commissioners as an improper party, finding *Woodard*, *supra* "persuasive").

**B. Plaintiff's claims are subject to dismissal under the domestic relations exception to federal jurisdiction.**

The domestic relations exception to federal jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *see also Ex Parte Burrus*, 136 U.S. 586, 593-94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States."). The Tenth Circuit Court

of Appeals has joined this authority in no uncertain terms: "[F]ederal courts lack jurisdiction over domestic relations cases." *Alfaro v. Cnty. of Arapahoe*, 766 F. App'x 657, 659 (10th Cir. 2019) (citing, *inter alia*, *Ankenbrandt*, *supra*). Even more broadly, a "federal court cannot 'reopen, reissue, correct, or modify' an order in a domestic-relations case." *Id.* (quoting *Leathers v. Leathers*, 856 F.3d 729, 756 (10th Cir. 2017)). And District Courts in this Circuit routinely find jurisdiction lacking in cases, like this one, where the plaintiff claims that the underlying state court order is "void," "unenforceable," or otherwise unlawfully entered. *See, e.g., Lee v. Hurd*, 2022 U.S. Dist. LEXIS 124085, at *7-9 (D. Colo. 2022) (citations omitted); *Surface v. Burke*, 2024 U.S. Dist. LEXIS 220655, at *7-9 (D. Colo. 2024) (recommendation adopted by, dismissed by, 2025 U.S. Dist. LEXIS 2085, at *3-4 (D. Colo. 2025)); *Bellinsky v. Weiser*, 2026 U.S. Dist. LEXIS 152295, at *9 (D. Colo. 2026) (noting that "'[A]ttempts to disguise the true nature of a domestic relations action in order to secure a federal forum' are not 'sufficient to preclude application of this rule.'" (quoting *Landrith v. Gariglietti*, 505 F. App'x 701, 703 (10th Cir. 2012))).

In sum, Plaintiff here attempts exactly the same strategy as the cases referenced above, baldly alleging that he "does not ask this Court to declare any state-court order void *ab initio*, overturn any state-court judgment, or review the correctness of any state-court ruling." [ECF 97] at ¶ 3. Of course he does. Indeed, this Court cannot grant Plaintiff the relief he seeks without reviewing the state court order governing his child support obligations to determine whether it was, in fact, enforced "without a lawful entered judicial predicate." *Id.* And all of Plaintiff's claims flow from this necessary review, which in turn squarely implicates the domestic relations exception. *See Bellinsky*, 2026 U.S. Dist.

LEXIS 152294, at *18 ("A request to scrutinize orders from a domestic relations case for their legal merits necessarily entails 'decid[ing] those issues regularly decided in state[-]court domestic[-]relations actions.'" (quoting *Alfaro v. Cty. Of Arapahoe*, 766 F. App'x 657, 660 (10th Cir. 2019))). Plaintiff's claims here are thus subject to dismissal under the domestic relations exception to federal jurisdiction.

**C. Plaintiff's claims are subject to dismissal for lack of jurisdiction under the *Rooker-Feldman* doctrine.**

Such claims as Plaintiff brings here—*all* such claims—are barred by the *Rooker-Feldman* doctrine as well. As the Supreme Court recently emphasized, "federal district courts lack jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *T.M. v. Univ. of Md. Med. Sys. Corp.*, 2026 U.S. LEXIS 2557, at *7-8 (June 18, 2026) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U. S. 280, 284 (2005)). That is precisely what Plaintiff seeks here; he wishes this Court to review and reject the state court orders governing his child support obligations and hold that those orders were void and unenforceable. Courts in this circuit (and others) have repeatedly and consistently held that the *Rooker-Feldman* doctrine bars such claims in very similar circumstances.

For example, in *Evans v. SSA*, 2007 U.S. Dist. LEXIS 98701 (D. Colo. 2007), a *pro se* plaintiff sued the Social Security Administration, Jefferson County, Colorado Child Support Enforcement, the Director of that agency, and the State of Colorado, alleging that child support garnishments from his Social Security Disability payments, as ordered by the Jefferson County Child Support Enforcement agency, violated his rights under the

federal Child Support Enforcement Act and the Consumer Credit Protection Act. *Evans*, 2007 U.S. Dist. LEXIS 98701, at *2. The Court dismissed all of plaintiff's claims based on several discrete grounds, the most critical of which was the fact that the *Rooker-Feldman* doctrine "provides that federal courts, other than the United States Supreme Court, lack jurisdiction to adjudicate claims seeking review of state court judgments." *Id.* at *6-7 (citing *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923)). Moreover, the Court noted, "[t]he *Rooker-Feldman* doctrine bars not only cases seeking direct review of state court judgments; it also bars cases that are 'inextricably intertwined' with a prior state court judgment." *Id.* at *7-8 (quoting *Feldman*, 460 U.S. at 482 n.16).

