**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-00342-NYW-CYC

GERALD PAUL HERSHFELDT,

Plaintiff,

v.

CARLEEN JOHNSTON, et al.,

Defendants.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO LARIMER COUNTY DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT [ECF 103, FILED OCTOBER 2, 2026]**

---

## INTRODUCTION

Plaintiff Gerald Paul Hershfeldt responds to the Larimer County Defendants' Motion to Dismiss Second Amended Complaint [ECF 103, filed Oct. 2, 2026] ("Motion"). To the extent the Motion presents a factual challenge to jurisdiction, see ECF 103 at 3-4, Plaintiff submits with this Response his Declaration and exhibits (Opp. Exs. 1, 1-A, and 2-5). Plaintiff separately addresses the sufficiency of the SAC under Rule 12(b)(6).

The Motion describes this case as an effort to "circumvent his state-ordered child support obligation" and to "gather money damages … for that perceived persecution." ECF 103 at 3. The Second Amended Complaint ("SAC") [ECF 97] pleads otherwise, and says so expressly. It does not contend the Decree is void. *Id.* ¶ 24. It does not ask this Court to void, modify, or review any state-court order. *Id.* ¶¶ 3, 83, 121. It pleads two alternative tracks under Rule 8(d), *id.* ¶ 4, and the Motion answers only one. The

second, the Contrary-to-Instrument Track, assumes the Decree and incorporated Separation Agreement are enforceable and alleges that county officials acted contrary to them. The Motion places that track in a footnote and calls it “immaterial.” ECF 103 at 2 n.2. The Motion does not explain why its judgment-review arguments dispose of that alternative track.

Nor does the record show a litigant avoiding payment. The Family Support Registry record attached to the SAC shows $41,087.00 paid into the account, $3,749.58 returned, and $37,337.42 net credited. ECF 97-1, Ex. 5; ECF 97 ¶ 6(a). The County’s own notice dated September 2, 2026 nevertheless reports a “current balance owed” of $15,049.55 and states that amounts “will be intercepted even if you are currently making payments toward your past due amount.” Opp. Ex. 2. The SAC does not ask whether a parent may avoid support. It asks which instrument authorized each act of enforcement, who decided, and what process came first.

## STANDARD OF REVIEW AND JURISDICTIONAL EVIDENCE

Plaintiff, as the party invoking jurisdiction, bears the burden of establishing it. *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005). A Rule 12(b)(1) motion may be facial, accepting the complaint’s allegations as true, or factual, permitting inquiry beyond the complaint. *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001); *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). The Motion describes both forms and relies on a state docket sheet (Exhibit A) for facts outside the SAC. ECF 103 at 2 n.1, 3-4. It does not say which form it takes, and judicial notice of a docket does not by itself make a challenge factual. To the extent the Motion

is a factual attack, the Court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts," and doing so does not convert the motion into one for summary judgment. *Rodriguez-Aguirre*, 264 F.3d at 1203; *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). Plaintiff offers the exhibits described below for that purpose. Opposition Exhibits 2 through 6 post-date or were not part of the SAC; they are offered only as evidence bearing on the jurisdictional facts the Motion places at issue.

Judicial notice of a docket sheet shows what the docket says, not the truth of matters asserted in it. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Where jurisdiction depends on the same statute that supplies the substantive claim, the motion is treated under Rule 12(b)(6) or Rule 56. *Holt*, 46 F.3d at 1003. If the Court considers, on any Rule 12(b)(6) ground, matters outside the SAC that are not incorporated in it or properly subject to judicial notice, Rule 12(d) requires that all parties receive a reasonable opportunity to present pertinent material.

The exhibits are: (1) the Intergovernmental Reference Guide ("IRG") profile for Colorado, published through the federal Office of Child Support Enforcement portal, displaying "Updated On: 08/25/2026" and "Certified On: 09/29/2026" (Opp. Ex. 1), and the same profile as re-certified on October 22, 2026 (Opp. Ex. 1-A), in both of which the passages quoted below appear; (2) the Larimer County Child Support Services Pre-Offset Notice dated September 2, 2026 (Opp. Ex. 2); (3) the Colorado Department of Human Services response to CORA request 2026.288, dated September 10, 2026 (Opp. Ex. 3); (4) Plaintiff's September 16, 2026 email to counsel transmitting his written

request for administrative review (Opp. Ex. 4); (5) Defendant Brant's July 7, 2025 email to Plaintiff (Opp. Ex. 5); and (6) Defendant Brant's March 14, 2025 email to Plaintiff (Opp. Ex. 6). Decl. ¶¶ 2-9.

