# Colorado

### OCSE Region:

State
Tribe
International
----Select----- 01 - Alabama 02 - Alaska
60 - American Samoa 04 - Arizona 05 - Arkansas
06 - California 08 - Colorado 69 - Commonwealth of the Northern Mariana Islands 09 - Connecticut 10 - Delaware
11 - District of Columbia 12 - Florida 13 - Georgia
66 - Guam 15 - Hawaii 16 - Idaho 17 - Illinois
18 - Indiana 19 - Iowa 20 - Kansas 21 - Kentucky 22 - Louisiana 23 - Maine 24 - Maryland 25 - Massachusetts 26 - Michigan
27 - Minnesota 28 - Mississippi 29 - Missouri
30 - Montana 31 - Nebraska 32 - Nevada 33 - New Hampshire 34 - New Jersey 35 - New Mexico
36 - New York 37 - North Carolina 38 - North Dakota
39 - Ohio 40 - Oklahoma 41 - Oregon 42 -

Pennsylvania 72 - Puerto Rico 44 - Rhode Island
45 - South Carolina 46 - South Dakota 47 - Tennessee
48 - Texas 49 - Utah 50 - Vermont 51 - Virginia
78 - Virgin Islands 53 - Washington 54 - West Virginia
55 - Wisconsin 56 - Wyoming
----Select----- 830 - Alabama-Coushatta Tribe of Texas
A61 - Aleutian-Pribiloff Islands Associations, Inc. 560 - Bear River Band of Rohnerville Rancheria 201 - Blackfeet Nation S02 - Central Council Tlingit And Haida Indian Tribes Of Alaska 905 - Cherokee Nation 906 - Chickasaw Nation 205 - Chippewa Cree Tribe 181 - Coeur D'Alene Tribe 808 - Comanche Nation of Oklahoma 203 - Confederated Tribes of Salish and Kootenai 101 - Confederated Tribes of the Colville Reservation
143 - Confederated Tribes of the Umatilla Indian Reservation 914 - Delaware Tribe of Indians 001 - Eastern Band of Cherokee Indians
282 - Eastern Shoshone 434 - Forest County Potawatomi Community
204 - Fort Belknap Indian Community 439 - Ho-Chunk Nation
810 - Kaw Nation 475 - Keweenaw Bay Indian Community
823 - Kickapoo of Oklahoma 861 - Kickapoo Tribe in Kansas
140 - Klamath Tribes 431 - Lac Courte Oreilles 432 - Lac Du Flambeau Band Of Lake Superior Chippewa Indians 407 - Leech Lake Band of Ojibwe 107 - Lummi Nation 440 - Menominee Indian Tribe of Wisconsin 702 - Mescalero Apache Tribe
408 - Mille Lacs Band of Ojibwe Indian Reservation 040 - Mississippi Band of Choctaw Indians 927 - Modoc Tribe of Oklahoma
908 - Muscogee (Creek) Nation 780 - Navajo Nation
182 - Nez Perce Tribe 111 - Nooksack Indian Tribe 281 - Northern Arapaho Tribe 433 - Oneida Tribe of Indians of Wisconsin
930 - Osage Tribe of Oklahoma 018 - Penobscot Nation
813 - Ponca Tribe of Oklahoma 113 - Port Gamble S'Klallam Tribe
862 - Prairie Band Potawatomi Nation 721 - Pueblo of Zuni
115 - Puyallup Tribe of Indians 117 - Quinault Indian Nation
435 - Red Cliff Band of Lake Superior Chippewas 409 - Red Lake Band of Chippewa Indians 490 - Sac and Fox Tribe of the Mississippi in Iowa

007 - Saint Regis Mohawk Tribe 909 - Seminole Nation of Oklahoma
180 - Shoshone-Bannock Tribes 347 - Sisseton-Wahpeton Oyate Sioux
Tribe 437 - Sokaogon Chippewa Community 302 -
Standing Rock Sioux Tribe 438 - Stockbridge-Munsee Community
114 - The Suquamish Tribe 301 - Three Affiliated Tribes
123 - Tulalip Tribes 410 - White Earth Nation 383 -
Winnebago Tribe of Nebraska 562 - Yurok Tribe
----Select----- 036 - Australia 124 -
Canada 376 - Israel 756 - Switzerland
008 - Albania 040 - Austria 112 -
Belarus 056 - Belgium 070 - Bosnia
and Herzegovina 076 - Brazil 100 -
Bulgaria 132 - Cabo Verde 124 -
Canada 170 - Colombia 191 - Croatia
196 - Cyprus 203 - Czech Republic 208
- Denmark 214 - Dominican Republic
218 - Ecuador 222 - El Salvador 233 -
Estonia 246 - Finland 250 - France
268 - Georgia 276 - Germany 300 -
Greece 340 - Honduras 348 - Hungary
372 - Ireland 380 - Italy 398 -
Kazakhstan 417 - Kyrgyzstan 428 -
Latvia 440 - Lithuania 442 -
Luxembourg 470 - Malta 499 -
Montenegro 528 - Netherlands 554 -
New Zealand 558 - Nicaragua 578 -
Norway 600 - Paraguay 608 -
Philippines 616 - Poland 620 -
Portugal 642 - Romania 688 - Serbia
703 - Slovakia 705 - Slovenia 724 -

Spain 752 - Sweden 756 - Switzerland
792 - Turkey 804 - Ukraine 826 - United Kingdom




State Child Support Website

---

**Updated On:** 08/25/2026
**Certified On:** 09/29/2026

Program Category:
----SELECT ALL---- 1. General Program-At-A-Glance 2. Duration Of Support 3. Statute Of Limitations 4. Support Order Details 5. Paternity/Parentage 6. Support Order Establishment 7. Income Withholding 8. Distribution 9. Enforcement 10. Modification And Review/Adjustment 11. Lump Sum Payments 12. Cost Recovery And Fees 13. Insurance Match 14. Family Violence 15. CSENet 16. Copies Of Orders And Payment Records 17. Uniform Interstate Family Support Act (UIFSA) 18. International - Reciprocity 19. International Information For Hague Convention Countries 20. International Payments 21. Tribal Non IV-D 22. Employer Services

## 1. General Program-At-A-Glance

1. How many local child support offices are in your state excluding agencies with cooperative agreements?

We have 55 county offices serving our 64 counties. All programs operate through the County Department of Human Services, many of which contract with private counsel. The El Paso and Teller County programs have obtained a purchase of services agreement with Young Williams Child Support Services

2. What is the name of your IV-D agency?

Colorado Division of Child Support Services.

3. Is your state administrative, judicial, or a combination of both? In particular, does your state primarily use judicial or administrative procedures to establish and/or enforce support orders? Please describe.

We use a combination of administrative and judicial processes to establish the orders depending on the circumstances of the case. Our automated enforcement remedies are done through administrative law.
**For Additional Information** - No Link Provided

4. Does your state use the following applications: EDE, CSENET, QUICK?

Yes, all counties have access to all three of these systems.

5. Describe special requirements for telephonic or video participation in two-state actions.

Each judicial district has different policies. States need to work with the local CO CSS agency handling their case.
**For Additional Information** - No Link Provided

## 2. Duration Of Support

1. What is the duration of support in your state? Include the age of majority when the support obligation ends in the absence of other factors. Include your state's statutory citation(s).

Unless a court finds that a child is otherwise emancipated, emancipation occurs at age 19. Emancipation is extended by enrollment in high school or an equivalency program, but not beyond age 21. If the child is disabled, support may continue beyond age 19. Emancipation may occur at any earlier age due to marriage or entry into active military service. 14-10-115 (13), Colorado Revised Statutes (C.R.S.) for orders entered after July 1, 1997 and 14-10-115 (15), C.R.S for orders entered prior to July 1, 1997.
**For Additional Information** - No Link Provided

2. If not addressed in the order, at what age is child support automatically terminated as a matter of state law? Qualify, if necessary.

