**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-00342-NYW-CYC

GERALD PAUL HERSHFELDT,

Plaintiff,

v.

CARLEEN JOHNSTON, et al.,

Defendants.

---

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MICHELLE BARNES'S MOTION TO DISMISS SECOND AMENDED COMPLAINT [ECF 101, FILED OCTOBER 2, 2026]

---

## INTRODUCTION

Plaintiff Gerald Paul Hershfeldt responds to Defendant Michelle Barnes's Motion to Dismiss Second Amended Complaint [ECF 101, filed Oct. 2, 2026] ("Motion"). Director Barnes is sued in her official capacity only. ECF 97 ¶ 18. The only count that names her is Count VI, the Fair Credit Reporting Act claim under 15 U.S.C. § 1681s-2(b). ECF 97 at 34 (Count VI heading); see *id.*, headings to Counts I-V and VII (no reference to Director Barnes). As to her, the Second Amended Complaint ("SAC") seeks prospective relief only: correction or deletion of the Colorado child support tradelines described in Count VI and the corresponding declaration. *Id.* ¶¶ 18, 121, 123. Plaintiff does not seek damages from Director Barnes, and does not seek, as to her, an injunction against any garnishment, tax intercept, or license suspension. Cf. *id.* ¶ 122. Those acts are the subject of Counts I-V, which do not name her.

The Motion's premise is that this is "simply [Plaintiff's] newest attempt to contest his Colorado child support order." ECF 101 at 2. The SAC pleads otherwise: "Plaintiff does not ask this Court to declare any state-court order void ab initio or overturn any state-court judgment." ECF 97 ¶ 121; see also *id.* ¶¶ 3, 24. As to the Colorado tradeline, Count VI identifies specific reporting features that conflict on their face: an account "Date Opened" of June 9, 2015 beside a "Date of First Delinquency" of June 30, 2025, and a review window of "44" months against a reported 2015 origin. *Id.* ¶ 109(a), (c), (d). The Motion does not address those allegations.

Director Barnes's resignation was announced on October 6, 2026, after the Motion was filed. See Office of the Governor, News Release (Oct. 6, 2026), https://governorsoffice.colorado.gov/governor/news/governor-polis-announces-human-services-executive-director-michelle-barness-departure-state. The announcement states that Minna Castillo, the Department's Deputy Executive Director for Community Partnerships, is leading the Department on an interim basis. Because this claim runs against the office and not the individual, it does not abate when the officer resigns; the successor is automatically substituted, with or without a court order. Fed. R. Civ. P. 25(d). This Response uses "Director Barnes" as the Motion does, to mean the holder of the office.

## STANDARD OF REVIEW

Plaintiff, as the party invoking jurisdiction, bears the burden of establishing it. The Motion's standing and Eleventh Amendment arguments rest on what the SAC does and does not allege, ECF 101 at 9, 11-12, and are therefore a facial attack, in which the

Court accepts the SAC's allegations as true. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995); *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001). At the pleading stage "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To the extent the Court treats any argument as a factual attack, or looks beyond the SAC to the State's role in the program the SAC describes, the Court may consider affidavits and documents without converting the motion. *Rodriguez-Aguirre*, 264 F.3d at 1203. Plaintiff submits his Declaration and two exhibits for that limited purpose: (1) the Colorado profile of the Intergovernmental Reference Guide ("IRG"), published through the federal Office of Child Support Enforcement portal, displaying "Updated On: 08/25/2026" and "Certified On: 09/29/2026" (Opp. Ex. 1); and (2) the Colorado Department of Human Services' September 10, 2026 response to Plaintiff's Colorado Open Records Act request 2026.288 (Opp. Ex. 2). Decl. ¶¶ 2-3. Plaintiff does not dispute that the state-court documents in the Motion's Exhibit A say what they say; judicial notice of them shows their contents, not the truth of matters asserted. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). The Court construes a pro se complaint liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## ARGUMENT