This fundamental authority has not changed, and has been recently re-emphasized by the Tenth Circuit Court of Appeals. *See Rueb v. McCarville*, 2026 U.S. App. LEXIS 1933, at *3-4 (10th Cir. 2026) ("Under *Rooker-Feldman*, "[f]ederal district courts do not have jurisdiction to review state court judgments or claims inextricably intertwined with them." (quoting *Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006))). In *Rueb*, the Court of Appeals upheld the District Court's finding that "[plaintiff's] 'complaint is … barred by *Rooker-Feldman* because the essence of each claim is "that the state court wrongfully entered its judgment."'" *Rueb*, 2026 U.S. App. LEXIS 1933, at *4 (quoting lower Magistrate Judge's Order & *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012)). Plaintiff here makes that very same claim, and in the same manner as the plaintiff in *Rueb*: Plaintiff Hershfeldt directly pleads that "Plaintiff does not ask this Court to declare any state-court order void ab initio, overturn any state-court judgment, or review

the correctness of any state-court ruling." [ECF 97] at ¶ 3.[3] Similarly, the plaintiff in *Rueb* "asserts his claims do not target the propriety of the various Colorado civil and criminal judgments against him, but instead merely challenge the actions of the defendants that induced those judgments." *Rueb*, 2026 U.S. App. LEXIS 1933, at *4. The *Rueb* Court responded to this argument in no uncertain terms: "This purported distinction is untenable. Mr. Rueb's complaints sought redress for injuries caused by state court judgments, including the mental distress caused by his incarceration and the financial losses stemming from his unsuccessful state court civil suits. The complaints are therefore inextricably intertwined with the state court judgments … and the district court correctly dismissed the complaints as barred by *Rooker-Feldman*." *Id.* Here, the absence of a "lawful judicial predicate" pled by Plaintiff is a direct reference to the state court's order governing his child support obligations—the very same order that Plaintiff also pleads is void because of an alleged administrative error. *See* [ECF 97] at ¶¶ 2, 3, 4, 24, 25. In short, artful pleading efforts aside, Plaintiff is simply asking this Court to review and reject the state court order governing his child support obligations as never having been lawfully entered. His claims are thus barred by *Rooker-Feldman*. *See also Sorak v. Cisneros*, 2024 U.S. App. LEXIS 30511, at *3 (10th Cir. 2024) ("[Plaintiff] argues his injuries came not from the state-court judgment itself but from the allegedly unconstitutional processes that produced it. But all his claims would evaporate if there were no state-court judgment against him. In other words, every claim for relief in the complaint is predicated on the

---

[3] All of Plaintiff's Complaints in this matter contain similar or identical language. *See* [ECF 1] at ¶ 2; [ECF 9] at ¶ 2.

effect of the state-court judgment. *And a claim is barred by Rooker-Feldman if 'an element of the claim [is] that the state court wrongfully entered its judgment*.'" (emphasis added; quoting *Campbell*, 682 F.3d at 1283)); *Whitman v. Lambright*, 2026 U.S. App. LEXIS 10612, at *1-2 (5th Cir. 2026) ("'[A]ll of plaintiff's claims stem from the fact that he believes the state court erred in registering the child support order—a matter for state court review.'" (quoting and affirming Magistrate Judge's Order, *Whitman v. Lambright*, 2025 U.S. Dist. LEXIS 213750 (W.D. La. 2025) (citations omitted))). Thus, because Plaintiff's claims here are jurisdictionally barred by *Rooker-Feldman*, they are subject to dismissal.

**D. All of Plaintiff's official capacity claims are subject to dismissal under the Eleventh Amendment.**

Even if Plaintiff Hershfeldt were allowed to amend his complaint in order to directly name the Larimer County DHS as a defendant, Eleventh Amendment immunity would render that effort futile. Indeed, Plaintiff here has functionally sued both the Larimer County DHS and the Colorado State DHS by naming the individual Defendants in their "official capacity." *See* [ECF 97] at 1 (caption) & ¶¶ 9, 10, 11, 12, 13, 14, 17; *Patel v. Hall*, 849 F.3d 970, 978 (10th Cir. 2017) ("An official-capacity claim against a municipal officer is the same as a suit against the municipality." (citation omitted)).