## ARGUMENT

### A. The Motion Does Not Answer the Contrary-to-Instrument Track, and the SAC Seeks No Review of a State-Court Order.

The Motion's premise is that the SAC "essentially asserts that the 2015 family court orders … were void ab initio." ECF 103 at 2. The SAC pleads the opposite: "Plaintiff does not contend the Decree is itself void." ECF 97 ¶ 24; see also *id.* ¶¶ 3, 83, 121. On a facial attack the Court takes the SAC as pleaded, *Rodriguez-Aguirre*, 264 F.3d at 1203, and the Motion offers no evidence that disputes what the SAC says it seeks.

The Contrary-to-Instrument Track asks a question of conduct. Assuming the Decree and Separation Agreement are enforceable, did the officials who enforced them follow them? The SAC alleges that the Decree directs payment directly to the obligee rather than through income assignment (¶¶ 24, 28); that the court's minute order records $1,028 per month, the Agreement $1,128, and a later ICON entry $622 (¶¶ 28, 39); that the signed June 2, 2022 order "does not address past due support" (¶ 40); and that Defendants enforced an administrative arrears balance without an identified adjudication of it (¶¶ 4, 26, 86-87). That balance now stands at $15,049.55 (Opp. Ex. 2), and the Department of Human Services' CORA response states that the Department has no records responsive to Plaintiff's request for records explaining the difference between the $6,638.00 registry arrearage and the $0.00 ICON figure for the same date,

and suggests contacting the county. Opp. Ex. 3 (Category 4); ECF 97 ¶ 43. Plaintiff offers that response as showing that no explanation has been supplied, not as proof that none exists in any county record. Plaintiff disputed the balance in writing on September 16, 2026 and transmitted that dispute to counsel for all Defendants that day. Opp. Ex. 4; Decl. ¶¶ 5-6. Comparing what officials did with what the instrument says does not issue, reopen, or modify anything. The domestic relations exception "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992). The SAC seeks none. *Ankenbrandt* also located the exception in the diversity statute, *id.* at 695-701, and the SAC invokes 28 U.S.C. §§ 1331 and 1343. ECF 97 ¶ 5.

The No-Executable-Order Track rests on a pleaded discrepancy in the state record: the June 9 and June 10, 2015 entries, and the absence of a separately entered support order before June 2, 2022. ECF 97 ¶¶ 25, 78. The Motion itself asks the Court to consult that record by judicial notice of Exhibit A. ECF 103 at 2 n.1. Identifying what the register contains is not reviewing the correctness of any ruling. Plaintiff does not contend that the register alone decides the legal effect of the Decree, which incorporates the Separation Agreement and addresses the method of payment. ECF 97 ¶ 24. And jurisdiction is assessed claim by claim; dismissal of one track would not reach the other. See *Balderama v. Bulman*, No. 25-2101, slip op. at 4 (10th Cir. May 21, 2026) (unpublished) (Rooker-Feldman is "narrow" and "claim specific").

**B. The Domestic-Relations and Rooker-Feldman Authorities the Motion Cites Involved Litigants Attacking the Orders Themselves.**

The decisions the Motion cites for these doctrines concerned litigants who wanted a federal court to disturb an entered order or judgment, or to hold that a state court erred. In *Alfaro v. County of Arapahoe*, 766 F. App'x 657, 659-60 (10th Cir. 2019), the plaintiff sought to have a federal court reopen or modify domestic-relations orders; the court held it could not "reopen, reissue, correct, or modify" them. *Lee v. Hurd* and *Bellinsky v. Weiser* likewise sought to void or disturb existing orders. ECF 103 at 6. In *Sorak v. Cisneros*, 2024 U.S. App. LEXIS 30511, at *3 (10th Cir. 2024), the plaintiff's claims "would evaporate if there were no state-court judgment against him." In *Whitman v. Lambright*, 2026 U.S. App. LEXIS 10612, at *1-2 (5th Cir. 2026), the plaintiff "believe[d] the state court erred in registering the child support order." As the Motion describes *Rueb v. McCarville*, it involved criminal and civil judgments and incarceration, not child support. ECF 103 at 8-9. As the Motion describes *Evans v. SSA*, it involved federal-statute challenges to garnishment of disability benefits and was resolved on "several discrete grounds." ECF 103 at 7-8. The Motion cites *Surface v. Burke* only for a general proposition and does not describe its facts. *Id.* at 6. None of these decisions, as the Motion presents them, addresses a claim that officials enforced without an entered executable order or contrary to the terms of the order they identify as their authority. In each, the order or judgment was the premise and the target.