Generally, for all orders, child support terminates automatically without the necessity of a Motion, when the "last or only" child of an order reaches age 19 or otherwise emancipates, unless one of three statutory exceptions exists, see 4 below.
**For Additional Information** - No Link Provided

3. Does the date of the order determine the law that is applied to the duration of support? If yes, describe.

Yes. On July 1, 1991, Colorado lowered the age of emancipation from 21 to 19. This is one of the reasons Colorado has two different statutory sections dealing with emancipation. Although both sections provide for exceptions to the general rule of emancipation upon attaining the age of 19, the exception regarding written stipulations is different as noted above in 2.
**For Additional Information** - No Link Provided

4. Does your state law allow support to be paid beyond the age of majority under certain circumstances (for example, if the child has a disability or is in college)? If yes, describe.

Yes. Child Support will continue after the last or only child attains age 19 if (1) the child is physically or mentally disabled, or (2) the child is still enrolled in high school or an equivalency program (in which case child support continues until the month following graduation, but not beyond age 21) or (3) if the parties sign a written stipulation agreeing that child support continue beyond age 19. The stipulation must be signed after July 1, 1997 for orders entered after that date or after July 1, 1991 for orders entered prior to July 1, 1997. These rules apply to "flat orders." See 7 below for a discussion of"per child" orders.
**For Additional Information** - No Link Provided

5. What are your state's laws regarding the emancipation of the child that would result in early termination of the child support obligation? Describe.

Emancipation will also occur if a child marries or enters active military service. The child is considered emancipated before reaching the age of 19 through marriage or active military duty.
**For Additional Information** - No Link Provided

6. Does child support end if the child no longer lives with the custodial parent but does not emancipate according to state law? For example, the child graduates from high school at 17 and no longer lives with the custodial parent?

No.

7. For orders that include multiple children, does your state automatically reduce the current support owed for remaining children after one of the children in the order reaches the age of majority or otherwise emancipates? If yes, describe.

Only if the order is a "per child" order. Most orders in Colorado are "flat orders," meaning one child support amount is established for all the children as a group. For "flat orders," a party must file a request for a review or Motion to Modify to reduce a child obligation, unless the "last or only" child emancipates. See 2 above. If a court enters a "per child" order, the child support amount would be reduced pursuant to the order as each child emancipates.

8. Does your state provide IV-D services to establish support for a child who is no longer a minor but for whom state law provides post-majority support (for example, if the child has a disability or is in college)? If yes, please describe the specific circumstances.

No.

# 3. Statute Of Limitations

1. What is your state's statute of limitations for the collection of past-due support?

20 years. Any unpaid child support is considered a judgment by operation of law. If the arrears are reduced to judgment by the court, the 20 year statute of limitations begins from the date the judgment was entered. 54th Colorado Court Rules for Civil Procedure 13-52-102 C.R.S.
**For Additional Information** - No Link Provided

2. What is your state's statute of limitations for the establishment of paternity/parentage? Please explain.

18 years of age if action initiated by custodial parent; 21 years of age if action is initiated by child.
**For Additional Information** - No Link Provided

3. Is dormancy revival/renewal possible? If yes, under what circumstances and for how long?

Yes. Colorado child support judgments expire after 20 years. In order to enforce the judgment past the 20 years, the judgment must be revived prior to the 20-year expiration. 14-10-122, C.R.S.
**For Additional Information** - No Link Provided

4. Can the statute of limitation for enforcement be extended or waived? If yes, under what circumstances and for how long?

Colorado child support judgments expire after 20 years. In order to enforce the judgment past the 20 years, the judgment must be revived prior to the 20-year expiration. 14-10-122, C.R.S.

# 4. Support Order Details

1. What guideline type or method does your state use to calculate child support (for example, Income Shares Model, Percentage of Income Model, Melson Formula)?

Shared Income Model: 14-10-115, C.R.S
**For Additional Information** - No Link Provided

2. What is the minimum number of days with each parent that can be considered in your guideline's formula, and what evidence is required (for example, court-order custody schedule, parenting plan, or verbal testimony)?

As of March 1, 2026, a parenting time credit is deducted from each parent's share of the basic child support obligation. There is no minimum number of overnights for parenting time credit to be considered. See 14-10-115(8)(b).
**For Additional Information** - No Link Provided

3. Does your state have any statute(s) addressing interest on arrears? If yes, indicate the amount of interest charged, any related conditions, and the statutory citation.

Yes. Under Colorado Revised Statutes, interest may be calculated for child support arrearages. The following interest percentages can be calculated: prior to June 30, 1975, 6% simple interest; July 1, 1975, through June 30, 1979, 8% simple interest; July 1, 1979, through June 30, 1986, 8% compounded interest; July 1, 1986, through June 30, 2021, 12% compounded interest; and July 1, 2021 through the present 10% compounded interest. If a Colorado county elects to enforce interest, the County CSS office must provide written notification prior to enforcing interest. If the CSS office is enforcing interest, it can only be assessed beginning with the date of this written

notification. If interest is assessed, an updated interest calculation must be completed every six months, and notice provided of the new interest amount that has been assessed. 14-14- 106 & 5-12-101, C.R.S.
**For Additional Information** - No Link Provided

4. Does your state's IV-D agency calculate interest on arrears? If yes, indicate the amount of interest charged and any related conditions.

Yes. County CSS offices can choose whether or not to enforce interest and most do not offer that service. A judgment is not required. County CSS offices must provide written notification prior to enforcing interest. If the CSS office is enforcing interest, it can only be assessed beginning with the date of this written notification. If interest is assessed, an updated interest calculation must be completed every six months, and notice provided of the new interest amount that has been assessed.

5. Does your state charge interest on retroactive support? If yes, indicate the amount of interest charged and any related conditions.

Yes. See 1 and 2.

6. Will your state enforce a medical debt for any uninsured portion? If yes, under what circumstances?

No.

7. If your state has issued an order, and another IV-D agency asserts that the person/entity entitled to receive child support payments has changed from the person/entity designated in your state's order (due to a change in placement or foster care status), what does your state require in order to change the person/entity entitled to receive payments?

The CSS offices files a Motion to Join Party and Add Payee with the court, followed by a modified order that abates the original order. We also establish a new order against the previous custodial party that the child moved from. Once approved, this redirects the payments to the caretaker. The procedure would be followed only if the caretaker applied for services or we received a UIFSA action from another state.

7.1 Does it matter if the child receives TANF or Medicaid-only? If yes, explain.

6.1 Does it matter if the child receives TANF or Medicaid-only? If so, explain. If a child/family receives TANF, the case is mandatorily referred to our child support office. The process is the same as if we received an application.

8. Does your state require that a custodial party, who is not one of the biological parents, have legal custody of a child before enforcing an order for support that was issued to the biological parents as the parties for non-public assistance cases?

No.

9. Does your state IV-D agency grant the noncustodial parent credit toward child support for Social Security Administration (SSA) auxiliary benefits paid to the custodial parent on behalf of a child when those benefits are based on the noncustodial parent’s SSA benefit?

Only as authorized by the guidelines statute, 14-10-115, C.R.S. SSDI payments due the child because of the NCP's disability and received by the CP as Representative Payee are credited dollar for dollar against the MSO due from the NCP. Payment of past-due lump sum SSDI payments due the child are also credited dollar for dollar against any arrears and/or judgment for retroactive support.

9.1 If a child’s auxiliary SSA benefit paid to the custodial parent is greater than the current child support obligation, do you credit the excess amount against arrearages, and if so, how?

In cases where the custodial parent receives a lump sum retroactive award on behalf of a child, the lump sum award received by the custodial parent is credited against any past-due child support obligation that accrued between the date of SSDI eligibility and the date of the lump sum payment and is not Title IV-A or Title IV-E debt. See 14-10-115(11)(d), C.R.S.