### A. Neither Rooker-Feldman nor the Domestic-Relations Exception Reaches Count VI as Pleaded Against Director Barnes.

1. The injury Count VI alleges is caused by reporting, not by a state-court judgment. Rooker-Feldman is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district

court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The question is whether the state-court judgment "caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress," *Tal*, 453 F.3d at 1256 (as quoted in the Motion, ECF 101 at 4), that is, the source of the injury. *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1237 (10th Cir. 2006); *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012). The injury in Count VI is credit-file harm, ECF 97 ¶ 114, produced by a furnisher's certification that disputed information was accurate after a consumer reporting agency transmitted a dispute. *Id.* ¶¶ 110-112. The Colorado event Count VI pleads is April 7, 2025. *Id.* ¶ 111. That predates every state-court filing the Motion describes, so no state-court ruling can have caused it. The Motion's response is that the harm "is actually and proximately caused by the child support order itself, not Director Barnes." ECF 101 at 6. That argument assumes the reporting follows automatically from the order. The SAC pleads that the reported dates, delinquency date and review window are reporting features the furnisher certified as accurate after the dispute. ECF 97 ¶¶ 109, 111.

2. Count VI is an independent claim, and the standard that governs it excludes the inquiry Rooker-Feldman forbids. Where a plaintiff presents "some independent claim," even one that denies a legal conclusion a state court reached, Rooker-Feldman does not apply. *Exxon*, 544 U.S. at 293; *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). The Motion argues that proving inaccuracy "requires him to establish that the state order itself is invalid." ECF 101 at 14 (citing *Ward v. Nat'l Credit Sys., Inc.*, 182 F.4th

918, 929 (10th Cir. 2026)). Ward holds the opposite as to the kind of inaccuracy that is actionable. Reported information is actionably inaccurate "only if that information is objectively and readily verifiable," and "a dispute that implicates unsettled questions of law and requires credibility determinations" does not qualify. Ward, No. 25-1078, slip op. at 19-20 (10th Cir. July 20, 2026). A claim that satisfies Ward therefore does not require this Court to decide whether any state order is valid. Count VI does not depend on any such question: whether a tradeline's "Date Opened" precedes its "Date of First Delinquency" by ten years, and whether a review window reaches back to the reported origin are matters visible on the face of the report. ECF 97 ¶ 109(c), (d). Count VI also does not rest on ¶ 109(b). Each of ¶ 109(a), (c) and (d) states a reporting inconsistency independently, and Rooker-Feldman analysis is claim specific. *Balderama v. Bulman*, No. 25-2101, slip op. at 4-7 (10th Cir. May 21, 2026) (unpublished); *Graff v. Aberdeen Enterprizes II, Inc.*, No. 21-5031, slip op. at 26-29 (10th Cir. Apr. 10, 2023).

3. The Motion's authorities involved attacks on the orders themselves. In *Jones v. Denver Human Services*, No. 25-cv-01979-GPG-SBP, 2025 WL 3907659, at *7-8 (D. Colo. 2025), report and recommendation adopted, 2025 WL 3907698 (D. Colo. 2025), on which the Motion principally relies, the plaintiff's theory was that a Michigan court lacked personal jurisdiction when it entered a support order, so that "Plaintiff's Complaint asks this court to reject that determination." The court also observed that the plaintiff's own allegations acknowledged "only one operative child support order," that he did not allege it was not facially valid, and that he did not address why furnishing credit information premised on a facially valid order would be unjustified. *Id.* at *8 & n.5.