As noted above, county-level departments of human services in Colorado are arms of the State DHS, not subordinate divisions of the county where they have been established. And while the Tenth Circuit Court of Appeals has yet to conclusively rule on the issue as a broad proposition, *cf. Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002), for over thirty years Federal District Courts in Colorado have consistently held that the State's county-level human services departments are "arms of the state" and therefore

entitled to immunity from suit under the Eleventh Amendment, in the contexts of both motions to dismiss and for summary judgment. *See, e.g., Howshar*, 2022 U.S. Dist. LEXIS 208932, at *6-7 (motion to dismiss; Larimer County Department of Human Services an arm of the state entitled to Eleventh Amendment immunity); *Estate of Goodwin v. Connell*, 376 F.Supp.3d 1133 (D. Colo. 2019) (motion to dismiss; same with respect to Jefferson County Department of Human Services); *Jackson v. City & County of Denver*, 682 F.Supp.2d 1275 (D. Colo. 2008) (summary judgment; same, regarding Denver Department of Human Services); *Starkey v. Boulder Cty. Social Servs.*, 2006 U.S. Dist. LEXIS 84768 (D. Colo. 2006) (motion to dismiss; same, regarding Boulder County Social Services department); *Hidahl v. Gilpin Cty. Dept. of Social Servs.*, 1990 U.S. Dist. LEXIS 19822 (D. Colo. 1990) (summary judgment; same, regarding Gilpin County Department of Social Services). Indeed, so entrenched is DHS entitlement to Eleventh Amendment immunity that Courts in this District have recently taken to simply citing to the extant authority and declaring discrete county-level human services departments "arms of the state." *See, e.g., Blea v. City & County of Denver Dep't of Human Servs.*, 2018 U.S. Dist. LEXIS 203576, at *9-10 (D. Colo. 2018)[4] ("This Court need not perform this multi-factor analysis anew. Multiple judges of the District Court for the District of Colorado have already done the analysis and found that Colorado county human services departments are arms of the state of Colorado for Eleventh Amendment immunity purposes."). Generally speaking, then, a state may not be sued in federal court for damages, and that

---

[4] Recommendation adopted in full and case dismissed, *Blea v. City & Cty. of Denver Dep't of Human Servs.*, 2018 U.S. Dist. LEXIS 216733 (D. Colo. 2018).

immunity extends to agencies that act as an arm of the state. *Ambus v. Granite Bd. of Educ.*, 975 F.2d 1555, 1560 (10th Cir. 1992). As such, all of Plaintiff's official capacity claims here are subject to dismissal.

**E. The Court should abstain from hearing this matter under the *Younger* abstention doctrine.**

There is a "longstanding public policy against federal court interference with state court proceedings[.]" *Steffel v. Thompson*, 415 U.S. 452, 460-61 (1974); *Younger v. Harris*, 401 U.S. 37, 43-45 (1971). This policy "require[s] that federal courts respect state functions and the independent operation of state legal systems." *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997). And *Younger* abstention is jurisdictional. *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004).

Younger abstention applies in only three classes of state court proceedings: (1) ongoing state criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (citations omitted). The doctrine applies whether a case seeks injunctive, declaratory and/or monetary relief. *See D.L.*, 392 F.3d at 1228. This is because a successful party in a federal case could take their federal judgment to the state court and attempt to enjoin, interfere with, or use the judgment for its purported preclusive effect in the state proceedings. *Id.* Additional non-dispositive factors the Court may consider are whether: (1) there is an ongoing state criminal, civil, or administrative proceeding; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests, matters which traditionally

look to state law for their resolution or implicate separately articulated state policies. *See Amanatullah v. Colorado Bd. of Med. Examiners*, 187 F.3d 1160, 1163 (10th Cir. 1999) (citation omitted); *Sprint*, 571 U.S. at 81-82 (holding that factors other than the three enumerated in *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 364 (1989) are non-dispositive).

Of the three *Sprint* factors, the third factor most directly applies to the instant matter. To this end, "[i]t is undisputed that issues involving family relations pose questions of important state interest." *Williams v. Jewell*, 1997 U.S. App. LEXIS 4068, at *5 (10th Cir. 1997) (citing *Moore v. Sims*, 442 U.S. 415, 435 (1979)); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987) (mandating abstention "when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government"). Moreover, "the 'state … obviously has an interest in the orderly conduct of the proceedings in its courts in a manner which protects the interest of the child and the family relationship.'" *Williams* at *5 (quoting *Morrow v. Winslow*, 94 F.3d 1386, 1397 (10th Cir. 1996)). And here, as set forth in detail above, Plaintiff's claims "do not transcend or exist apart from the family law issue. Indeed, [Plaintiff] is challenging the state's efforts to collect child support payments from him, including whether any of his funds were improperly seized." *Gibson v. Lopez*, 2022 U.S. Dist. LEXIS 106986, at *15-16 (D. Colo. 2022) (collecting cases where plaintiffs made similar claims as Plaintiff Hershfeldt here, which were nonetheless dismissed for lack of jurisdiction under *Younger*, because these cases invoke "civil proceedings involving certain orders uniquely in furtherance of the