Where the Tenth Circuit has separated the two kinds of claim, it has held that an attack on the order is barred and a claim about officials' conduct is not. In *Eaves v. Paxton*, No. 24-1400, slip op. at 5-7 (10th Cir. Apr. 15, 2026) (unpublished), a child-

support enforcement case, allegations that "can reasonably be construed as a challenge to the original child support order" were barred, but due-process allegations that officials ignored requests for a modification hearing were "distinct from, and do not call into question the legitimacy of, the original child support order," and the district court erred in applying Rooker-Feldman to them. See also *Balderama*, slip op. at 4-7 (reversing as to claims that did not seek to set aside the support order; affirming only as to the sub-claim seeking to enjoin enforcement of the order itself). The SAC's requests are framed the same way: it asks that further collection await an entered predicate and constitutionally adequate process, ECF 97 ¶ 122, and disclaims any request to set aside an order, *id.* ¶¶ 3, 121.

### C. Rooker-Feldman Does Not Reach Claims About Executive Enforcement Conduct.

Rooker-Feldman is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It does not apply where the plaintiff presents "some independent claim," even one that denies a legal conclusion a state court reached. *Id.* at 293; *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). The question is the source of the injury. *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1237 (10th Cir. 2006). A claim is barred when an element of it is that the state court wrongfully entered its judgment. *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012). In *Graff v. Aberdeen Enterprizes II, Inc.*, No. 21-5031, slip op. at 26-29 (10th Cir. Apr. 10, 2023), the court held the doctrine inapplicable to claims

aimed at collection practices that followed the judgments, because those claims did not seek to set the judgments aside.

The SAC's injuries have an executive source. Count I challenges license suspensions and notices issued without notice or a hearing (ECF 97 ¶¶ 50-54, 70). Count III challenges the County's procedure for preparing the worksheet calculation (¶¶ 47, 88-94). Count IV challenges continued coercive enforcement after actual notice of harm (¶¶ 96-99). Count V challenges next-day enforcement actions after protected filings (¶¶ 102-105). Count VI challenges furnisher conduct after credit-bureau disputes (¶¶ 106-114). Count VII challenges County customs (¶¶ 115-119). Counts V and VI would exist whatever the validity of any order, and Count I turns on the process that preceded each suspension. This is the sense in which *Sorak's* claims "would evaporate"; these would not.

The jurisdictional evidence is consistent with that source. The State's profile, certified in September and again in October 2026, reports that "[o]ur automated enforcement remedies are done through administrative law"; that credit-bureau reporting is "Administrative"; that the criterion for a lien is "[t]he existence of an arrears balance"; and that license suspension "is triggered by non-payment of support" and "[t]he county caseworker has the ability to work with non-custodial parents." Opp. Ex. 1, Items 1.3, 9.5, 9.36, 9.27. The County's notice states that CSS "has determined" that the balance is owed and "will take" the listed actions, and that its Administrative Review "is not a judicial determination." Opp. Ex. 2. The acts complained of are administrative

acts taken on an administratively maintained balance. They are not state-court judgments.

**D. The Registry Record Does Not Support the Motion's Premise That Plaintiff Is Avoiding Payment.**

The Motion's description of "enforcement actions … for failing to meet his child support obligations," ECF 103 at 2, and of an effort to "circumvent" them, *id.* at 3, is argument, not evidence. The SAC alleges that Plaintiff paid the obligee directly under the Separation Agreement, ECF 97 ¶¶ 25, 29, and that the registry thereafter credited a net $37,337.42. *Id.* ¶ 6(a). The registry ledger records $41,087.00 paid and $3,749.58 returned. ECF 97-1, Ex. 5. A federal court reviewing that record is not asked to excuse a debt. It is asked whether officials who collected those sums, and who now assert a $15,049.55 balance by a notice that declares offsets will occur even during payment, can identify the instrument and the process that supported each step. Opp. Ex. 2. That inquiry exists independent of any judgment's correctness. *Exxon*, 544 U.S. at 293.

**E. Section A and Section D of the Motion Raise Different Questions, and the Record Answers Both.**

The Motion argues in Section A that "Larimer County" is an improper party because final policymaking authority rests with the State, and in Section D that official-capacity claims are barred because county human services departments are arms of the State. ECF 103 at 4-5, 10-12. These are separate inquiries. Municipal liability turns on who holds final policymaking authority "in a particular area, or on a particular issue," determined under state law. *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83 (1986). Eleventh Amendment

status turns on the character, autonomy, and finances of the entity. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180-81 (10th Cir. 2002).