10. Does your state abate support? If yes, explain the circumstances and provide your statutory citation.

Yes, we abate support orders when there is a post-order change of physical care (example: when a child moves from one parent to the other parent, the original obligor parent's current support obligation would be abated.) 26-13-121, C.R.S.
**For Additional Information** - No Link Provided

11. If a child’s family benefit paid directly to the custodial parent is greater than the child support order, how do you credit the excess amount of current support? (That is, is it treated as a gift, paid to arrears accrued at any time, or treated as payment for a future period?)

In cases where the custodial parent receives a lump sum retroactive award on behalf of a child, any lump sum amount in excess of the established child support order or judgment is deemed a gratuity to the child. See 14-10-115(11)(d), C.R.S.

12. If the case is an intergovernmental case, what is your process for notification and reconciliation of the SSA payments with the other state?

None.

13. Does your state close cases when the noncustodial parent receives SSI only or when the noncustodial parent receives SSI and Title II benefits?

SSI only or concurrent SSI and Title II benefits.

14. Does your state child support agency have a debt compromise program?

Counties have the discretion to determine when compromise is appropriate based on the circumstances of each case.

15. When a child reaches the age of majority or otherwise emancipates and arrears are owed on the order, how does your state determine the payment rate on arrears? (For example, is collection enforced at the support amount plus arrears amount?)

If the payment rate on arrears is not court ordered, the arrears payment amount may be adjusted to a reasonable amount as defined by procedure.

16. When there is an existing support order between the parents of a child and the child’s residence changes from one parent to the other, does your state require that the new custodial parent obtain legal custody before child support is addressed? Please describe.

No - Counties will join the parties, add a payee, and modify the order upon a significant and continuous change in circumstances, including a change in the child’s residence.

## 5. Paternity/Parentage

1. Does your state law require custody and visitation to be addressed at the time of paternity/parentage establishment? If yes, please describe and provide the statutory citation.

No. Pursuant to 19-6-104, if the party files a motion seeking allocation of parental responsibilities (custody) the court shall enter an order allocating parental responsibilities pursuant to section 14-10-124, C.R.S. If a party requests orders for allocating parental responsibilities, but the court is unable to hold a hearing to address all issues within the federally required time frame for support, the court shall set a separate hearing for those issues after entry of the order of support. For Additional Information - No Link Provided
**For Additional Information** - No Link Provided

2. How is genetic testing coordinated within your state when the other party is in another state?

Each county has their own processes in place to schedule genetic testing.
**For Additional Information** - No Link Provided

3. What is the percentage of probability for genetic testing that creates a rebuttable or conclusive presumption of paternity?

A rebuttable presumption of paternity is created when the genetic tests results show that the probability is ninety-seven percent or higher. 19-4-105, C.R.S. For Additional Information - No Link Provided
**For Additional Information** - No Link Provided

4. What is the state law citation that makes paternity acknowledgment conclusive? Please describe (if appropriate).

A duly executed voluntary acknowledgment of paternity is equivalent to an adjudication of paternity upon filing with Vital Records. However, a parent may rescind the acknowledgment within 60 days and may contest paternity in a Colorado court action as a defense in a child support action, but only on the grounds of mistake of material fact, fraud, or duress. 19-4-105, C.R.S. For Additional Information - No Link Provided
**For Additional Information** - No Link Provided

5. Does marriage constitute a rebuttable presumption of paternity/parentage without exceptions? Please describe and provide your statutory citation.

Yes. Marriage creates a presumption that may be rebutted in an appropriate action only by clear and convincing evidence. 19-4-105 C.R.S. For Additional Information - No Link Provided
**For Additional Information** - No Link Provided

6. Does the father's name on the birth certificate constitute a conclusive presumption of paternity? Please provide your state citation. If no, please describe.

Not necessarily. It depends on why a father's name is on the birth certificate. If the father's name is on the birth certificate because the parents were legally married at the time of the birth, there is a presumption of paternity. It is only a legal determination if the father's name is on the birth certificate due to a signed Voluntary Acknowledgement of Parentage or pursuant to a court or administrative order of paternity. For Additional Information - No Link Provided
**For Additional Information** - No Link Provided

7.Does your state have any other paternity/parentage-related presumptions? If yes, please describe.

Yes. Presumptions of paternity include marriage/civil union, attempted marriage/civil union, the father receiving the child into his home and openly holding out the child as his natural child, and genetic testing shows a probability of 97% or higher. Details may be found in the Colorado Revised Statutes, 19-4-105. For Additional Information - No Link Provided

8. What, if any, is the agency name and link for your state's putative fathers' registry?

None.
**For Additional Information** - No Link Provided

9.What documents regarding paternity can your state's IV-D agency provide to other IV-D agencies? Are there any charges to the requesting IV-D agencies?

The IV-D agency can provide court orders, APA orders, and copies of other birth records. There are no charges to the requesting IV-D agencies. CO COVES liaison can assist other states' Title IV-D agencies by searching the Vital Statistics records to determine if an Acknowledgement of Parentage exists. If the Acknowledgement of Parentage exists, you can request for a copy through this application with CO Vital Records. The application provides all the necessary information required for a successful application. For Additional Information - No Link Provided

10. Does your state's bureau of vital statistics charge any fees to other states or private individuals for requesting searches, paternity/parentage documents, and data?

Yes.
**For Additional Information** - No Link Provided

10.1 Describe any circumstances under which these fees may be waived?

There are no circumstances under which these fees may be waived.

11. Is common-law marriage currently recognized in your state? If yes, describe the standard that defines common-law marriage and the date the standard went into effect.

Yes. Two adults are free to enter into a marriage contract, if neither is married to another person and both parties are of legal age (18). The adults hold themselves out to the public as married: such as sharing a joint checking account, filing joint income tax returns, or putting both names on property titles as a married couple. The marriage also must not be prohibited due to being within the same family, except as to marriages permitted by the established customs of aboriginal cultures, per 14-2-110, C.R.S.

12. If there was a prior common-law standard in your state that is no longer in effect, what were the dates that standard was in effect? Describe the standard.

A common law marriage entered into, on, or after September 1, 2006 shall not be recognized as a valid marriage in the state unless, at the time the common law marriage is entered into: Each party is eighteen years of age or older, and neither party is already married or in a civil union. Additionally, any marriage is prohibited between an ancestor and a descendent or between a brother and a sister, whether by half or full blood; a marriage between an uncle and a niece or between an aunt and a nephew, whether the relationship is by the half or the whole blood, except as to marriages permitted by the established customs of aboriginal cultures. A common law marriage contracted outside of the state on or after September 1, 2006 that does not satisfy the requirements above, shall not be recognized as valid in this state. 14-2-109.5, C.R.S.:

13. If there is more than one child with the same custodial party and the same alleged father, should an initiating jurisdiction send one intergovernmental packet to your state (with a separate Declaration in Support of Establishing Parentage forms for each child) or a separate intergovernmental packet for each child?

One packet is sufficient

# 6. Support Order Establishment

1. Does your state use an administrative, judicial, or a combined process to establish a support obligation?

Combined

1.1 If your state can establish both administratively and judicially, under what circumstances would your state use the administrative process? Please provide the statutory citation for your state's administrative procedures.

At all times except when: A) A Colorado court order exists which evokes judicial jurisdiction for child support (is not silent on child support) or B) An order exists in Colorado which could be modified judicially to establish a monthly child support obligation or, C) The case requires paternity establishment and the case involves a presumed father and one or more alleged father(s) or the case involves multiple alleged fathers, or D) One or both of the parents in under age 18, or E) A non-custodial party requests a court hearing prior to the scheduled Administrative Negotiation Conference, F) or a Respondent is on active military duty and did not sign a waiver, or G) There is an adoption subsidy H) The parties cannot agree to certain issues at the Administrative Process Negotiation Conference, or I) The application of the child support guidelines (14-10-115 C.R.S) would be inequitable, unjust or inappropriate. (Example: one parent takes care of the children everyday after school and puts them to bed, but they don't spend the night.) The administrative process statute is 26-13.5-101 et seq., C.R.S. Also, no child support order will be established if the county director or designated IV-A staff has made a finding of good cause exemption from referral to the Child Support Services Unit.
**For Additional Information** - No Link Provided

1.2. Under what circumstances would your state use the judicial process? Please provide the statutory citation for your state's judicial procedures.