Count VI as pleaded against Director Barnes rests on fields whose inconsistency does not depend on the validity of any order. The plaintiff in *Hawks v. Abbott*, 365 F. App'x 124, 125-26 (10th Cir. 2010), alleged that a state agency miscalculated his child support obligations, which the district court explained were "inextricably linked to a modified child support order entered by a Texas state court in 1999"; the Tenth Circuit affirmed. Count VI challenges no calculation. As the Motion describes *Pandey v. Russell* and *Wideman v. Colorado*, the claims required a federal court to review and reject orders entered in state divorce or support proceedings. ECF 101 at 4-5. In *Eaves v. Paxton*, No. 24-1400, slip op. at 5-7 (10th Cir. Apr. 15, 2026) (unpublished), the Tenth Circuit held allegations construed as a challenge to the original support order barred, but held that due-process allegations about officials' conduct "do not call into question the legitimacy of" that order and were not barred. In *Bellinsky v. Weiser*, No. 25-cv-02062-PAB-STV, 2026 WL 1975773, at *2-3 (D. Colo. 2026), the plaintiff asked the court to enjoin enforcement of support orders, void them, and return payments made under them, and the court found his Monell claims would require deciding the orders' validity. Count VI against Director Barnes asks for none of that. ECF 97 ¶¶ 121, 123.

4. The domestic-relations exception does not apply. The exception "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992). The Tenth Circuit has applied it where a federal court "is called upon to decide those issues regularly decided in state court domestic relations actions such as divorce, alimony, child custody, or the support obligations of a spouse or parent." *Vaughan v. Smithson*, 883 F.2d 63, 65 (10th

Cir. 1989). The inquiry "focuses on what kind of determination the federal court must make to resolve the claim." Bellinsky, 2026 WL 1975773, at *2. The determination Count VI requires is whether specified reported fields are accurate and whether the furnisher's certification complied with § 1681s-2(b). That is a determination under a federal statute, and it is not a determination of a support obligation. *Lee v. Hurd*, 2022 WL 2716540, at *3 (D. Colo. July 13, 2022), was a diversity case in which a former spouse asked the court to order her former husband to pay child support for the years 2006 to 2021. *Bautista v. Virginia Department of Social Services*, 2015 WL 3660379, at *3 (D. Colo. June 12, 2015), held a due-process claim barred because, as the Motion quotes it, the claim did "not transcend or exist apart from the family law issue." An FCRA furnisher's duties exist apart from any family-law question. Even if the exception can apply in a federal-question case, as *Winters v. Kansas Department of Social & Rehabilitation Services*, 2011 WL 166708, at *4-5 (D. Kan. Jan. 19, 2011), states, it applies only where the court must decide a domestic-relations issue, and Count VI does not require one.

**B. The SAC Alleges Facts Establishing Standing as to Director Barnes.**

The Motion states that Director Barnes's name "only appears in the caption, list of parties, and in one claim header." ECF 101 at 9. The "list of parties" is SAC ¶ 18, which alleges that Plaintiff submitted formal complaints to the Colorado Department of Human Services, including a written complaint filed November 14, 2025 and acknowledged by the Department on November 20, 2025, that were not resolved, and that Director Barnes is "the official with authority over the statewide child support

enforcement apparatus." ECF 97 ¶ 18. Paragraph 108 alleges that the disputed tradelines were furnished by "the Colorado child support enforcement program operated through Larimer County," that Larimer County "acts as the operational arm of the Colorado child support enforcement program that furnishes the disputed information," and that the County Attorney's own filings state that the local division "represents the State of Colorado." *Id.* ¶ 108; see *id.* Ex. 22.

Injury in fact is alleged: a suppressed credit score and impaired housing. *Id.* ¶ 114. Traceability requires that the injury be "fairly traceable" to the defendant's conduct, and it is satisfied even where an independent actor's choices intervene. *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997). The Motion argues that the SAC identifies Larimer County, and not the State, as the source of the tradelines. ECF 101 at 13. That reads ¶ 108 selectively. The furnisher the SAC identifies is the Colorado child support enforcement program, of which the County is alleged to be the operational arm. And the framework in which the program operates places the reporting function at the State level. Federal law requires each State's plan to provide for "a single and separate organizational unit" within the State to administer it, 42 U.S.C. § 654(3), and requires State procedures "requiring the State to report periodically to consumer reporting agencies" the names of noncustodial parents delinquent in support and the amounts owed. 42 U.S.C. § 666(a)(7)(A). The IV-D agency remains responsible for the program when it delegates functions. 45 C.F.R. § 302.12. Colorado's statute directs the state department to establish a support enforcement program and "a single and separate agency within the department." C.R.S. § 26-13-103. It authorizes the child support