state courts' ability to perform their judicial functions.")). Thus, because Plaintiff's claims here flow directly from his June 2025 state domestic relations proceedings, [ECF 97] at ¶¶ 2, 4, 6, 24-34, and cannot exist separately from those proceedings, this Court should abstain from hearing them under *Younger*. *See Sprint*, 571 U.S. at 81-82 (clarifying that *Younger* extends only to the three traditional factors noted above, and "no further").

**F. The individual capacity Defendants are entitled to qualified immunity.**

A plaintiff's burdens to overcome entitlement to qualified immunity in the context of a motion to dismiss are well-known. The threshold inquiry is whether the well-pled facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the answer is "no," then no further inquiry is needed. *Id.* However, if the answer is "yes," then the second inquiry is whether the law was clearly established at the time of the alleged violation. *Id.*; *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (failure at either prong of the inquiry, in any order, sufficient to show propriety of qualified immunity). As set forth above, Plaintiff has failed to plead a violation of his constitutional rights in the first place, and cannot in any event present any law—much less clearly established law—demonstrating that efforts to enforce a state court order by DHS employees amounts to a constitutional violation.

Indeed, all of Plaintiff's claims here are bound to infirmity by the fact that they all require an assessment by this Court of the underlying state court adjudication of his child support obligations, and a finding by this Court that the state court wrongfully entered its judgment. As analyzed at length above, those requirements are barred by the *Rooker-Feldman* doctrine. *Sorak* at *3 ("… every claim for relief in the complaint is predicated on

the effect of the state-court judgment."). Thus, no underlying constitutional claim exists, and the individual Defendants are entitled to qualified immunity under the first prong.

Even if that were not the case, however, the burden remains on Plaintiff Hershfeldt to produce clearly established law under the second qualified immunity prong. And to be "clearly established, a constitutional right *must* be confirmed by Supreme Court or Tenth Circuit precedent or the *overwhelming* weight of authority from other courts." *Finch v. Rapp*, 38 F.4th 1234, 1240 (10th Cir. 2022) (emphasis added; citation omitted). With respect to each individual Defendant, then, such case authority must establish the constitutional or statutory right in a "sufficiently clear" manner such that "every reasonable official" would have known that their conduct violated Plaintiff's rights and place the "constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Undersigned counsel has been unable to locate any such authority, and believes Plaintiff will be unable to do so as well. The individual Larimer County Defendants are thus entitled to qualified immunity, and Plaintiff's claims against them must be dismissed.

**Conclusion**

For the reasons and authority foregoing, all of Plaintiff's claims in this matter must be dismissed pursuant to the domestic relations exception, *Rooker-Feldman*, *Younger* abstention, the Eleventh Amendment, and qualified immunity.

**Undersigned counsel certifies he did not use generative artificial intelligence to draft this pleading.

Respectfully submitted this 2nd day of October, 2026.

*s/Michael T. Lowe*
Michael T. Lowe
Bruno, Colin, Goddard & Lowe, P.C.
1120 Lincoln Street, Suite 1606
Denver, CO 80203
Telephone: (303) 831-1099
mlowe@brunolawyers.com
*Counsel for Larimer County Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of October, 2026, a true and correct copy of the foregoing **LARIMER COUNTY DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT [ECF 97]** was electronically filed with service as follows:

Gerald Paul Hershfeldt
429 East 14th Avenue, #107
Denver, CO 80203
Jerry.hershfeldt@gmail.com
*Pro se Plaintiff*

Nicholas C. Poppe
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
NPoppe@ndm-law.com
*Counsel for Defendant Gill*

Rachel E. Ollis
Colorado Attorney General's Office
1300 Broadway, 6th Floor
Denver, Colorado 80203
rachel.ollis@coag.gov
*Attorney for Defendant Michelle Barnes in her official capacity as Executive Director of the Colorado Department of Human Services.*

Pursuant to D.C.COLO.LCivR 7.1(e), any unpublished citations identified in the above Motion will be provided to *pro se* Plaintiff, electronically on October 5, 2026 to the e-mail address indicated above.

*s/ Julie Bozeman*
Julie Bozeman, Paralegal
Bruno, Colin, Goddard & Lowe, P.C.