On the first, the Motion relies on *Doe v. Woodard*, 2016 U.S. Dist. LEXIS 197978, and *K.A. v. Barnes*, 2024 U.S. Dist. LEXIS 10333, for the proposition that the State's rulemaking authority makes the State the final policymaker. ECF 103 at 4-5. That a State writes general rules does not decide who holds final authority over the discretionary decisions challenged here: which remedy to invoke, against whom, and whether to consider hardship. The SAC alleges that Larimer County's own "policy and procedures" governed those decisions and that Director O'Hayre reviewed and approved them without further review. ECF 97 ¶¶ 10, 17, 64-67, 116-117. The State's certified profile is consistent: "All programs operate through the County Department of Human Services"; "County CSS offices can choose whether or not to enforce interest"; "County Policy will determine the administrative establishment of support for a prior period"; "County CSS offices have input as to whether or not a lien is issued"; and county caseworkers "have the ability to take the circumstances of the case into consideration throughout the driver's license suspension process." Opp. Ex. 1, Items 1.1, 4.4, 6.4, 9.16, 9.28. The September 2 notice issues from "Larimer County DSS - CSE Unit." Opp. Ex. 2. County staff also exercised that discretion in this case. On July 7, 2025, Defendant Brant wrote that "[w]e have lowered the monthly obligation to $100 due to the change of circumstances/UCB, this will be reviewed in 4 months for possible increase," and that "adjustments to past orders for changes of custody or arrears amount would need to be addressed through the court as our office does not address

those concerns." Opp. Ex. 5; see ECF 97 ¶ 66(3). Her March 14, 2025 email states that, because "the case is for arrears only at this time (no monthly obligation is being posted on the ledger), the amount set each month to go towards that balance is at my discretion," and offers to set the amount for a six-month period, after which it "will be reviewed and could be increased." Opp. Ex. 6. Plaintiff wrote the July 2, 2025 email to which Brant replied before he located the June 2015 register entries, and gave written notice of them on October 10, 2025. Decl. ¶ 8; ECF 97 ¶ 55. These facts show county discretion, and whether they make the County the final policymaker for these decisions is a function-specific question. The Motion's authorities do not resolve whether the particular enforcement decisions and allocation of authority alleged here support County liability.

On the second, the Motion concedes that the Tenth Circuit "has yet to conclusively rule" on whether county departments are arms of the State, ECF 103 at 10, and rests on district-court decisions. *Howshar v. Larimer County Department of Human/Social Services*, 2022 U.S. Dist. LEXIS 208932, on which Section D principally relies, concerned a state case-management system (TRAILS) and rested on prior district-court decisions rather than a record such as this one. Section D is also directed at a different entity: it argues that Eleventh Amendment immunity would make futile an amendment to "name the Larimer County DHS as a defendant." ECF 103 at 10. It does not argue that Larimer County is itself immune. Further, the SAC seeks only prospective relief from the official-capacity defendants, ECF 97 ¶¶ 18, 20, 122, which *Ex parte Young*, 209 U.S. 123, 159-60 (1908), and *Will v. Michigan Department of State Police*,

491 U.S. 58, 71 n.10 (1989), permit. See *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002). And the Eleventh Amendment does not protect individual-capacity defendants. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). Section D does not address the individual-capacity claims.

**F. The Motion Does Not Establish a Qualifying Ongoing Proceeding Under Younger.**

Younger applies in three categories of "pending" state proceedings: criminal prosecutions, civil enforcement proceedings akin to criminal prosecutions, and civil proceedings involving orders "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73, 78 (2013). The Motion relies on the third category. ECF 103 at 12-14. It does not identify the particular state proceeding, its status when this action was filed or now, or the Sprint category it fits. It refers to "June 2025 state domestic relations proceedings," *id.* at 14, while the SAC concerns the June 2015 Decree. ECF 97 ¶¶ 2, 23-25. Where no qualifying state proceeding is pending, abstention is improper. *Ankenbrandt*, 504 U.S. at 705.

The Motion's principal authority, *Gibson v. Lopez*, 2022 U.S. Dist. LEXIS 106986, at *15-16, involved a pending state domestic-relations case (No. 2014DR2322). The Motion points to no such case here. The conduct challenged is also administrative, and the nature of the proceeding, not its label, controls under Sprint. The State certifies that its "automated enforcement remedies are done through administrative law." Opp. Ex. 1, Item 1.3. A Pre-Offset Notice and an administrative review that "is not a judicial determination," Opp. Ex. 2, are not orders uniquely in furtherance of a state court's

judicial functions. Finally, even where Younger applies, a federal court may not dismiss claims for damages that the state proceeding cannot redress; it may only stay them. *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988); see also *Graff*, slip op. at 38.