A judicial process is used when: A) A Colorado court order exists which evokes judicial jurisdiction for child support (is not silent on child support), or B) An order exists in Colorado which could be modified judicially to establish a monthly child support obligation, or C) The case requires paternity establishment and the case involves a presumed father and one or more alleged father(s) or the case involves multiple alleged fathers, or D) One or both of the parents is under age 18, or E) A non-custodial party requests a court hearing prior to the scheduled Administrative Negotiation Conference, F) or a Respondent is on active military duty and did not sign a waiver, or G) There is an adoption subsidy H) The parties cannot agree to certain issues at the Administrative Process Negotiation Conference, or I) The application of

the child support guidelines (14-10-115 C.R.S) would be inequitable, unjust, or inappropriate. (Example: one parent takes care of the children everyday after school and puts them to bed, but they don't spend the night.) The judicial process is primarily in 14-14-101 et. seq.
**For Additional Information** - No Link Provided

2. When setting support using your state's guidelines, whose income is considered in addition to the noncustodial parent's (for example, custodial parent, spouse, child)?

The financial resources of the other parent are considered pursuant to 14-10-115, C.R.S. In rare cases financial resources of the child may also be considered, if they can be used to meet the basic needs of the child.
**For Additional Information** - No Link Provided

2.1. What documentation is required as proof/evidence of this information?

We typically use pay stubs and tax returns, as well as Department of Labor and Employment reports as evidence of parental income. A child's income would be evidenced by the source of the income.

3. What criteria for rebutting your presumptive guidelines have been established in your state?

The courts may deviate from the guideline where its application would be inequitable, unjust or inappropriate. Any such deviation shall be accompanied by written or oral finding by the court specifying the reasons for the deviation. 14-10-115, C.R.S
**For Additional Information** - No Link Provided

4. Will your state establish support orders for prior periods of support? If yes, please describe (for example, from the birth of the child, from date of separation, prenatal expenses, five years retroactive).

Yes County Policy will determine the administrative establishment of support for a prior period. Most counties that establish retroactive support do so from the date of application. If retroactive support is not wanted by the party, it is reserved. A party may always file a motion with the court in the same action to seek retroactive support independently. Restrictions on retroactive support: an order for support or a prior period may not be entered (1) for those months the custodial party received public assistance or (2) for those months the custodial party did not have custody of the child(ren), or (3) for those months the custodial party and the non-custodial party lived together. In cases where a divorce or legal separation action has been filed, a party

can receive retroactive support from the date of the parties' physical separation, the filing of the petition, or upon service to the obligor, whichever date is the latest. In other cases, retroactive support can be obtained under the Uniform Parentage Act (Title 19, C.R.S.) from the date of birth.
**For Additional Information** - No Link Provided

4.1. What information or documentation does your state require to proceed with establishing support for prior periods?

Documentation of any relevant facts and an Affidavit of retroactive support. 14-10-115 C.R.S.
**For Additional Information** - No Link Provided

4.2. Will your state allow a petition for support for a minor child when the only issue is retroactive support?

No.

4.3. If there are limitations upon your state's ability to establish support for prior periods, specify those limitations.

County Policy will determine the administrative establishment of support for a prior period. A party may always file a motion with the court in the same action to seek retroactive support. Restrictions on retroactive support: an order for support or a prior period may not be entered (1) for those months the custodial party received public assistance or (2) for those months the custodial party did not have custody of the child(ren), or (3) for those months the custodial party and the non-custodial party lived together. In cases where a divorce or legal separation action has been filed, a party can receive retroactive support from the date of the parties' physical separation, the filing of the petition, or upon service to the obligor, whichever date is the latest.
**For Additional Information** - No Link Provided

5. Does your state require that a custodial party, who is not a biological parent, have legal custody of a child before establishing an order for support when public assistance is being expended?

No
**For Additional Information** - No Link Provided

5.1. What about when public assistance is not being expended?

No

6. When your state has issued an order that reserves support, and now child support should be ordered, does your state require establishment or modification?

It is usually establishment, but it might be either establishment or modification, depending upon the specifics of the case.
**For Additional Information** - No Link Provided

7. When there is an existing support order between the parents of a child and the child's residence changes from one parent to the other, does your state require that the new custodial parent obtain legal custody before child support is addressed? Please describe.

No. Counties will join the parties, add a payee, and modify the order upon a significant and continuous change in circumstances, including a change in the child's residence.
**For Additional Information** - No Link Provided

# 7. Income Withholding

1. What are specific sources of income not subject to withholding?

All income types can be withheld except for means-tested income.
**For Additional Information** - No Link Provided

2. Does your state law adopt the federal Consumer Credit Protection Act (CCPA) income withholding limits? Please provide the statutory citation.

Yes. 13-54-104 C.R.S.
**For Additional Information** - No Link Provided

2.1 Does your state have policy or procedures allowing the agency to use lower limits than the CCPA?

Yes. For cases administered by Colorado Division of Child Support Services, the limits are 50% if the arrears are less than 12 weeks old and 55% if the arrears are greater than 12 weeks. For lump sum withholding, the limit is 50% of disposable income, up to the arrears balance.

3. Does your state charge any fees to the noncustodial parent that the employer must withhold and remit to the state? If yes, please explain.

No.

4. Is an employer required to begin withholding after the date of service, receipt, or mailing of an income withholding order?

Mailing.

5. What are your state's sanctions for employers for not implementing income withholding?

If an employer fails to abide by the terms in the Notice of Income Assignment, the employer may be held in contempt of court.

6. What are the penalties to an employer for failure to remit payments withheld?

The employer may be held liable for an amount up to the accumulated amount the employer should have withheld from the obligor's income.

7. Does your state allow other jurisdictions to send income withholding orders for unemployment insurance (UI) benefits directly to your state's UI agency? If yes, please explain your process and include any additional required documents.

No.

7.1 If no, what is your state's process to aid the other jurisdictions in withholding UI benefits? Please describe and include the required documents.

In order to process a withholding from UI benefits, Colorado must receive a full UIFSA case that includes a Transmittal #1, a Letter of Transmittal Requesting Registration, and a certified copy of the order if it was not issued in Colorado.

8. Does your state allow other jurisdictions to send income withholding orders directly to a noncustodial parent's financial institution in your state? If yes, please explain your process and include any additional required documents.

No.

8.1 If no, what is your state's process to aid the other jurisdiction in collecting from a financial institution? Please describe and include the required documents.

Colorado participates in Automated Administrative Enforcement in Interstate Cases (AEI) to enter into agreements with other states for the purpose of issuing a Lien and Levy to a Colorado FI on the other states behalf.

9. How does a noncustodial parent contest an income withholding in your state?

The obligor may file with the court a written objection to the activation of an income assignment no later than 14 days after actual notice. The court will deny the objection without a hearing if the objection is not based on a mistake of fact such as the identity of the obligor or in the amount of support.

10. When your state is enforcing an order and receives payment through income withholding that is not enough to cover the full amount ordered, how does your state apply the payment to the types of support (for example, current, arrears, medical, spousal support, other)? Please describe and provide the statutory citations, if appropriate.

Health insurance premiums are deducted to calculate disposable income promptly - No specific time frame is provided. Cash medical support prioritization is secondary to current support. Insurance premiums for the children of the order must be deducted along with the federally required deductions to calculate disposable income.
13-54-104 C.R.S
**For Additional Information** - No Link Provided

11. Do you send IWOs to employers for independent contractors? If yes, do you have a special process for determining the amount to withhold?