enforcement agency to provide debt information to consumer reporting agencies after advance notice to the obligor that includes the right to contest accuracy. C.R.S. § 26-13-116. The State's own certified profile identifies its IV-D agency as the "Colorado Division of Child Support Services," states that the State reports a noncustodial parent's child support information to "Trans Union, Experian and Equifax," and states that the method is "Administrative." Opp. Ex. 1, Items 1.2, 9.4, 9.5. The Motion identifies Director Barnes as the Executive Director of the Department and does not suggest that the Division is outside it. ECF 101 at 1.

Redressability is likewise plain. An order directing the State program to correct or delete the Colorado tradelines would remedy the reporting. The relief sought is not an order that Director Barnes personally review any state-court order, and it is not directed at a county employee. ECF 97 ¶ 123. The Motion's observation that Director Barnes is named because of her title, ECF 101 at 9, describes how an *Ex parte Young* defendant is identified.

### C. The Eleventh Amendment Does Not Bar the Prospective Relief Sought Against Director Barnes.

1. Waiver and abrogation are beside the point. The Motion devotes a section to congressional abrogation and state waiver. ECF 101 at 12. Plaintiff does not rely on either as to Director Barnes, and seeks no damages from her. ECF 97 ¶ 18. The question is *Ex parte Young*.

2. The SAC alleges an ongoing violation and seeks prospective relief. Under *Ex parte Young*, 209 U.S. 123, 159-60 (1908), the Court conducts a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief

properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002). The Motion argues that the SAC speaks in the past tense about disputes in 2022, 2025 and 2026. ECF 101 at 11. The disputes are dated events. What the SAC alleges is continuing is the content of the tradelines. The February 7, 2026 Equifax report reflects an outstanding balance and a past-due amount, ECF 97 ¶ 34, and the SAC alleges that the reporting features in ¶ 109 remain uncorrected after the furnisher certified them. *Id.* ¶¶ 109, 111, 114. A court looks to "the substance rather than to the form of the relief sought," *Papasan v. Allain*, 478 U.S. 265, 279 (1986), and the substance of an order correcting or deleting data in a current credit file is forward-looking and does not draw on the state treasury.

3. Director Barnes has the required connection. An official must have "some connection with the enforcement of the act" at issue. *Ex parte Young*, 209 U.S. at 157; *Finstuen v. Crutcher*, 496 F.3d 1139, 1151 (10th Cir. 2007). The act here is the furnishing of Colorado child support information to consumer reporting agencies and the investigation of disputes about it. The SAC alleges that Director Barnes has authority over the statewide program, that the program furnished the disputed information, and that Plaintiff's written complaint to the Department was acknowledged and left unresolved. ECF 97 ¶¶ 18, 108. The statutes and State profile cited in Part B describe the State agency's statewide reporting responsibility. The Department's September 10, 2026 response to Plaintiff's records request on IV-D Case No. 35-227339-45-0A was issued on Department letterhead listing Director Barnes as Executive Director. It gave time estimates, rather than a statement that no records exist, for requested categories

that included ACSES audit records for the June 2, 2022 entry and Colorado-South Dakota interstate case records. It stated that the Department has no records for the ledger-reconciliation category, and that it is not the custodian of referral records or applications and that Plaintiff may wish to contact the county. Opp. Ex. 2. Plaintiff offers that response to show that the Department handles records for this case, not as a statement of its scope.

The Motion argues that Director Barnes "has no authority to question a facially valid court order for child support nor ability to 'correct' one," citing C.R.S. §§ 14-5-205(a) and 14-5-207(a). ECF 101 at 11. Those provisions of the Uniform Interstate Family Support Act govern which court may modify or recognize an order. Count VI does not ask Director Barnes to question or correct any order. It asks that reported dates, balances and statuses be corrected or deleted. ECF 97 ¶ 123.