**G. Qualified Immunity Does Not Support Dismissal.**

The Motion's first-prong argument rests on Sections B and C: "no underlying constitutional claim exists" because the claims are jurisdictionally barred. ECF 103 at 14-15. That reasoning fails with those sections, though Plaintiff recognizes that defeating the jurisdictional arguments does not itself establish a violation. The Motion contains no Rule 12(b)(6) argument directed at the elements of any Count, and does not analyze any individual Defendant's conduct although each Count names different Defendants. See ECF 97 at 22-40.

Qualified immunity applies to the individual-capacity damages claims in Counts I-V, and the second-prong burden is Plaintiff's. *Quinn v. Young*, 780 F.3d 998, 1004-05 (10th Cir. 2015). Plaintiff identifies the following, by Count. Counts I and II: a State may not suspend a license, or take property, without the procedural due process the Fourteenth Amendment requires. *Bell v. Burson*, 402 U.S. 535, 539 (1971); *Fuentes v. Shevin*, 407 U.S. 67, 80-82 (1972). The SAC alleges that four suspensions issued with no hearing, after the County had written notice of hardship. ECF 97 ¶¶ 49-54, 70. Plaintiff does not contend that *Turner v. Rogers* creates a categorical ability-to-pay hearing right; the claim rests on Bell and Mathews. *Id.* ¶ 75. Count III: due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner," *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), and the SAC alleges that Jashinsky

and Batts stated in writing that actual placement data was not considered while $12,440 was collected. ECF 97 ¶¶ 47, 90-94. Count IV: executive conduct shocks the conscience where officials act with deliberate indifference when actual deliberation is practical, *County of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998), and the SAC alleges that Johnston and O'Hayre continued enforcement without review after written notice of housing loss and distress. ECF 97 ¶¶ 98-99. Count V: retaliation for petitioning is a recognized First Amendment violation. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). The SAC alleges that Lucero received Plaintiff's filed motion by email on November 12, 2025 and issued a manual payment demand on November 13, 2025 with no intervening change in arrears or payment status. ECF 97 ¶¶ 56, 102, 104. As to March 2026, Plaintiff alleges Lucero's knowledge on information and belief. *Id.* ¶ 104. Where the unlawfulness is apparent, a general rule gives fair warning. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Count VI is a statutory furnisher claim under 15 U.S.C. § 1681s-2(b) against the entities and officials named in it, and is not an individual-capacity constitutional claim. The Motion does not address it. The SAC pleads inaccuracies visible on the face of the tradelines. ECF 97 ¶¶ 109, 112; see *Ward v. Nat'l Credit Sys., Inc.*, 182 F.4th 918 (10th Cir. 2026) (objectively verifiable inaccuracy under § 1681s-2(b)). Qualified immunity also does not protect Larimer County, *Owen v. City of Independence*, 445 U.S. 622, 638 (1980), and does not apply to prospective relief.

## CONCLUSION

ECF 103 should be denied. To the extent the Court concludes that it lacks jurisdiction over any claim or track, dismissal of that portion must be without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006).

Respectfully submitted this 23rd day of October, 2026.

s/ Gerald Paul Hershfeldt
Gerald Paul Hershfeldt
Pro Se Plaintiff
429 E. 14th Ave. #107
Denver, CO 80203
720-378-8474
jerry.hershfeldt@gmail.com

## AI CERTIFICATION

Pursuant to Judge Nina Y. Wang's Standing Order Regarding the Use of Generative Artificial Intelligence in Court Filings, the undersigned certifies that generative artificial intelligence—specifically, Claude (Anthropic), Gemini (Google), and Perplexity—was used to draft this filing. The undersigned further certifies that all language drafted by generative AI was personally reviewed by the undersigned for accuracy, and that all legal citations reference actual non-fictitious cases or cited authority, each of which the undersigned has personally reviewed.

s/ Gerald Paul Hershfeldt

**CERTIFICATE OF SERVICE**

I certify that on this 23rd day of October, 2026, I electronically filed the foregoing Response, with the Declaration of Gerald Paul Hershfeldt and Opposition Exhibits 1, 1-A and 2-6, with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

Pursuant to D.C.COLO.LCivR 7.1(e) and Practice Standard 10.1(b)(3), copies of the unpublished authorities cited above are attached.

s/ Gerald Paul Hershfeldt