Yes. There is no special process for determining the amount to withhold.

## 8. Distribution

1. Does your state pass through collections (and disregard collections for Temporary Assistance for Needy Families (TANF) eligibility purposes) in current assistance cases? If yes, provide the amount and explain.

Yes we pass through the entire current support due to TANF families.

2. Does your state participate in the pass-through in former assistance cases? If yes, provide the date and explain.

No

3. In former assistance cases, are federal income tax refund offset payments applied to families first (DRA distribution) or state arrears first (PRWORA distribution)?

PRWORA Distribution

4. How does your state distribute payments when the noncustodial parent has arrears due to your state and another state?

We distribute to our state arrears first and then to another state

4.1. If there are no arrears due to your state, how does your state distribute payments when the noncustodial parent has arrears due to multiple states?

We distribute first in first out
**For Additional Information** - No Link Provided

# 9. Enforcement

1. What data matches (for example, financial institution, state lottery) and enforcement remedies are available through Automated Administrative Enforcement in Interstate Cases (AEI) in your state? (See AT-08-06: Implementing Section 466(a)(14) of the Social Security Act, High-Volume, Automated Administrative Enforcement in Interstate Cases.)

MSFIDM & FIDM

2. What criteria must be met, and in addition to Transmittal #3, what documentation does your state require to proceed with an AEI request?

Completed Transmittal #1, copy of the court order, payment record, and all FI information (FI name, TIN #, and joint account addresses, if appropriate).

3. What are your state's criteria for reporting a noncustodial parent's child support information to credit bureaus?

Arrears greater than $500 and greater than 60 days past due.
**For Additional Information** - No Link Provided

4. To which credit bureaus does your state report a noncustodial parent's child support information?

Trans Union, Experian and Equifax

5. Is the method for credit bureau reporting judicial, administrative, or both?

Administrative

6. Can a noncustodial parent who no longer has a past-due account have the report removed from the credit bureau? If so, what must the noncustodial parent do?"

No.

7. When your state is the responding state, does it submit past-due cases to OCSS for federal administrative offset? If yes, what is the minimum required past-due amount?

No.

8. When your state is the initiating state, does it submit past-due cases to OCSS for federal administrative offset? If yes, what is the minimum required past-due amount?

Yes $150 for TANF cases; $500 for non-TANF cases

9. When your state is the responding state, does it submit past-due cases to OCSS for insurance match? If yes, what is the minimum required past-due amount?

No

10. When your state is the initiating state, does it submit past-due cases to OCSS for insurance match? If yes, what is the minimum required past-due amount?

No

11. When your state is the responding state, does it submit past-due cases to OCSS for MSFIDM? If yes, what is the minimum required past-due amount?

No

12. When your state is the initiating state, does it submit past-due cases to OCSS for MSFIDM? If yes, what is the minimum past-due amount?

Yes $25.00

13. When your state is the responding state, does it submit past-due cases to OCSS for passport denial?

No

14. Are the financial institution attachment procedures in your state judicial, administrative, or both?

Administrative.

15. Are there specific account types exempt from the administrative financial institution attachment process in your state? If yes, which account types are exempt?

Yes. Custodial accounts created pursuant to the "Colorado Uniform Transfers to Minors Act", article 50 of title 11, C.R.S., funds in escrow and trust accounts of monies held in trust for a third party, held by such institution or entities on behalf of any obligor parent who is subject to a child support lien, subject to any right of setoff the financial institution may have against such assets.
**For Additional Information** - No Link Provided

16. Is the financial institution attachment process in your state centralized and/or automated?

Centralized and automated. County CSS offices have input as to whether or not a lien is issued.

17. What are the criteria to attach an account in a financial institution in your state?

At least $1,000 in arrears and no payments received over the last three (3) months.

18. Does your state's law require financial institutions doing business in your state to accept enforcement actions directly from other states? If yes, provide the statutory citation. Please explain.

No
**For Additional Information** - No Link Provided

19. If there are no statutory criteria required to attach an account, describe the process for requesting a financial institution attachment from another child support agency (for example, a Transmittal #3) and list additional documentation required.

Completed Transmittal #1, copy of the court order, payment record, and all FI information (FI name, TIN #, and joint account addresses, if appropriate).

20. Does your state's income withholding definition include amounts in financial institutions?

No
**For Additional Information** - No Link Provided

21. Does your state require sending a notice of intent to the noncustodial parent when attaching an account in a financial institution? Who notifies the noncustodial parent - the state, the financial institution, or both?

No, Colorado does not send an Intent to Freeze and Seize Notice. However, the State sends a copy of the Lien and Levy to the obligor, along with a notice advising of any appeal rights and advising of the reasons for which an exemption/exception may be requested. A notice is also sent to all joint account holders advising them of their appeal rights.
**For Additional Information** - No Link Provided

22. How long does the financial institution have to hold funds before sending the noncustodial parent's assets to your child support agency?

The financial institution is advised to remit funds on the 31st day (31 days from the date on the financial institution Notice of Lien and Levy).
**For Additional Information** - No Link Provided

23. Does your state law or policy require the financial institution and/or state to hold the attached assets during the challenge or appeal time frame? If yes, provide the statutory citation and time frames.

Yes. The financial institution is instructed to hold the asset for thirty days from the date of the lien (or longer if there is an ongoing appeal).
**For Additional Information** - No Link Provided

24. What amount or percentage of the noncustodial parent's financial assets are eligible for attachment? Is this different for joint accounts? Please explain.

100% of the assets are frozen. The NCP can request an exception or exemption and provide documentation after 100% of the asset is frozen. The joint account holder has the right to appeal and provide documentation showing ownership of funds.
**For Additional Information** - No Link Provided

25. What are the criteria for an obligor or joint account holder to contest a financial institution attachment?

What are the criteria for a noncustodial parent and/or joint account holder to contest a financial institution attachment? Parties have twenty days from the date of the notice to challenge an action. An obligor can request an exemption based on source of account funds (SSI,SSA Survivor, VA disability, public assistance or child support);

type of account (trust, custodial/UTMA, commercial); mistaken identity; and income (50% of monthly income can be retained). An obligor can also request an exception for terminal illness. Joint account holders can request a marital exemption to return 50% of the seized funds or based on ownership of deposits up to 100%. 9CCR2504-1, 6.906.4 & 6.906.5

26. Does your state have procedures to liquidate non-liquid assets (for example, stocks, bonds, etc.)? If yes, provide the statutory citation and the procedures to follow.

No
**For Additional Information** - No Link Provided

27. What are your state's criteria for driver's license revocation/suspension for nonpayment of support?

Colorado suspends driver's licenses for nonpayment of support. Colorado does not revoke licenses. License suspension is triggered by non-payment of support. The county caseworker has the ability to work with non-custodial parents.

28. What are your state's criteria for driver's license restoration/reinstatement, including hardship exemptions?

Payment criteria met or payment in full. County caseworkers have the ability to take the circumstances of the case into consideration throughout the driver's license suspension process. The Division of Child Support Services issues a Notice of Compliance to the Department of Revenue, Division of Motor Vehicles (DMV), which allows the obligor to reinstate his/her driving privilege. The obligor must pay a reinstatement fee to the Division of Motor Vehicles.

29. Does your state allow temporary or conditional driver's licenses? If yes, what are the criteria?

Yes Compliance with the Department of Revenue, Division of Motor Vehicles temporary license policies and procedures.

30. What are your state's criteria for professional license revocation/suspension for nonpayment of support? Specify the professional license types.

Colorado suspends professional/occupational licenses for nonpayment of support. Colorado does not revoke licenses. License suspension is triggered by non-payment of support. The county caseworker has the ability to work with non-custodial parents.