4. The relief is limited to Count VI. The Motion's overbreadth argument is directed at ¶ 122, the injunction against garnishments, intercepts and suspensions. ECF 101 at 12 (citing *Starkey v. Boulder County Social Services*, 2006 WL 8073690, at *7 (D. Colo. Nov. 21, 2006)). As stated above, Plaintiff does not seek that injunction from Director Barnes. The relief sought from her is ¶ 123: correction or deletion of Colorado child support tradelines "that reflect the circumstances alleged in Count VI." Whether the terms of any eventual order satisfy Fed. R. Civ. P. 65(d) is determined when an order is framed.

**D. Count VI States a Plausible Claim Against Director Barnes in Her Official Capacity.**

1. The SAC identifies the furnisher. The Motion argues that the SAC "never alleges that Director Barnes or the State Department were furnishers" and "identifies only Larimer County as the source." ECF 101 at 13. Paragraph 108 alleges that the furnisher is the Colorado child support enforcement program, operated through Larimer County as its operational arm and held out by the County Attorney as representing the State. ECF 97 ¶ 108. An official-capacity claim "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The SAC pleads the claim against the program through the official who heads it. The Motion's citation to *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007), concerns allegations of what each individual defendant did. ECF 101 at 15. Plaintiff seeks no relief from Director Barnes personally.

2. The SAC pleads inaccuracy and an unreasonable investigation. Section 1681s-2(b) requires a furnisher that receives notice of a dispute from a consumer reporting agency to investigate, review the information the agency provides, and report and correct inaccurate or incomplete information. The consumer must show the information was in fact inaccurate or incomplete. Ward, slip op. at 12, 14, 16. The SAC alleges that after the April 2025 dispute, Experian reinvestigated, contacted the furnisher, and supplied it with the dispute information, and that on April 7, 2025 the furnisher certified the information as accurate and the item "Remains." ECF 97 ¶ 111. It identifies reporting features that are verifiable from the documents themselves: a first-

delinquency date ten years after the stated opening date (¶ 109(c)); a 44-month review window against a reported 2015 origin (¶ 109(d)); and an opening date that precedes the register entry (¶ 109(a)). Ward permits legal as well as factual disputes to support a claim if they are objectively and readily verifiable, slip op. at 20, and the Motion identifies no unsettled question of law that these fields require the Court to decide. The Motion's remaining argument, that proving inaccuracy requires establishing that the state order is invalid, ECF 101 at 14, is answered in Part A.2. The SAC also alleges that this was the second occasion on which a child support furnisher certified the same category of reporting feature as accurate following a CRA-transmitted dispute, supporting the allegation of reckless disregard. ECF 97 ¶¶ 111, 114 (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)).

**CONCLUSION**

The Motion should be denied. To the extent the Court concludes that it lacks jurisdiction over any portion of Count VI as pleaded against Director Barnes, dismissal of that portion must be without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006).

Respectfully submitted this 23rd day of October, 2026.

s/ Gerald Paul Hershfeldt
Gerald Paul Hershfeldt
Pro Se Plaintiff
429 E. 14th Ave. #107
Denver, CO 80203
720-378-8474
jerry.hershfeldt@gmail.com

**AI CERTIFICATION**

Pursuant to Judge Nina Y. Wang's Standing Order Regarding the Use of Generative Artificial Intelligence in Court Filings, the undersigned certifies that generative artificial intelligence—specifically, Claude (Anthropic), Gemini (Google), and Perplexity—was used to draft this filing. The undersigned further certifies that all language drafted by generative AI was personally reviewed by the undersigned for accuracy, and that all legal citations reference actual non-fictitious cases or cited authority, each of which the undersigned has personally reviewed.

s/ Gerald Paul Hershfeldt

**CERTIFICATE OF SERVICE**

I certify that on this 23rd day of October, 2026, I electronically filed the foregoing Response, with the Declaration of Gerald Paul Hershfeldt and Opposition Exhibits 1 and 2, with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

Pursuant to D.C.COLO.LCivR 7.1(e) and Practice Standard 10.1(b)(3), copies of the unpublished authorities cited above are attached.

s/ Gerald Paul Hershfeldt