31. What are your state's criteria for professional license restoration/reinstatement, including hardship exemptions?

Payment criteria met or payment in full. County caseworkers have the ability to take the circumstances of the case into consideration throughout the professional/occupational license suspension process. The Division of Child Support Services issues a Notice of Compliance to the Department of Regulatory Agencies (DORA), which allows the obligor to reinstate his/her Professional/Occupational License.

32. Does your state allow temporary or conditional professional licenses? If yes, what are the criteria?

No

33. What are your state's criteria for recreational license revocation/suspension for nonpayment of support? Specify the recreational license types.

Colorado suspends recreational licenses for nonpayment of support. Colorado does not revoke licenses. License suspension is triggered by non-payment of support. The county caseworker has the ability to work with non-custodial parents.

34. What are your state's criteria for recreational license restoration/reinstatement, including hardship exemptions?

Payment criteria met or payment in full. County caseworkers have the ability to take the circumstances of the case into consideration throughout the recreational license suspension process. The Division of Child Support Services issues a Notice of Compliance to the Colorado Parks and Wildlife (CPW), which allows the obligor to reinstate his/her recreational license privileges. The obligor must reinstate with the CPW.

35. Does your state allow temporary or conditional recreational licenses? If yes, what are the criteria?

no

36. What are the criteria for initiating/filing a lien in your state?

The existence of an arrears balance. 14-10-122 C.R.S

37. Is the lien process in your state primarily judicial, administrative, or both? Please describe.

Both

38. Does your state enforce property seizure and sale? If yes, is this process primarily judicial, administrative, or both? Please describe.

Yes Judicial. This remedy is available but rarely used by county offices.

39. Does your state have state income tax refund offset as an enforcement remedy? If yes, describe whether the process for this remedy is primarily judicial, administrative, or a combination.

Administrative.

40. Does your state intercept lottery or other types of gaming/gambling winnings in your state? If so, what kind of winnings are included?

Yes Lottery, Gaming and Unclaimed Property Offset

40.1 If yes, is this enforcement judicial, administrative, or both?

Administrative.

41. What other administrative enforcement procedures are available in your state that are not otherwise described in the IRG?

State Vendor Offset and Department of Corrections Inmate Lien

42. What other judicial enforcement procedures are available in your state that are not otherwise described in the IRG?

Contempt of court, Rule 69 hearing (judicial hearing held to solicit testimony regarding employment/assets), writs of garnishment.

## 10. Modification And Review/Adjustment

1. How frequently does your state conduct order reviews in IV-D cases (for example, every year or every three years)? (See 45 CFR 303.8.)

By request of a significant and continuous change from the custodial party, non-custodial party or the CSS office. In cases containing an active assignment of rights, the review shall be done at least once every 36 months. We also initiate a review of any order when a parent is incarcerated for 180 days or more, unless the current order is a minimum order of $10.
**For Additional Information** - No Link Provided

2. What is your state's modification procedure? Briefly describe.

We initiate a review within 5 days of a written request of the custodial party, non-custodial parent or CSS office, and automatically in TANF cases every three years. Review notices and income and expense affidavits are forwarded to the parties and financial information is gathered. A guideline calculation will be completed on the 30th day following the notice. If there is change in the monthly support obligation of 10% or more, the order is modified. The modifications can be judicial or administrative and the parties have a 15 day period to challenge the results due to a mathematical or factual error.
**For Additional Information** - No Link Provided

3. What are the criteria for modification under your state's guidelines (for example, a change that is more than $50 or 20% upward or downward from the current amount ordered)?

If the results of the monthly support calculation is a change of 10% or more, a post review notice is sent out with the modified order. The parties have a right to request a judicial determination of the findings.
**For Additional Information** - No Link Provided

4. Which of the following criteria for demonstrating a change in circumstances apply for modifying an order?

A change of circumstance is qualifying if it is continuous, not temporary, and if the monthly support obligation change is 10% or more.
**For Additional Information** - No Link Provided

4.1. The earnings of the noncustodial parent have substantially increased or decreased.

Yes

4.2. The earnings of the custodial parent have substantially increased or decreased.

Yes

4.3. The needs of a party or the child(ren) have substantially increased or decreased.

Yes
**For Additional Information** - No Link Provided

4.4. The cost of living has changed.

No

4.5. The child(ren) has extraordinary medical expenses not covered by insurance.

Yes The change can also be based on a change in the number of overnights with each parent, a change to income such as spousal maintenance or another child support order, health insurance premium costs, or other extraordinary adjustments, such as expenses associated with visitation or private school.

4.6. There has been a substantial change in childcare expenses.

Yes The change can also be based on a change in the number of overnights with each parent, a change to income such as spousal maintenance or another child support order, health insurance premium costs, or other extraordinary adjustments, such as expenses associated with visitation or private school.

4.7. What other criteria does your state use for demonstrating a change in circumstances for modifying an order?

The change can also be based on a continuous change in the number of overnights with each parent, a change to income such as spousal maintenance or another child support order, health insurance premium costs, or other extraordinary adjustments, such as expenses associated with visitation or private school. The change has to result in at least a 10% difference.
**For Additional Information** - No Link Provided

5. Does your state have a cost of living adjustment (COLAs) for orders? If yes, what index does your state use? (See 45 CFR 303.8(b)(1)(ii).)

No N/A

6. After learning that a parent who owes support will be incarcerated for more than 180 calendar days, does your state elect to initiate a review of an order without the need for a specific request, i.e., automatically? (See 45 CFR 303.8(b)(2).)

Yes
**For Additional Information** - No Link Provided

7. If a child's family SSD benefit paid directly to the CP is less than the child support, does the above situation qualify as a change of circumstance for a review and adjustment?

If the current order does not account for the child's receipt of this benefit, it may be reason for a modification to properly offset the obligation.

8. Does your procedure require a request from a party to review an order in an IV-D Non-Public Assistance case? If yes, must the party sign the request?

Yes. The request must be signed by the party and be accompanied by financial information.

9. Can the IV-D agency initiate a review in an IV-D Non-Public Assistance case without a request from the party (for example, based on data from automated sources that the parent is receiving unemployment or SSI)?

Yes, the IV-D agency can initiate a review based on the IV-D agency's request.

## 11. Lump Sum Payments

1. How does your state attach different types of lump sum payments? For example, does your state use the OMB-approved income withholding order for employer-issued bonuses, a lien, and levy notice for workers' compensation (if workers' compensation is considered a lump sum payment in your state), etc.?

An OMB-approved income withholding order for lump sum withholding is provided, if requested, to employers who report lump sum payments.

## 12. Cost Recovery And Fees

1. Does your state elect to recover costs in excess of any fees collected to cover administrative costs in your child support state plan? (See section 454(6) of the Social Security Act and 45 CFR 302.33(d).) If yes, does your state collect excess actual or standardized costs on a case-by-case basis? Please describe.

Yes, actual costs.

1.1. If yes, does your state recover costs from the custodial parent or the noncustodial parent? (Note: No costs can be assessed against a foreign custodial parent applying through a Central Authority in a Hague Convention country, a foreign reciprocating country, or a foreign country with state-level reciprocity.)

Both. Refund intercept fees of $35 (IRS offset only), the annual $35.00 DRA fee, and $53.00 CSLN fees for personal injury and workers compensation intercepts are recovered from the obligee. Genetic testing and service of process costs are recovered from the obligor.

2. Does your state recover costs on behalf of an initiating state that has elected to do cost recovery? If yes, describe.

Yes, Colorado will recover genetic testing costs upon the establishment of paternity from the obligor and service of process costs in some cases.

3. How does your state impose and collect the mandatory $35 annual fee (after collecting the first $550)? This fee is applicable in IV-D cases in which individuals who never received IV-A assistance are receiving IV-D services. (See 45 CFR 302.33(e).) See options below.

Colorado imposes the $35 fee on the obligee and withholds it from future disbursements, once the $550 threshold has been reached.

3.1. Is it retained by the state from support collected?

Yes.

3.2. Is it paid by the individual applying for child support services?

No.

3.3. Is it recovered from the noncustodial parent?

No.

3.4. Is it paid by the state out of its state funds?

No.

## 13. Insurance Match

1. Does your state have legislation requiring insurance companies to work with child support agencies to identify claimants who owe past-due child support? Describe the requirements and provide the statutory citation. How does your state allocate payments when there is more than one claim against the noncustodial parent's income? Should the payment be divided equally or pro-rated among the cases? (See 45 CFR 303.100(a)(5).)

Yes Colorado has the authority to issue administrative lien and attachments on insurance claim payments, awards, and settlements. Colorado Revised Statutes 26-13-122.7 Lien by Operation of Law statute as required in PRWORA. Colorado Revised Statutes 14-10-122(1.5)(a).
**For Additional Information** - No Link Provided

2. What criteria must a noncustodial parent meet to be eligible for your state' s participation in the federal insurance match program?

Owe greater than $500 in arrears. Personal injury, Wrongful Death, Workers' Compensation, Life Insurance.

3. What process does your state use to intercept insurance payments?

The Notice of Administrative Lien and Attachment
**For Additional Information** - No Link Provided

4. How does another state initiate and intercept collections from your state' s workers' compensation agency?

The Child Support Lien Network (CSLN) and The Federal Office of Child Support Enforcement (OCSE).
**For Additional Information** - No Link Provided

5. Does your state participate in the Child Support Lien Network or CSLN (which provides insurance match services)?

Yes

# 14. Family Violence

# 15. CSENet

1. When your state is the initiating state, does it send a Child Support Enforcement Network (CSENet) case closure transaction to let the responding state know your state has closed its case (including the reason for closure) and/or the responding state's intergovernmental services are no longer needed? (MSC P GSC15; 45 CFR 303.7(c)(11).)

Yes

2. When your state is the responding state, does it send a CSENet case closure transaction to notify the initiating state that its case is closed based on one of the following reasons: (MSC P GSC16)? Initiating state failure to take an action essential for the next steps? (45 CFR 303.11(b)(17).) The initiating state requested the responding state to close the case? (45 CFR 303.7(d)(10).)

Yes

3. When your state is the initiating state, does it send a CSENet case closure transaction to notify the responding state that it must stop any income withholding orders or notices and close the intergovernmental case? (MSC P GSC17; 45 CFR 303.7(c)(12).)

Yes

4. When your state is the responding state, does it send a CSENet case closure transaction to notify the initiating state that, per its request, the case is closed, and your state has stopped its income withholding order? (MSC P GSC18; 45 CFR 303.7(d)(9).)

Yes

5. Does your state send CSENet transactions to request interest information? (MSC R GRINT)

No

6. Does your state send CSENet transactions to provide another state with interest and arrears information? (MSC P GSTAI)

No

## 16. Copies Of Orders And Payment Records

1. What are the procedures and associated costs for obtaining a certified copy of a court order?

Court orders and payment records are requested through the Colorado Central Registry. There is no cost for copies of court orders and payment records. Please submit a Transmittal 3 and Confidential Information Form (CIF). Colorado requires a CIF to process these requests.
**For Additional Information** - No Link Provided

2. What are the procedures and associated costs for obtaining a certified payment record?

If Colorado does not have an open IV-D case, some of the courts do charge for certified orders. There is no charge for a payment record.
**For Additional Information** - No Link Provided

## 17. Uniform Interstate Family Support Act (UIFSA)

1. What is the statutory citation for your state's enactment of UIFSA?

Colorado Revised Statutes: 14-5-101 through 14-5-903
**For Additional Information** - No Link Provided

2. How does your state define the tribunal (See UIFSA 103)?

(a) The court and the administrative agency are the tribunals of this state. (b) The county and state child support services agencies are the support enforcement agencies of this state.
**For Additional Information** - No Link Provided

3. How many copies or sets of documents does your state need for an intergovernmental case referral that is not sent electronically?

One. If sending by EDE, please also only upload one copy

4. Does your state require initiating states to send intergovernmental forms in a one-sided format (when sending paper copies)?

No

## 18. International - Reciprocity

1. With which foreign countries or other jurisdictions (such as Quebec) does your state have state-level reciprocity for child support? (Do not include federal foreign reciprocating or Hague Convention countries.)

The following provinces in Canada: Alberta, British Columbia, New Brunswick, Ontario, Saskatchewan and the Yukon Territory,

2. Does your state exercise its option for enforcement of spousal-only orders for a foreign reciprocating country, a Hague Convention country, or a foreign country with which your state has state-level reciprocity? (See section 454(32)(B) of the Social Security Act.)

No

3. Does your state agency accept direct applications for services from individuals residing outside the United States (See UIFSA 307 - Alternative A), or does your state's law allow discretion in accepting these applications (See UIFSA 307 - Alternative B)?

Option A - We will accept direct applications for services from individuals residing outside the United States

## 19. International Information For Hague Convention Countries

1. When a Hague Convention country seeks registration of a Convention support order in your state, does your state allow the country to send an abstract (or summary) of the order on the Hague Abstract of a Decision form in lieu of the complete text? (See UIFSA 706(b) (1).)

The state will accept an abstract or summary of the order on the appropriate form.
**For Additional Information** - No Link Provided

2. Does your state send and receive pleadings and documents electronically in international cases? If yes, specify the types of pleadings and documents your state can send and receive electronically.

No

3. What methods of personal service does your state use?

Personal service may be accomplished by sheriff or similar governmental official, by private process server, or by certified mail (for administrative process actions only.)

4. When establishing a child support order, what can be included as add-ons to the child support guideline amount? Please provide the relevant statutory or case law citation. (See also question 1 under Support Details.)

Authorized adjustments to the child support guideline include payment on other child support orders, supporting other non-joint children without an order, payment/receipt of spousal maintenance (alimony) pursuant to an order, and certain court-ordered post-secondary education payments. Parents can also be credited payments of work or education-related child care costs, premium costs to provide medical insurance for the children on the order, extraordinary medical expenses of the children, and certain qualified expenses agreed to or court-ordered, such as visitation and special education costs. The child support owed can also be adjusted for certain social security payments received by the child. Please see: Colorado Revised Statutes: Section 14-10-115
**For Additional Information** - No Link Provided

5. Does your state encourage amicable solutions between parents to promote voluntary payment of support, such as the use of mediation, conciliation, or similar consent processes? If yes, describe.

Yes, but they must be approved by a court. The court and child support agencies must use the Colorado child support guidelines in calculating child support obligations. Only a court may use discretion and deviate from that amount if appropriate.

6. What circumstances will cause your state to end child support before the normal duration?

Please see Duration of Support section
**For Additional Information** - No Link Provided

## 20. International Payments

1. How does your state disburse child support payments to foreign reciprocating and Hague Convention countries when your state is the responding state in a case?

Most payments to other countries are sent by check. Some payments are sent electronically to a bank account maintained by the other country in the U.S. and we also send some SWIFT wire transfers. We have three options for each foreign payment agency. 1. The payment is made payable to the agency and sent to the agency's address. 2. The payment is made payable to the custodial party and sent to the agency's address. 3. The payment is made payable to the custodial party and sent to the custodial party's address. We are also sending funds through the OCSE CAP program.

2. What actions does your state take to reduce the costs and fees associated with international payment processing?

None

3. Does your state accept electronic payments from foreign reciprocating or Hague Convention countries in international cases? If so, provide payment instructions.

YES. Send via SWIFT Wire Transfer to the International Bank Account IBAN 120413254422

4. Does your state send international payments to participating foreign authorities via OCSS' Central Authority Payment Service? If yes, please list which foreign authorities.

Yes, Germany, Czech Republic, Portugal, Slovakia, Sweden, Australia, Province of Ontario, Hungary, Austria, Latvia, Scotland, England and Wales, Cyprus, and Switzerland

# 21. Tribal Non IV-D

1. Has your state established cooperative arrangements with any Indian tribes or tribal organizations that don't have a tribal IV-D program?

No

1.1. If yes, list the tribes and identify services provided, if less than full services.

No
**For Additional Information** - No Link Provided

2. Does your state have any IV-D attorneys licensed to practice in the courts of Indian tribes or tribal organizations that don't have tribal IV-D programs?

We do not have any IV-D attorneys that are licensed to practice in the tribal courts. The Mountain Utes and the Southern Utes do not have tribal IV-D programs.

## 22. Employer Services

1. Does your state require electronic payments? If yes, provide your state statutory citation.

No

2. What is your state's SDU bank name?

The SDU bank is US Bank.

3. What is your state's SDU vendor name?

Systems and Methods, Inc. (SMI) - collections and disbursements

4. What is your state's web-based payment service for employers?

Web-based payment service: ACH debit (for employers without charge) Phone: 800-696-1468 or Phone: 303-297-2949 Website: https://co.smartchildsupport.com

5. What is your state's web-based payment service for noncustodial parents?

Website: https://co.smartchildsupport.com Phone: 800-374-6558, 303-299-9123

6. Does your state accept credit card payments? If yes, who does your state accept credit card payments from?

Credit/debit card payments from Obligors and Employers

7. How does your state accept card payments?

Value Payment Systems

8. Are there fees associated with the credit card payments?

2.95% of the total payment amount

9. Does your state have other payment options?

Colorado accepts cash payments from obligors via PayNearMe and Money Gram.

10. How many days following the first pay period after service, receipt, or mailing of an income withholding order is an employer required to begin withholding?

First pay period that begins within 14 business days from the date of the withholding notice

11. When must an employer remit amounts withheld from an employee's pay?

7 business days

12. When calculating disposable income for child support purposes, what are the mandatory deductions from gross income required by state law, such as union dues or medical insurance premiums?

Federal, state, city taxes, FICA and health insurance premiums

13. What is your state's priority for withholdings?

Current support and current support when combined with alimony, medical support, arrears (child support, alimony and medical support), alimony only

14. Does your state law adopt the federal Consumer Credit Protection Act (CCPA) income withholding limits? Provide the statutory citation.

Colorado law (C.R.S.§13-54-104) exactly matches federal law (15 USC 1673); 50% to 65% of disposable income depending upon age of arrears and whether the employee is supporting other dependents. For cases administered by Colorado Division of Child Support Services, the limits are 50% if the arrears are less than 12 weeks old and 55% if the arrears are greater than 12 weeks.

15. What are the withholding limits for non-employees?

50% if the arrears are less than 12 weeks old and 55% if the arrears are greater than 12 weeks

16. How does your state allocate payments when there is more than one claim against the noncustodial parent's income? Should the payment be divided equally, or prorated among the cases? (See 45 CFR 303.100(a)(5).)

Prorate

17. When does your state require employers to send notice of an employee's termination?

10 days after termination

18. How long should an employer retain the order after the employee's termination?

Keep on file until notified by child support agency

19. What is the maximum fee for the administrative cost that an employer may charge for processing income withholding orders? (45 CFR 303.100 (e)(iii))

$5 per month (from remainder of employee's income after deductions and withholding)

20. Provide your state's statutory citation.

C.R.S.§§ 13-54-104, 14-10-115, 14-14-102 and 14-14-111.5

21. Does your state have a definition of a lump sum or bonus? Provide the statutory citation. (Note: States may define "lump sum" more broadly than only employer-related lump sums.)

Yes

22. Does your state law require employers to report lump sum payments? If yes, provide the statutory citation or rule.

Yes 14-14-111.5,(4)(k.5) Colorado Revised Statutes.

23. Does your state have a threshold amount for a lump sum to be reported?

None

24. Does your state citation or rule provide how long the employer must hold the lump sum?

Normal remitting rules apply - Colorado requires that payments be remitted within 7 days from the date of withholding

25. Is the Income Withholding Order (IWO) used for lump sums?

Yes, upon employer request

26. How does your state attach different types of lump sum payments? For example, does your state use the OMB-approved IWO for employer- issued bonuses, a lien, and

levy notice for workers' compensation (if workers' compensation is considered a lump sum payment in your state), etc.?

Not for employer lump sums. Different procedures are used for other types of lump sums (insurance pay outs, etc.)

27. If the lump sum is earnings as defined by the CCPA, does your state limit the withholding to a greater degree than the CCPA limitation?

No, However, in lump sum payment situations, as a matter of policy, Colorado Division of Child Support Enforcement defaults to the lowest of the maximum limits, 50%, to make the process as easy as possible for employers.

28. If the lump sum is not earnings as defined by the CCPA, does your state limit the withholding/attachment?

Colorado law provides a very broad and comprehensive description of earnings (§13-54-104, C.R.S. and §14-14-102, C.R.S.) so, there is no situation where the lump sum payment paid by an employer would not be considered "earnings" and therefore, the CCPA income withholding limits as reflected in Colorado law always would apply.

29. What is your state's Medical Support Statute?

14-10-115(10) C.R.S., 26-13-121.5 C.R.S.

30. What is your state's Reasonable Cost Definition?

"Where the application of the premium payment on the guidelines and schedule of basic child support obligations results in a child support order of fifty dollars or less, or the premium payment is five percent or more of the parent's gross income, the court or delegate child support enforcement unit may elect not to require the parent to include the child or children on an existing policy or to purchase insurance. The parent is, however, required to provide insurance when it becomes available at a reasonable cost." 14-10-115(10)(g) C.R.S.

31. What is the Health Coverage Expense?

the employee's cost of health coverage for the employee + child(ren), less the cost of employee-only coverage, whether the employee is already enrolled or not

32. What is the Income Withholding Limits for Support?

50-65% 13-54-104(3) C.R.S

33. What is the Priority of Withholding?

In Colorado, monthly health insurance premiums are paid first, monthly current child support (and maintenance when combined with child support) is paid second, monthly specific medical support amounts ordered by the court (not health insurance premiums) are paid third.

34. What is the priority of health coverage if the income withholding limit is less than the total costs of ordered coverage?

The NMSN instructs employers not to enroll the child in coverage if the enrollment exceed

35. According to 45 CFR §303.32(a), what are your state options?

Colorado does not use the NMSN to enforce the provision of health care coverage against custodial parents.

36. What does your state do if an employee contests 45 CFR §303.32(c)(5)?

An obligor has 10 days from the date of the notice to file a written objection with the County Delegate CSS Unit. Pursuant to 26-13-121.5(3)(a) C.R.S., the only grounds for objection are a mistake in the identity and the employee is not the obligor or if there is no court order to provide health insurance. Pursuant to 26-13-121.5(3)(b), the County Delegate CSS Unit has 10 days to resolve the mistake of fact and notify the obligor in writing, by first class mail, of its decision. If the obligor does not agree with the decision of the County Delegate CSS Unit, they may file a written objection to the court pursuant to 26-13-121.5(3)(c).

37. What is the reporting timeframe (non-magnetic media only)?

Within 20 days of hire date

38. What are the required data elements?

New Hire Information: Employee/Service Provider name, Employee/Service Provider address, Service Provider SSN, Employee/Service Provider Frist day of work, Employee/Service Provider DOB (optional), Employer/Service Recipient Name, Employer/Service Recipient payroll address, Employer/Service Recipient FEIN, Employee or Service Provider Indicator;

39. What are the methods of transmission?

Online (state portal), Mail (magnetic tape/cartridge tape/diskette), Fax

40. Does your state require independent contractor reporting?

Yes, service recipients are required to report service providers under the same requirements as employers. Service providers are independent contractors Service recipients are businesses that use service providers to perform services



ADMINISTRATION FOR CHILDREN & FAMILIES

**Contact Us**

M-F 8:00 A.M. - 5:00 P.M. ET
1-800-258-2736
csportal@acf.hhs.gov